1  Scott Edward Cole, Esq. (S.B. #160744)
   Matthew R. Bainer, Esq. (S.B. #220972)
2  Carrie S. Lin, Esq. (S.B. #241849)
   **SCOTT COLE & ASSOCIATES, APC**
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone: (510) 891-9800
   Facsimile: (510) 891-7030
5  web:    www.scalaw.com

6  Attorneys for Representative Plaintiff
   and the Plaintiff Class

7

8              **UNITED STATES DISTRICT COURT**

9     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  ROBERT RUNNINGS, individually, and )   **Case No.: C-07-4012 SC**
    on behalf of all others similarly situated, )
12                                          )   **CLASS ACTION**
                          Plaintiffs,       )
13  vs.                                     )   **PLAINTIFF ROBERT RUNNINGS'**
                                            )   **MEMORANDUM OF POINTS AND**
14  DOLLAR TREE STORES, INC.                )   **AUTHORITIES IN OPPOSITION TO**
                                            )   **DEFENDANT'S MOTION FOR SUMMARY**
15                        Defendant.        )   **JUDGMENT**
                                            )
16                                          )   Date:         March 21, 2008
                                            )   Time:         10:00 a.m.
17                                          )   Judge:        Hon. Samuel Conti
                                            )   Courtroom:    1, 17th Floor
18  _____    )

19  MIGUEL A. CRUZ and JOHN D.             )   **Case No.: C-07-02050 SC** (*Consolidated*
    HANSEN, individually, and on behalf    )   *Action*)
20  of all others similarly situated,      )
                                           )   **CLASS ACTION**
21                        Plaintiffs,      )
    vs.                                    )
22                                         )
    DOLLAR TREE STORES, INC.               )
23                                         )
                          Defendant.       )
24  _____    )

25

26

27

28

*(left margin, vertical text)* SCOTT COLE & ASSOCIATES, APC / ATTORNEYS AT LAW / THE WACHOVIA TOWER / 1970 BROADWAY, NINTH FLOOR / OAKLAND, CA 94612 / TEL: (510) 891-9800

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

III.  STATEMENT OF UNDISPUTED AND DISPUTED FACTS  . . . . . . . . .    2

IV.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

    A.   LEGAL STANDARD GOVERNING DENIAL OF
       DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  . . . .    7

    B.   THE COURT SHOULD NOT GRANT SUMMARY
       JUDGMENT ON THE ISSUE OF ROBERT RUNNINGS'
       QUALIFICATION FOR THE EXECUTIVE EXEMPTION  . . . . .    7

         1.   Robert Runnings Spends More Than 50% of His Time on
            Non-Exempt Manual Labor Which Does Not Meet the
            Test for Exemption  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

            a.   The "Managerial" Tasks Performed by Mr.
                Runnings Do Not Indisputably Meet the Test for
                Exemption  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

         2.   There Is A Material Dispute Robert Runnings Does Not
            "Customarily and Regularly Exercise" Discretion and
            Independent Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

         3.   There Is A Material Dispute As To Whether Mr. Runnings
            Has the Authority to Hire and Fire Employees  . . . . . . . . .    13

         4.   There Is A Material Dispute As To Whether Mr.
            Runnings' Duties Involve the Management of Dollar Tree
            As a Whole, Or With His Store . . . . . . . . . . . . . . . . . . . . . .    14

         5.   Defendant Has Failed to Undisputably Prove that Robert
            Runnings Customarily and Regularly Directs the Duties of
            Two Or More Employees . . . . . . . . . . . . . . . . . . . . . . . . . .    14

    C.   DEFENDANT'S *RAMIREZ DEFENSE* IS WITHOUT MERIT    15

         1.   Determining Whether Dollar Tree's Stated "Expectations"
            for Robert Runnings' Job Performance Were Either
            "Reasonable" Or "Realistic" Is a Finding Of Fact For the
            Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

         2.   Assuming That Defendant Could Prevail On The Ramirez
            Defense In A Motion for Summary Judgment, Dollar Tree
            Has Failed To Indisputably Prove All Elements Of This
            Defense  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

            a.   There Is A Material Dispute as to Whether Dollar
                Tree's Stated Expectation that Store Managers
                Perform More Exempt Than Non-Exempt Work
                Was Either "Reasonable" Or "Realistic" . . . . . . . . .    16

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

b.  There is A Material Dispute As To Whether There Were Concrete Expressions of Employer Disapproval, And Whether These Expressions Were, Of Themselves, Reasonable . . . . . . . . . . . . . 17

D.  THE COURT SHOULD DENY DEFENDANT'S MOTION ON THE GROUNDS THAT DISCOVERY IS ON-GOING . . . . . . . . 18

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brown v. Mississippi Valley State Univ.*,
    311 F.3d 328 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cornwell v. Electra Cent. Credit Union*
    439 F.3d 1018 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Donovan v. Burger King*,
    672 F.2d 221 (1st Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Downing v. Abercrombie & Fitch*
    265 F.3d 994 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dunbar v. Albertson's, Inc.*,
    Cal.App.4th 1422 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Unisys Sav. Plan Litig.*
    74 F.3d 420 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*International Raw Materials, Ltd v. Stauffer Chem. Co.*,
    898 F.2d 946 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lowe v. Pate Stevedoring Company*,
    558 F.2d 769 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morillion v. Royal Packing Co.*
    22 Cal.4th 575 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*
    182 F.3d 157 (2nd Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nordquist v. McGraw-Hill Broadcasting Co.*,
    32 Cal.App.4th 555 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12

*Nunoz v. Superior Oil Co.*,
    572 F.2d 1119 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ramirez v. Yosemite Water Co.*,
    20 Cal.4th 785, 794 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Sav-On v. Superior Court*,
    34 Cal.4th 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Western American v. Aetna Cas & Sur Co.*,
    915 F.2d 1181 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**FEDERAL RULES/STATUTES**

Code of Federal Regulations:

29 CFR § 541.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

29 CFR § 541.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

29 CFR § 541.105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

29 CFR § 541.106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

29 CFR § 541.107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11, 12

29 CFR § 541.108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

29 CFR § 541.109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

29 CFR § 541.110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

29 CFR § 541.111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

29 CFR § 541.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

Federal Rules of Civil Procedure:

Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

**D.L.S.E. ORDERS/INTERPRETATIVE MATERIAL**

California Industrial Welfare Commission Wage Orders:

Order No. 7-2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

1

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

## I.     INTRODUCTION

In order to entertain defendant Dollar Tree Stores Inc.'s ("Defendant" and/or "Dollar Tree") Motion for Summary Judgment, this Court must: (1) accept at face value Defendant's self-serving characterization of certain tasks as "managerial" and/or "exempt," despite significant testimonial evidence to the contrary, and (2) must ignore direct evidence that Mr. Runnings spends the vast majority of his time as a Store Manager for Dollar Tree performing *non-exempt manual labor*. Given the onerous standard required to prove all of the *six separate sub-parts* of the test for overtime exemption under California law, it is remarkable Dollar Tree even brought a Motion for Summary Judgment ("Motion") on Mr. Runnings' claims. Through this Opposition, Plaintiff will show that a triable issue of fact exists as to <u>five out of six sub-parts</u>, making summary judgment as to the question of Plaintiff's exempt status inappropriate.

## II.     PROCEDURAL HISTORY

On July 3, 2008, Robert Runnings filed the underlying action against his current employer, alleging Dollar Tree mis-classified California Store Managers as overtime exempt employees, thereby depriving them of back-pay, meal and rest breaks, and related penalties. Shortly thereafter, Mr. Runnings' class claims were consolidated with the previously-filed case of *Miguel Cruz and John D. Hansen v. Dollar Tree Stores, Inc.*, C-07-02050 SC, and ordered before this Court.

On November 16, 2007, Presiding Judge Samuel Conti ordered that Defendant file its Motion for Summary Judgment against Representative Plaintiffs no later than January 20, 2008, and instructed that a hearing date would be set when the matter was fully briefed. *Ex A.*[1] Shortly thereafter, Representative Plaintiffs propounded discovery on Defendant, much of which requested information relevant to this Motion. Plaintiffs requested, *inter alia*, all documents relating to Dollar Tree's assessment of the Representative Plaintiffs as employees, Dollar Tree's training of Representative Plaintiffs and other class members on the nature of exempt versus non-exempt work, information as to whether other class members "certified" that they performed more exempt than

---

[1]     All exhibits referenced herein are to the Declaration of Carrie S Lin ("Lin Decl."), filed herewith.

1    non-exempt work on a weekly basis, and the names of potential witnesses. *Ex B*.

2        On January 10, 2008, *ten days* before the Motion was due to be filed, Dollar Tree's counsel

3    requested an extension of time to produce responses to Plaintiffs' discovery. *Ex C*. Plaintiff granted

4    the extension on the dual assumption that (1) Defendant would not rely on information that had not

5    been provided to Plaintiff's counsel in its Motion for Summary Judgment and (2) Plaintiff's counsel

6    would be afforded time to compel additional discovery for its Opposition to Defendant's Motion.

7    Such reciprocity was not forthcoming.

8        On January 29, 2008, *ten days after* it had filed its Motion for Summary Judgment ,

9    Defendant answered Plaintiffs' discovery. *Ex D*. Defendant failed to respond to several discovery

10    requests relevant to the potentially-dispositive Motion it had just filed.

11        After various attempts to meet and confer with opposing counsel over the appropriate timing

12    of supplemental responses to discovery failed, (*Lin Decl. ¶ 6.*) the Court set a briefing schedule for

13    Defendant's Motion. *Ex E*.[2]

14

15    **III.    STATEMENT OF UNDISPUTED AND DISPUTED FACTS**

16        The majority of Dollar Tree's "Undisputed Facts" as to Mr. Runnings' performance of his

17    job duties are unsupported and/or directly contradicted by the evidence to date. The table below sets

18    forth the disputed facts:

19

20

21

22

23

24

25

26

27

28        2    On February 18, 2008 and February 25, 2008, Dollar Tree supplemented certain
of its discovery responses relating to the individual representative plaintiffs. *Lin Decl. ¶ 7.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

| Dollar Tree's "Undisputed Facts" | Evidence Raising Material Dispute as To This Fact |
|---|---|
| 1. "Each store is run by a Store Manager who is responsible for all that happens within his store." *Motion*, p. 4:23-24. | As a Store Manager, Mr. Runnings is not granted full responsibility for daily activities within his store but instead shares so-called "Managerial" duties with his non-exempt Assistant Managers, and follows direct orders regarding daily store operations from his District Manager, Richard Tellstrom[3] and Dollar Tree corporate.[4] |
| 2. "District Managers do not run the stores or direct the work of the store employees." *Motion*, p. 5:15-16. | District Managers, rather than Store Managers, often direct the work of the Stores' employees and make decisions regarding the day to day operations of the store.[5] |
| 3. "The merchandise mix and merchandise displays vary from store to store because Store Managers are expected to drive sales by creating displays and ordering merchandise that attract the store's customers." *Motion*, p. 5:17-24. | Dollar Tree determines the vast majority of products to be ordered in any given store, including Mr. Runnings' store, via its automated Store Replenishment Computer System. Mr. Runnings spends little time selecting merchandise for the store, and has virtually no control over the types of products ordered, or the volume in which they are ordered.[6] |
| 4. Ordering for the store is an exempt "managerial task." *Motion*, p.5: 20. | The vast majority of products in Mr. Runnings' store are ordered by the "Automatic Store Replenishment System," which does not require or allow Store Managers to choose the amounts or types of products ordered. *Runnings Decl.* ¶ 12; *Ex F*, pp. 113:21-23, 117:10-15, 132:1-13, 131:15-25. |

---

3      *See*, *Declaration of Robert Runnings* ("*Runnings Decl.*") ¶ 12; *Ex F*, pp. 31:10-16, 48:23-25, 49:3-7, 57:17-20, 63:3-8, 63:22-25, 104:2-7, 132:15-19; *Ex. G*, pp. 38:12-20, 50:17-21, 52: 1-25,131-133, 147, 148:9-25, 154:4-16, 159:3-14, 164-165, 168:20-23, 176:7-12, 185:11-13, 193:7-19, 196:1-4, 199-200, 207-208, 215-216, 221:3-13, 224:7-9, 229-230, 232:8-14, 238-239, 251:12-16, 253:5-13, 255:22-25, 261:13-15; *Ex H*, pp. 17:14-15, 17:22-23, 24:2-12, 39:25, 40:1-3, 47:14-24, 64:3-10, 74:4-6, 243:12-14, 243:19-25, 244:1-5; *Ex I*, pp. 262:5-6, 263:3-5, 260:15-25.

4      *Ex F*, p. 104:5-11.

5      *Ex F*, pp. 63:3-8, 63:22-25, 65:11-19, 109:14-20, 132:15-19; *Ex. G*, pp. 54:14-19, 71:8-20, 78:21-25, 79:1-4, 217:5-6, 217:12-13; *Ex H*, pp. 23:3-13, 40:19-23, 73:4-8, 74:4-6, 130:8-16, 146:5-12, 146:18-19, 147:12-16, 148:3-10, 271:24-25, 272:1-3; *Ex I*, pp. 18:4-6, 260:15-25, 262:5-6, 262:25; 263:3-5.

6      *Runnings Decl.* ¶ 12; *Ex F*, pp. 107:8-11, 108-109, 113:21-23, 114:16-19, 114:24-115:1; *Ex H*, pp. 53:13-16, 53:25, 156:12-22; *Ex I*, pp. 34:20-25, 35:1.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

| Dollar Tree's "Undisputed Facts" | Evidence Raising Material Dispute as To This Fact |
|---|---|
| 5. "Reviewing, analyzing, and preparing reports" is an exempt "managerial" task. *Motion*, p. 5:26. | Mr. Runnings does not prepare reports.[7] The extent of his "analysis and review" of reports takes less than thirty minutes per week[8] and involves printing and reviewing numbers on automatically generated reports. *Runnings Decl.* ¶12. |
| 6. "Scheduling Employees" is an exempt "managerial task." *Motion*, p. 5:27. | The majority of hourly associates schedules are determined by the Compass scheduling system.[9] |
| 7. "Hiring, Firing, and Disciplining Employees" is an exempt "managerial" task for which Mr. Runnings is responsible. *Motion*, p. 5:28. | Store Managers do not have authority to hire more than three Assistant Managers,[10] do not have ultimate hiring power over their management team,[11] and do not have ultimate authority to fire employees. *Runnings Decl.* ¶ 12.[12] Mr. Runnings shares authority to hire hourly associates with his non-exempt Assistant Managers. *Ex F*, p. 93:14-24. |
| 8. "Recommending and/or determining employee raises and promotions" is an exempt "managerial" task for which Mr. Runnings is responsible. *Motion*, p. 6:1. | As Store Manager Mr. Runnings does not have ultimate authority to give any of his employees either a promotion or raise,[13] and his recommendations regarding employee raises are not always followed. *Runnings Decl.* ¶ 12. |
| 9. "Planning the daily work activities" is an exempt "managerial" task. *Motion*, p. 6: 2-3. | "Planning the daily work activities" entails a daily walk through the store to see which areas need to be stocked, shelved, or cleaned. It does not vary and involves little to no independent judgment or thought. *Runnings Decl.* ¶ 12. |

---

7    *Ex F*, p. 266:5-13; *Ex H*, p. 247:19-23.

8    *Ex F*, p. 57:17-20; *Ex. G*, pp. 81:1-8, 196:1-4; *Ex H*, pp. 58:19-59:1, 77:13-16, 130:8-16; *Ex I*, p. 289:11-14.

9    *Runnings Decl.* ¶ 12; *Ex I*, p. 31:1-8.

10    *Runnings Decl.* ¶ 12; *Ex F*, p. 61:20-24.

11    *Runnings Decl.* ¶ 12; *Ex F*, pp. 67:8-12; 72:12-16.

12    *Ex F*, p. 173:16-20; *Ex G*, pp. 38:12-20, 66:8-20, 147, 148:9-25, 150:12-14, 154:4-16, 158:9-10, 185:11-13, 193:7-19, 207-208; *Ex H*, pp. 17:14-15, 18:20-25, 252:3-6.

13    *Ex F*, p. 71:16-24; *Ex. G*, pp. 164-165, 166-168; *Ex H*, pp. 186:4-25, 187:5-9, 187:15-20, 190:12-15, 191:1-2.

| Dollar Tree's "Undisputed Facts" | Evidence Raising Material Dispute as To This Fact |
|---|---|
| 10. "Approving payroll" is an exempt "managerial" task. *Motion*, p. 6:3. | Mr. Runnings rarely approves payroll. His non-exempt Assistant Managers most often perform this function.[14] *Runnings Decl.* ¶ 12. |
| 11. "Reviewing store employees' time records to make sure that all work is accurately recorded" is an exempt "managerial task." *Motion*, p. 6:3-4. | The Compass computer system automatically generates warnings when employees have not taken a full meal period or have taken too long for their designated meal periods, when an employee is late to work, when an employee is early to work, and when an employee works overtime. Mr. Runnings' role is limited to checking the automated Compass system. *Runnings Decl.* ¶ 12; *Ex F*, p. 234:1-13. |
| 12. "Determining the number of employees needed, including deciding upon additional hiring needs for the November/December holiday season" is an exempt "managerial task." *Motion*, p. 6:5-6. | Dollar Tree's stringent payroll limitations impose a de facto restriction on Store Managers' ability to hire more employees. *Runnings Decl.* ¶¶ 3, 12, 14(e) and 16; Ex. G, p. 176:7-12; *Ex I*, p. 31:1-8; *Ex H*, pp. 64:3-10, 73:4-8, 74:4-6. |
| 13. "Accounting for all sales transactions in the store, and regular review of cashier statistics" is an exempt "managerial" task. *Motion*, p. 6:7. | Dollar Tree cannot assign its Store Managers general conceptual activities and properly count them as exempt work without providing a particularized description of the individual tasks an activity subsumes.[15] Mr. Runnings does not even know what activities Dollar Tree refers to when they claim he is responsible for "accounting for all sales transactions in the store." *Runnings Decl.* ¶ 12. Review of cashier statistics is a perfunctory process that takes little time, and a duty which he shares with his non-exempt Assistant Managers. *Runnings Decl.* ¶ 12; *Ex F*, p. 123:4-18. |
| 14. "Conducting regular till audits" is an exempt "managerial task." *Motion*, p. 6:8. | Mr. Runnings shares responsibility for register audits with his non-exempt Assistant Managers. *Runnings Decl.* ¶¶ 12 and 15. |
| 15. "Controlling both internal and external inventory loss in the store" is an exempt "managerial task." *Motion*, p. 6:9. | Again, Dollar Tree has invented a vague work duty and arbitrarily labeled it exempt. To the extent that this job duty refers to preventing and reporting theft within the store, Mr. Runnings shares this responsibility with his non-exempt hourly employees. *Runnings Decl.* ¶ 12. |

---

14     *Ex F*, p. 229: 4-10; *Ex I*, pp. 269:8-25, 289:11-14.

15     *See*, *Plaintiff's Request for Judicial Notice*, *Ex A*, p. 7:15-18, filed herewith.

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

| Dollar Tree's "Undisputed Facts" | Evidence Raising Material Dispute as To This Fact |
|---|---|
| 16. "Account for breakage, defective goods, expiration dates and field markdowns" is an exempt "managerial" task. *Motion*, p. 6:9-10. | Mr. Runnings is not authorized to reduce the price of any item in his store without the prior approval of his District Manager, or upon express instruction by someone from Dollar Tree corporate.[16] His role is limited to taking note of items that are broken or expired.[17] *Id.* |
| 17. "Merchandising the store including creating attractive displays of end caps, impulse items on clip strips, and gondola displays" is an exempt "managerial" task. *Motion*, p. 6:11-12. | Mr. Runnings was not responsible for "merchandising" the store in that he did not select the vast majority of products sold[18] therein, and was instructed by Dollar Tree Corporate on how to build approximately 25% of the merchandise displays within the store.[19] Because Mr. Runnings had no input or control over the vast majority of products that came into his store, building the remaining 75% of merchandise displays did not require him to use independent judgment or discretion. *Runnings Decl.* ¶¶ 10, 12 and 15; *Ex F*, p. 277:2-16. |
| 18. "Creating and maintaining a workplace that is compliant with federal and state laws" is an exempt "managerial" task. *Motion*, p. 6:13-16. | Dollar Tree cannot describe with particularity what activities comprise this task, and as such has failed to show how this can be exempt.[20] Further, Dollar Tree has strict policies and procedures dictating how Store Managers such as Mr. Runnings must ensure compliance with local and federal regulations, preventing Runnings from exercising independent judgment and/or discretion. *Runnings Decl.* ¶ 10, 12 and 14. |

---

16    *Runnings Decl.* ¶¶ 12 and 15.

17    *Ex F*, p. 98:8-14, 119:6-12.

18    *Runnings Decl.* ¶ 12; *Ex F*, p. 109:11-21, 113:21-23.

19    *Runnings Decl.* ¶ 12; *Ex F*, pp. 82:21-23, 83:4-5, 105:23-25, 106:4-6, 108:21-25.

20    *See*, *Request for Judicial Notice*, *Ex A*, p. 7:15-18.

1    **IV.    LEGAL ARGUMENT**

2        **A.    LEGAL STANDARD GOVERNING DENIAL OF DEFENDANT'S MOTION
             FOR SUMMARY JUDGMENT**

3

4        Courts view a motion for summary judgment as a "***drastic device***." (Emphasis Added)

5    *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir.1999). Because

6    summary judgment "cuts off a party's right to present his case to the jury," granting such a motion

7    is appropriate only when there are **no** genuine issues as to material facts. *Id.*

8        In ruling on a motion for summary judgment, the court must make all evidentiary inferences

9    in favor of the non-moving party. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000)(en banc);

10   *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). In practical terms, this means

11   that summary judgment must be denied every time the non-movant "has exceeded the **'mere**

12   **scintilla' threshold** and has offered a genuine issue of material fact." *In re Unisys Sav. Plan Litig.*,

13   74 F.3d 420 (3d Cir. 1996); *see, also, Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029

14   (9th Cir. 2006). This stringent standard ensures that courts do not attempt to abrogate the role of the

15   jury by improperly crediting one party's version of events over another's. *In re Unisys Sav. Plan*

16   *Litig.*, 74 F.3d 420 (3d Cir. 1996).

17       In the context of the underlying case, strict adherence to this summary judgment standard

18   is of the utmost importance. Were this Court to credit Dollar Tree's self-serving evidence over the

19   testimony of Mr. Runnings himself, it would establish a dangerous precedent whereby any employer

20   could evade liability from California's labor laws by unilaterally, and without investigation into the

21   accuracy thereof, designate certain tasks as "managerial."

22

23       **B.    THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT ON THE
             ISSUE OF ROBERT RUNNINGS' QUALIFICATION FOR THE
             EXECUTIVE EXEMPTION**

24

25       The law presumes that employees are non-exempt and therefore entitled to overtime. *Sav-On*

26   *v. Superior Court*, 34 Cal.4th 319, 338 (2004); *see, also*, *Nordquist v. McGraw-Hill Broadcasting*

27   *Co.*, 32 Cal.App.4th 555, 562 (1995). In order to prove that an employee is properly classified as

28   exempt under the Executive exemption, an employer must show that the employee has (1) duties and

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

responsibilities involving the management of the enterprise in which he is employed, or a customarily recognized subdivision thereof; (2) "customarily and regularly directs the work of two or more employees;" (3) "authority to hire and fire other employees;" (4) "customarily and regularly exercises discretion and independent judgment;" and (5) be "primarily engaged in duties which meet the test for exemption," such that these tasks occupy more than 50% of the employee's work-time.[21]

Dollar Tree fails to meet its heavy burden of proving that **no** material dispute exists as to each and every one of the foregoing sub-parts of the executive exemption for <u>each workweek</u> Mr. Runnings worked as a Store Manager.[22]

### 1. Robert Runnings Spends More Than 50% of His Time on Non-Exempt Manual Labor Which Does Not Meet the Test for Exemption.

Mr. Runnings has consistently testified that he spends over seventy-five percent (75%) of his work-time performing manual labor, such as "throwing freight" (unloading boxes from delivery trucks), stocking product, and cashiering. *Ex F*, pp. 47:12-17, 281:16-19; *Runnings Decl.* ¶¶ 4, 16. This type of manual labor is also performed by his non-exempt hourly associates, and is the very definition of non-exempt work.[23, 24]

Defendant attempts to circumvent this testimony – which is fatal to its Motion – by stating

---

21    For purposes of this Opposition, Plaintiff does not dispute that he makes a monthly salary equivalent to twice California's minimum wage.

22    "Under California law, the Court must determine whether any given class member (or all the class members) spend more than 51% of their time on managerial tasks **in any given workweek.**" (Emphasis Added) *Dunbar v. Albertson's, Inc.*, Cal.App.4th 1422, 1427-1428 (2006).

23    Work that is performed in a "routinized manner" and/or work that is of a type that is performed by the so-called executive's subordinates does <u>not</u> meet the test for exemption. *29 CFR §§ 541.110* and *541.115*.

24    *29 CFR § 541.108* states: "[i]n a Large Retail Establishment ...Where the Replenishing of Stocks of Merchandise on the Sales Floor is Customarily Assigned to a Nonexempt Employee, the Performance of Such Work by the Manager or Buyer of the Department is *Nonexempt*." (Emphasis Added). *See also*, *29 CFR § 541.115* and *29 CFR § 541.108*, which state the following are non-exempt tasks: "...[w]ork of the Same Nature as That Performed by the Employees' Subordinates" and "[m]aking Sales to Customers."

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  that, even though Mr. Runnings believes that cashiering and stocking are non-exempt functions, Mr.

2  Runnings is wrong, because he may be simultaneously "training" or "motivating" his hourly

3  associates at the same time as he is engaged in manual labor. *Motion*, p. 14:1-2. In support of this

4  position, Dollar Tree cites inapposite federal law and portions of Mr. Runnings' deposition

5  testimony that are either not on point or taken out of context. *Motion*, p. 15:11-12.

6      However*, California law*[25] is clear that manual labor of this type constitutes *non-exempt*

7  *work*, which *remains non-exempt* in nature even if there exists some attenuated basis to argue that

8  the labor is performed for exempt "executive" reasons.[26] Any other reading renders meaningless the

9  various labor protections at issue in this case, and gives employers *carte blanche* to circumvent state

---

10

11

12      25    Defendant cites to inapposite federal law to support its contention that "cashiering
and stocking are not automatically non-exempt functions." *See*, *Motion*, p.14:13-14, citing
13  *Donovan v. Burger King*, 672 F.2d 221, 226 (1st Cir. 1982). As this Court well knows,
California law employs a stringent, quantitative review of an allegedly exempt employee's
14  performance of tasks, such that there exists a presumption against a finding that a task is exempt,
especially where it involves manual or production labor of the type performed by non-exempt
15  employees ["The IWC notes that this California "quantitative test" continues to be different
from, and more protective of employees than the federal 'qualitative' or 'primary duty'
16  test...Under California law, one must look to the actual tasks performed by an employee in order
to determine whether the employee is exempt."]. *See*, *Request for Judicial Notice*, *Ex A* [Locker
17  Decl. Exhibit A (IWC's "Statement as to the Basis for Wage Order 5-2001")]. Thus, the mere
possibility that Mr. Runnings might have occasionally entertained rogue "managerial" thoughts
18  while performing manual labor alongside his hourly associates *does not* render this labor exempt.
*See*, *Request for Judicial Notice*, *Ex A* ¶ 8 ["The DLSE has always interpreted the "primarily
19  engaged in" test as a test that focuses on that actual work performed by the employee... It does
not matter what the employee is thinking about while he or she is engaged in some work activity;
20  it is the activity that controls, not the employee's thought processes."].

21

22      26    "Non-exempt" work is "easily identifiable where, as in the usual case, it consists
of work of the same nature as that performed by the non-exempt subordinates of the
23  'executive.'" *29 C.F.R. § 541.111. See also*, *Request for Judicial Notice* ¶ 8 ["...in my experience
at the DLSE, I have observed that employers routinely mischaracterize non-exempt work
24  performed by working supervisors as work that is 'directly and closely related' to exempt work.
The controlling regulations caution: 'The supervision of employees and the management of a
25  department include a great many directly and closely related tasks which are different from the
work performed by subordinates and are commonly performed by supervisors because they are
26  helpful in supervising the employees or contribute to the smooth functioning for which they are
responsible.' Thus, as a prerequisite for characterizing a task as exempt or 'closely or directly
27  related' to the task in question must be one that is not routinely performed by subordinate non-
28  exempt hourly paid employees."].

1    overtime laws by arbitrarily designating certain employees as "executive exempt."

2    Even if the standard were as Defendant represents, however, Mr. Runnings' testimony

3    strongly indicates that the majority of his work-time is spent performing manual labor that is

4    performed in a decidedly *non-exempt* manner. Mr. Runnings stocks shelves, throws freight, and

5    rings up sales on the cash register, *not* for the purpose of observing, training, or motivating his

6    employees, but largely because he does not have the payroll hours to assign these duties to hourly

7    associates. *Runnings Decl.* ¶¶ 3, 12 and 14(e). Thus, the majority of his working time is spent

8    performing manual labor *as a substitute* for all the hourly associates he is not authorized or

9    permitted to hire. *Runnings Decl.* ¶ 12.

10    This evidence is further bolstered by the testimony of Plaintiff's District Manager, Richard

11    Tellstrom. *Ex I*, pp. 31:1-8, 157:25, 158:1-5, 174-175. Mr. Runnings often complained to his District

12    Manager that he spent the majority of his time performing manual labor, and regularly certified that

13    he was "non-compliant" on his weekly payroll certification forms. *Runnings Decl.* ¶¶ 7 and 10.

14    In light of the foregoing evidence, Dollar Tree has failed to show a lack of dispute as to this

15    prong of the Executive exemption, and it's Motion must be denied.

16

17         **a.    The "Managerial" Tasks Performed by Mr. Runnings Do Not
       Indisputably Meet the Test for Exemption**

18

19    Because the law clearly states that classification of any given task as "exempt" or "non-

20    exempt" depends upon the circumstances in each particular case, there exists a triable issue of fact

21    as to whether any of the tasks Dollar Tree contends to be "managerial" duties were actually

22    performed by Plaintiff in a non-exempt fashion. *29 CFR §541.109.*[27, 28] For example, in order for a

23    _____

24        27    *See*, *also*, *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 794 (1999)
       [classification of tasks is a mixed question of law and fact].

25

26        28    The federal authorities presented by Defendant in arguing that certain tasks
       should be unquestioningly accepted as exempt is inapplicable. *See*, *Motion*, p. 12:23-25. First,
       nothing in 29 C.F.R. §541.102 abrogates the well-established line of cases which hold that the

27    classification of any task should be made <u>*only after*</u> a determination that the manner in which the

28    *task is <u>actually performed</u>* meets the test for each prong of the exemption. The California
       Supreme Court has held that interpreting California employees' overtime rights under "federal

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

task to qualify as "exempt" the employer must prove, *inter alia*, that the task (1) was performed using the employee's "discretionary powers" rather than in a "routinized" fashion (*29 CFR § 541.107*), **and** (2) is **not** "[t]he same as the work performed by any of the subordinates of the executive."

Given the wealth of evidence to date on the uniform and automated nature of Mr. Runnings' so-called "managerial" duties, Defendant's contentions that certain tasks are exempt do not come close to the evidentiary standard needed to prevail on summary judgment. As shown above in Plaintiff's Disputed Facts, the vast majority of tasks that Dollar Tree lists as *indisputably*[29] managerial are, upon closer inspection, non-exempt in nature. These "managerial" tasks either do not require any independent judgment or thought because they are largely performed by computer systems, and are, indeed, oftentimes, performed by Mr. Runnings' non-exempt employees. *See, Disputed Facts, supra.*

### 2.     There Is A Material Dispute Robert Runnings Does Not "Customarily and Regularly Exercise" Discretion and Independent Judgment.

Not only has Dollar Tree failed to establish that Mr. Runnings spends more than 50% of his time in work that is properly classified as exempt, but fails to establish that Mr. Runnings "customarily and regularly exercises discretion and independent judgment."[30] Independent judgment and discretion are exercised only when "the employee has the power to make an independent choice free from immediate supervision ... *of real and substantial significance to the policies or general operations of the business of the employer or the employer's customers*."[31] (Emphasis Added). The

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

regulations, which employed a different, qualitative method (as opposed to a quantitative method under the California wage order) to decide whether an employee is [exempt] ... is misplaced." *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 593-594 (2000).

29     *See, Motion* [Defendant's Statement of Undisputed Facts], pp. 4:19 - 6:19.

30     *Wage Order 7-2001.*

31     *Nordquist*, 32 Cal.App.4th at p. 563.

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

1    requirement is not met by the "occasional exercise of discretionary powers"[32] nor is it appropriate

2    to interpret this standard as applying to "[a]n employee who merely applies his or her knowledge

3    in following prescribed procedures or in determining which procedures to follow."[33] In an effort to

4    satisfy this prong of the executive exemption, Dollar Tree makes the blanket statement that Plaintiff

5    "made numerous decisions on a daily basis utilizing discretion and independent judgment" and then

6    cites to an unsupported laundry list of vague, generalized tasks that allegedly require the exercise

7    of said discretion.[34]

8         The deposition testimony taken to date, as well as Dollar Tree's own written policies and

9    procedures, tell a very different story. Mr. Runnings is rarely, if ever, permitted to make any

10   decision of real or substantial significance to the operation of his store, or Dollar Tree as a retail

11   chain. *Runnings Decl.* ¶¶ 6 and 12. He is closely supervised by his District Manager, Rick Tellstrom,

12   who is often physically present in Mr. Runnings' store, providing direct instruction. *Ex F*, pp. 63:3-

13   8, 63:22-25, 102:3-8, 104:2-7. He is not allowed to choose his own "management" team, but instead

14   must defer to his District Manager's discretion. *Runnings Decl.* ¶ 12; *Ex F*, pp. 60:22-62:2, 61:8-14,

15   61:20-24. He cannot fire any employee without the consent of Dollar Tree corporate. *Runnings Decl.*

16   ¶ 12; *See, also, Declaration of Carlos Hernandez*, p. 2:14-16, filed in support of Defendant's

17   Motion, Docket No. 39. The amount of payroll hours for which he may schedule his employees to

18   work is largely determined by a computer system, or is given to him directly by his District

19   Manager. *Runnings Decl.* ¶¶ 3, 12, 14(e) and 16. This limitation on payroll hours prevents Mr.

20   Runnings from hiring as many hourly associates as he would like. *Id.* at ¶ 16. Mr. Runnings has no

21   control over the type and quantity of products that are sold in his own store, as the majority are

22

23 _____

24   32    *29 CFR § 541.107.*

25   33    *Nordquist*, 32 Cal.App.4th at p. 563.

26   34    *See, Motion*, pp. 11:10-12:20. Defendant cites to deposition testimony that merely
     establishes that Plaintiff "was responsible for" and performed certain tasks, and, on that basis,
     claims that they involved the use of "independent judgment and discretion." As clarified by Mr.
27   Runnings' declaration submitted herewith, this deposition testimony in no way constitutes a
     concession that any of the tasks referred to required the exercise of independent judgment and
28   discretion. *Runnings Decl.* ¶¶ 6, 14(d) and 15.

1    automatically ordered via Dollar Tree's "Automatic System Replenishment" computer system. *Ex*

2    *F*, pp. 117:13-19, 132:1-133, 131:15-25; *Runnings Decl.* ¶ 12. In fact, Mr. Runnings must obtain

3    *permission* from Dollar Tree to override this Automatic Ordering system if he feels that his store is

4    over-stocked, and does not want to place an order. *Runnings Decl.* ¶ 14(e). The small portion of

5    products that are not automatically ordered via computer system are ordered by Mr. Runnings by

6    choosing from a pre-determined list of products that Dollar Tree will ship to his store. *Id. at ¶ 12.*

7    Mr. Runnings is not allowed to schedule *himself* for the number of hours he feels appropriate, (*Ex*

8    *F*, pp. 54:14-24, 57:17-20) and must update his District Manager every time he leaves the store

9    during a scheduled shift to attend to personal matters. *Ex I*, p. 281:11-16.

10

11          **3.    There Is A Material Dispute As To Whether Mr. Runnings Has the**
                    **Authority to Hire and Fire Employees.**
12

13          "No employee, whether high or low in the hierarchy of management, can be considered as

14    employed in a bona fide executive capacity unless he is <u>directly concerned</u> either with the hiring or

15    the firing and other change of status of the employees under his supervision."[35] (Emphasis Added).

16    Defendant attempts to satisfy its burden as to this prong by, yet again, offering only a conclusory

17    statement that "Runnings has the authority to interview, hire, evaluate, discipline, and fire

18    employees in his store." *Motion*, p. 9:23-24. As set forth in the preceding sections, however, Mr.

19    Runnings clearly does *not* have genuine authority to determine who will work in his store, because

20    he has no real control over the number of employees he may hire, and does not have ultimate

21    authority over the individuals he may hire as his Assistant Managers. Moreover, Mr. Runnings'

22    cannot fire anyone without obtaining permission from Dollar Tree Corporate.

23

24

25

26

27

28

---

35    *29 CFR § 541.106.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

4.    **There Is A Material Dispute As To Whether Mr. Runnings' Duties Involve the Management of Dollar Tree As a Whole, Or With His Store.**

In order to meet this test of the Executive Exemption, Defendant -Employer must show that Plaintiff does more than merely "participate" in the management of the unit, but that his work tasks have real and significant impact on Dollar Tree as an enterprise, or a recognized subdivision thereof.[36]

Mr. Runnings does not have ultimate authority for anything of consequence that happens within his store. *Runnings Decl.* ¶ 12. For all the reasons previously discussed relating to limitations imposed on Mr. Runnings with respect to ordering, merchandising products, and hiring and firing employees, it is clear that Mr. Runnings does no more than "participate" in management of his store, by carrying out Dollar Tree's rigid and exacting procedures.

5.    **Defendant Has Failed to Undisputably Prove that Robert Runnings Customarily and Regularly Directs the Duties of Two Or More Employees.**

"Shared authority" to direct the work of two or more employees does not satisfy this prong of the Executive exemption.[37] Further, the requirement that the Plaintiff *customarily and regularly* direct the work of two or more employees ties directly into the analysis of whether Plaintiff spends more than 50% of his time performing exempt, rather than non-exempt, duties. Thus, conflicting evidence as to the *extent* of an employee Plaintiff's *ability* to direct the duties of two or more employees, as well as *time spent* directing employees, raises a dispute as to the applicability of this prong of the Exemption.

For the reasons stated above, there is a genuine dispute as to whether Mr. Runnings has direct and exclusive authority for directing the work of his hourly associates, or rather shares this authority with Dollar Tree (corporate) as an institution. Further, there is a genuine dispute as to whether Mr. Runnings "customarily and regularly" exercises what little authority he has.

---

36      *29 C.F.R. § 541.104.*

37      *29 C.F.R. § 541.105*

1     For all the foregoing reasons, Defendant has failed to eliminate a triable dispute on the issue

2     of whether Mr. Runnings was mis-classified as an exempt employee under five out of the six prongs

3     of the Executive Exemption.

4

5     ### C.    **DEFENDANT'S "*RAMIREZ DEFENSE*" IS WITHOUT MERIT**

6     Dollar Tree argues, in the alternative, that the Ramirez defense applies to Mr. Runnings'

7     claims.[38] For the reasons stated below, Dollar Tree fails to meet its burden as to this defense.

8

9     ### 1.    **Determining Whether Dollar Tree's Stated "Expectations" for Robert Runnings' Job Performance Were Either "Reasonable" Or "Realistic" Is a Finding Of Fact For the Jury.**

10

11    Even where no dispute exists as to facts relating to a cause of action, summary judgment may

12    be inappropriate where the underlying issue is a determination that is more properly made by a jury,

13    rather than a judge.[39] Where the issue in dispute requires "references to the data of practical human

14    experience," and deals with "mainsprings of human conduct," then the court does not have authority

15    to enter summary judgment, and must allow the *jury* to pass judgment.[40] Matters involving

16    credibility determinations of witnesses, such as the "reasonableness" of a defendant's behavior,[41]

17    and whether "just cause" exists to dismiss an employee, are two such examples of matters that must

18    be decided by a jury rather than the Court.[42]

19

20

---

21    38    *Ramirez v. Yosemite Water*, 20 Cal.4th 785, 802 (1999) ["The trial court should consider...whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job."].

22
23

24    39    *Nunoz v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978); *Western American v. Aetna Cas & Sur Co.*, 915 F.2d 1181 (8th Cir. 1990); *Lowe v. Pate Stevedoring Company*, 558 F.2d 769, 772 (5th Cir. 1977).

25

26    40    *Nunoz*, 572 F.2d 1119.

27    41    *Western American*, 915 F.2d 1181.

28    42    *Lowe,* 558 F.2d 772.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

Even assuming that there was no dispute as to the underlying facts in this case, the applicability of the *Ramirez* defense's various prongs is an issue for the jury, not this Court. Whether Dollar Tree's stated expectations as to its Store Managers' work duties were either *reasonable* or *realistic* is a matter that should be decided by a jury, based on their own experience as employees and employers. The same applies to the issue of whether Dollar Tree's stated expressions of disapproval over Mr. Runnings' allegedly substandard performance were realistic or reasonable.

 2. **Assuming That Defendant Could Prevail On The *Ramirez* Defense In A Motion for Summary Judgment, Dollar Tree Has Failed To Indisputably Prove All Elements Of This Defense.**

Even assuming that this Court could enter judgment on Defendant's affirmative defense here, factual disputes exist as to each and every prong of the *Ramirez* test.

 a. **There Is A Material Dispute as to Whether Dollar Tree's Stated Expectation that Store Managers Perform More Exempt Than Non-Exempt Work Was Either "Reasonable" Or "Realistic".**

In support of its contention that it *reasonably* and *realistically* expected Mr. Runnings to be performing more exempt than non-exempt work, Dollar Tree relies almost exclusively on evidence that is self-serving, completely unsubstantiated,[43] and inadmissible. Indeed, not only are the "weekly certification forms" relied on by Dollar Tree inadmissible hearsay, but are of little to no evidentiary value, as they tend to do nothing "but show the extent to which defendant was willing to create an illusion of compliance with California overtime requirements."[44] This is especially true where, as here, the "certification forms" contain "no explanation... as to what exactly constitutes exempt and non-exempt work..." and where the employees executed the forms under the "erroneous belief that

---

 43    Defendant Dollar Tree relies heavily on "certification forms" executed and submitted by unnamed absent class members, to stand for the proposition that "In order to properly carry out all the tasks and duties required of a Store Manager...the Store Manager will necessarily spend the majority of his time on non-exempt tasks. Indeed, the majority of Dollar Tree store managers spend more than half their time performing exempt functions." *Motion*, p. 18:11-12.

 44    *See*, *Request for Judicial Notice*, *Ex A* ¶ 8.

almost all of their time was exempt" as a direct consequence of Defendant's failure to educate them.[45]

Further, as Defendant seems to concede, there is direct testimonial and documentary evidence contradicting the reasonableness of Dollar Tree's stated "expectation" that Mr. Runnings was performing more exempt than non-exempt work. The most blatant example is the fact that Mr. Runnings very often stated that he was performing more non-exempt than exempt work in his weekly certification forms. *See*, *Runnings Decl.* ¶ 8, *Exs A-I*. Further, Mr. Runnings had numerous conversations with his District Managers, including Richard Tellstrom and John Casseleto, wherein he complained that he did not have enough payroll hours and was forced to spend the majority, if not all, of his work time stocking product or "throwing freight."[46] *Runnings Decl.* ¶¶ 4 and 16. Dollar Tree management was aware of the high rate of turn-over among Mr. Runnings' Assistant Managers, such that Mr. Runnings rarely had time to perform so-called "management duties." *Ex I*, p. 176:20-25. Dollar Tree management knew that Mr. Runnings was classified as a "racetrack store"[47] [store sold a high volume of product][48], and received perishable goods that needed to be shelved immediately.

   **b.    There is A Material Dispute As To Whether There Were Concrete Expressions of Employer Disapproval, And Whether These Expressions Were, Of Themselves, Reasonable.**

Morever, there is a heated material dispute as to whether Dollar Tree ever gave any meaningful expressions of disapproval over Mr. Runnings' job performance, and whether these expressions were of themselves reasonable.

Prior to filing this lawsuit, Mr. Runnings was *rarely, if ever, disciplined or written up* for any infraction of Dollar Tree's policies or procedures. Indeed, the reasonableness of Dollar Tree's more

---

45    *See*, *Request for Judicial Notice*, *Ex A* ¶ 11.

46    *Ex F*, pp. 48:23-49:14.

47    *Ex F*, pp. 28:17-21, 28:25-29:3.

48    *Ex F*, p. 32:8-16.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

recent (i.e., post-Complaint) manifestations of "displeasure" over Mr. Runnings' performance as a Store Manager is severely undermined by the fact that Dollar Tree awarded Mr. Runnings the "Top Gun" Award for 2007. *Runnings Decl.* ¶ 19. The "Top Gun" Award is a prize given to Store Managers for *increased sales. Id.* Thus, any contention by Dollar Tree that Mr. Runnings is not performing his job in the manner it expected is directly contradicted by the fact that they have rewarded him for this very same job performance.

For all the reasons stated above, this Court must reject Defendant's affirmative defense as insupportable.

### D.    THE COURT SHOULD DENY DEFENDANT'S MOTION ON THE GROUNDS THAT DISCOVERY IS ON-GOING

The Court may deny a motion for summary judgment where the non-moving party shows that facts essential to its opposition may exist, but are not currently within the non-moving party's possession. *FRCP* 56(f). Denial, rather than a continuance, of a motion for summary judgment is particularly appropriate where facts essential to the non-moving party's opposition are within the exclusive control or knowledge of the moving party, and have been withheld due to the latter's failure to respond to discovery.[49] Moreover, denial of a motion for summary judgment on the ground of ongoing discovery is also appropriate where the motion was brought at an early stage in litigation, or where the underlying case involves complex facts.[50]

Here, Dollar Tree has moved for summary judgment of Mr. Runnings' claims by relying on class-wide discovery that it has withheld from Plaintiff. *Lin Decl.* ¶ 6. Specifically, Dollar Tree attaches a "summary" of other Store Manager's weekly certification forms in support of its *Ramirez defense*.[51, 52] *See*, *Declaration of Charlotta Jacobsen-Allen* ("*Jacobsen Decl.*"), *Ex A*, filed in support

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

---

49    *International Raw Materials, Ltd v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990); *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333 FN 5 (5th Cir. 2002).

50    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

51    Dollar Tree requires its Store Managers to complete an on-line "certification form" each and every pay period, stating whether or not they performed more "exempt" or non-

ot Defendant's Motion, Docket No. 41. This summary purports to show "whether or not California Store Managers spent more than 50% of their previous work week working on exempt functions," by listing "the responses by week, the number of stores that responded, percentage of Store Managers responding and whether their response was yes or no." *See*, *Jacobsen Decl.* ¶ 8.

Not only are the certification forms themselves inadmissible hearsay, Dollar Tree has willfully withheld information that would allow Plaintiff to test the authenticity of the evidence it relies on. Not only does Defendant fail to attach the individual certification forms themselves, but refuses to name the authors of the various forms, or the names of *any* putative class members. *Ex. D.* Further, Dollar Tree has not fully responded to discovery requests seeking information as to putative class members' knowledge on what constitutes exempt versus non-exempt work, (*Id.*) as well as discovery requests seeking information as to Dollar Tree's performance assessment of the Representative Plaintiffs as *individuals*. *Id.*

For all of the reasons listed above, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgement to allow Plaintiff to conduct additional discovery.

## V.    CONCLUSION

Under an affirmative defense which requires an employer to prove each and every prong of the executive exemption, as a matter of <u>law</u>, Dollar Tree's Motion, at best, goes 1 for 6. For these reasons plaintiff Runnings respectfully requests that this Court deny Defendant's Motion for Summary Judgement.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

exempt work per pay period. The Store Managers are not required or permitted to enumerate those job tasks they performed on a weekly basis as either exempt or non-exempt, or to list their job tasks with any particularity when completing the form. Instead, they are asked to check either a "yes" or "no" box, the former signifying that they performed more exempt than non-exempt work, and vice versa. Not only are these certification forms coercive, litigation driven, and by their very nature inaccurate, but should not have been introduced as they are inadmissible hearsay.

52    Moreover, if this Court is expected to expected to look at <u>other</u> managers' experiences, plaintiff Runnings should be given access to the files of the other class members too.

1

Dated: February 29, 2008

2

Respectfully Submitted:

3

**SCOTT COLE & ASSOCIATES, APC**

4

By:     /s/Carrie S. Lin
        Carrie S. Lin, Esq.
5       Attorneys for Representative Plaintiff
        Robert Runnings and the Plaintiff Class

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment