# EXHIBIT A

NORTHERN DISTRICT OF CALIFORNIA

<u>RELATED CASES</u>        <u>CIVIL MINUTES</u>
C-07-2050
C-07-4012       Samuel Conti       DATE <u>11/16/07</u>
Case Number       Judge

Title: <u>MIGUEL CRUZ, et al.</u> vs <u>DOLLAR TREE STORES, INC.</u>

Attorneys: <u>JEREMY FIETZ, SCOTT COLE</u> <u>MAUREEN McCLAIN</u>

Deputy Clerk: <u>T. De Martini</u> Court Reporter: <u>Belle Ball</u>

| Court | Pltf's | Deft's | |
|-------|--------|--------|---|
| (XXX) | ( ) | ( ) | 1. <u>Status Conference - Held</u> |
| ( ) | ( ) | ( ) | 2. _____ |
| ( ) | ( ) | ( ) | 3. _____ |
| ( ) | ( ) | ( ) | 4. _____ |
| ( ) | ( ) | ( ) | 5. _____ |

( )Motion(s): ( )Granted ( )Denied ( )Withdrawn

( )Granted/Denied ( )Off Calendar ( )Submitted

Order to be Prepared by:( )Pltf ( )Deft ( )Court

Discovery Cutoff:_____ Pretrial Statements Due_____

Case Continued to_____ for Pretrial Conference

Case Continued to_____ for Jury Trial

Case Continued to_____ for Further Status Conference

Case Continued to_____ for_____

CASE REFERRED TO U.S. MAGISTRATE_____

for_____

Opening Briefs_____ Answer_____ Reply_____

Deemed Submitted on_____

ORDERED AFTER HEARING: <u>Defendants to File a Motion for Summary</u>
<u>Judgment by January 20, 2008. Once the motion is fully briefed</u>
<u>The Court will set a hearing date.</u>

<u>The parties requested that the two cases be consolidated.</u>

# EXHIBIT B

1    Scott Edward Cole, Esq. (S.B. #160744)
     Matthew R. Bainer, Esq. (S.B. #220972)
2    Carrie S. Lin, Esq. (S.B. #241849)
     **SCOTT COLE & ASSOCIATES, APC**
3    1970 Broadway, Ninth Floor
     Oakland, California 94612
4    Telephone: (510) 891-9800
     Facsimile:  (510) 891-7030
5    web:  www.scalaw.com

6    Attorneys for Representative Plaintiff Robert Runnings
     and the Plaintiff Class
7
     Don Edgar, Esq. (S.B. #139324)
8    Jeremy Fietz, Esq. (S.B. #200396)
     **THE EDGAR LAW FIRM**
9    408 College Avenue
     Santa Rosa, California 95401
10   Telephone: (707) 545-3200
     Facsimile: (707) 587- 3040
11
     Attorneys for Representative Plaintiffs John Hansen
12   and Miguel Cruz and the Plaintiff Class

13

14                  **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16

17   MIGUEL A. CRUZ and JOHN D.          )   Case No.: C-07-02050 SC
     HANSEN, et al.,                     )
18                                        )   CLASS ACTION
                          Plaintiffs,    )
19   vs.                                  )   **REPRESENTATIVE PLAINTIFFS'**
                                          )   **SPECIAL INTERROGATORIES (SET ONE)**
20   DOLLAR TREE STORES, INC.            )
                                          )
21                        Defendant.     )
                                          )
22   ROBERT RUNNINGS, et al.,            )   **Case No.: C-07-4012 SC**
                                          )   *(Consolidated Action)*
23                        Plaintiffs,    )
     vs.                                  )   **CLASS ACTION**
24                                        )
     DOLLAR TREE STORES, INC.            )
25                                        )
                          Defendant.     )
26                                        )

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

| | |
|---|---|
| PROPOUNDING PARTY: | Representative Plaintiffs |
| RESPONDING PARTY: | Defendant Dollar Tree Stores |
| SET NO: | One |

**PLEASE TAKE NOTICE** that, pursuant to Federal Rules of Civil Procedure Rule 33(b)(3), Representative Plaintiffs in the above-entitled action hereby request that you answer the following special interrogatories, in full, within thirty (30) days from the date of service of this notice.

## INSTRUCTIONS

In answering these interrogatories, furnish all such information as is available to you, not merely such information as you know of your own personal knowledge, including, but not necessarily limited to, information which is in the possession of your attorneys and/or all investigators for your attorneys, and/or any investigators retained or hired by you, prior to seeking legal advice, and or any investigations conducted by your supervisors, employees, and/or agents. If any of the interrogatories herein cannot be answered in full after exercising due diligence to secure such information, please answer to the extent possible, whether or not based on hearsay, and specify the reason for your inability to answer the remainder.

The interrogatories set forth hereinafter are deemed to incorporate all introductory matter, including, but not necessarily limited to, definitions of certain terms as set forth by Plaintiffs.

**YOU ARE HEREBY REQUESTED TO READ CAREFULLY ALL SUCH DEFINITIONS.**

In any instance where the answer to any interrogatory is contained in [a] document(s) or where you are asked to identify [a] document(s), Representative Plaintiffs request, in lieu of or in addition to identification, that you attach the document(s) to your answers and indicate clearly to which interrogatory each document or documents are applicable.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## DEFINITIONS

1.     The term **"Defendant,"** "**You**" or **"Your(s)"** refers to the party(ies) to which these requests are propounded and any agents, employees, officers, directors, subsidiaries, affiliates, predecessor corporation(s), both present and former, including their attorneys and insurers, except to the extent that a privilege not to answer is specifically stated.

2.     The term **"Class(es)"** refer(s) to each [of the] class definition(s) provided in the **Complaint** (as defined in this section, below).

3.     The term **"Class Member(s)"**refer(s) to each and every one of the named plaintiffs in the above-captioned action as well as each and every person eligible for membership in one or more of the plaintiff class(es) and/or subclass(es), as described and defined in the operative Complaint(s) filed in this action and, if a consolidation or coordination of actions, the collective allegations and parties to each and every one of the included actions.

4.     The term **"Representative Plaintiff(s)"**refer(s) to each and every named plaintiff identified in the operative Complaint(s) filed in this action and, if a consolidation or coordination of actions, the collective allegations to each and every one of the included actions.

5.     **"Persons"** and/or **"individual(s)"** means natural persons, corporations, partnerships, sole proprietorships, unions, associations, federations, employers, or any other kind of entity or subsidiary, division and/or department thereof.

6.     **"Complaint"** refer(s) to the operative (most recent version of and/or amendment to) Complaint filed in this action and, if a consolidation or coordination of actions, the collective allegations and parties to each and every one of the Included/Consolidated/Coordinated Complaints.

7.     **"Document(s)"** or **"records"** shall mean a writing, as defined by Federal Rules of Evidence 1001, and shall include writings and printed matter of any kind and description, including, but not limited to: electronically-stored data, including computer disks or tapes; electronic audio or video recordings and the scripts of same; electronic or hard copy embodiments of analytical or monitoring equipment or devices; photographs; drawings; maps; sketches; plot plans; diagrams; notes; minutes and electronic recordings of oral communications; letters and memoranda; computer printouts and any hard copy representation(s) of data, information and/or other record compilations

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  which are stored by means of computer or electronic devices; logs; charts or strips of analytical or

2  monitoring equipment; x-rays or other output of radiographic examinations; transcripts of testimony

3  and proceedings; videotapes; films; blueprints; reports; summaries; newspaper accounts; statements;

4  estimates; proposals and protocols; citations; orders and court pleadings. It shall also include any

5  additional copy or duplicate of any document as described above which contains any handwriting,

6  typewriting, notation, modification or other addition thereto of any kind, as well as any rough or

7  preliminary draft(s) of the document. Defendant shall produce those documents and/or other tangible

8  items sought herein whether or not created, maintained, distributed, acquired or otherwise in the

9  possession of any predecessor corporations or business entities to the extent that said documents

10  and/or tangible items are within the care, custody and/or control of Defendant.

11         8.    For each interrogatory wherein a request is made to "**identify**" an individual or group

12  or class of individuals, state with respect to such individual or group/class of individuals:

13            a.    His, her, or its name;

14            b.    His, her, or its known or last known home address and telephone number;

15            c.    His, her, or its business address and telephone number and that/those of his,

16                her, or its employer(s); and,

17            d.    His, her, or its relationship to you.

18         9.    For each interrogatory wherein a request is made to "**identify**" and/or "**describe**" any

19  function(s) or job task(s), state with respect to such "**function(s)/job task(s)**":

20            a.    The frequency with which the "**function(s)/job task(s)**" is to be performed;

21            b.    The weight, if any, an individual performing that "**function(s)/job task(s)**"

22                is required to lift; and

23            c.    Whether the "**function(s)/job task(s)**" is/are the responsibility of other

              employees.

24         10.    The time period covered by these requests shall be the most expansive class period

25  defined in the **Complaint** (i.e., four years prior to the filing of the initial **Complaint**), through the

26  present, unless otherwise specified (herein also referred to as the "**class period**"). Unless so

27  specified, each and every interrogatory herein requests information made available and/or acquired

28  by **You** and/or within **Your** possession, custody, or control during said period _and/or_ generated prior

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL.: (510) 891-9800

1  thereto, but remaining in effect or becoming effective at any point in time during said period <u>and/or</u>

2  information known or believed to exist during said period <u>and/or</u> in effect or becoming effective at

3  any point during said period.

4      11.        The conjunctive shall also include the disjunctive and vice versa.

5      12.        The singular shall also include the plural and vice versa.

6

7  **INTERROGATORIES**

8  <u>INTERROGATORY NO. 1</u>:

9      Identify each and every **Class Member**.

10  <u>INTERROGATORY NO. 2</u>:

11      Identify each facility (by address, telephone number and/or location number, if applicable)

12  where any **Class Member** has performed work for **You** at any time during the **class period**.

13  <u>INTERROGATORY NO. 3</u>:

14      Identify and/or **describe** how **You** determine whether **Class Members** should be paid on

15  an overtime-exempt basis for each pay period with the **class period**.

16  <u>INTERROGATORY NO. 4</u>:

17      Identify and/or **describe** each task performed by **Class Members** that **You** contend is

18  exempt under California law.

19  <u>INTERROGATORY NO. 5</u>:

20      Identify and/or **describe** each task performed by **Class Members** that **You** consider to be

21  non-exempt under California law.

22  <u>INTERROGATORY NO. 6</u>:

23      **Describe** all efforts **You** have made to ensure that **Class Members** are performing more

24  exempt than non-exempt work for each pay period within the **class period**.

25  <u>INTERROGATORY NO. 7</u>:

26      Identify and/or **describe** **Your** policies and procedures regarding the methods by which

27  **Class Members** reported the number of hours worked for each week during the **class period**.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1 | INTERROGATORY NO. 8:

2 |   Identify and/or describe any and all efforts made by You to provide or permit Class

3 | Members to take meal and/or rest breaks.

4 | INTERROGATORY NO. 9:

5 |   Identify and/or describe any and all efforts made by You to inform Class Members of the

6 | applicable test for the Executive Exemption to California's overtime laws.

7 |

8 | Dated: December 13, 2007

9 |                                           SCOTT COLE & ASSOCIATES, APC

10 |                              By: _____

11 |                                  Carrie S. Lin, Esq.
                                      Attorneys for the Representative Plaintiffs
12 |                                    and the Plaintiff Class

Representative Plaintiffs' Special Interrogatories (Set One)

1  Scott Edward Cole, Esq. (S.B. #160744)
   Matthew R. Bainer, Esq. (S.B. #220972)
2  Carrie S. Lin, Esq. (S.B. #241849)
   **SCOTT COLE & ASSOCIATES, APC**
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone: (510) 891-9800
   Facsimile: (510) 891-7030
5  web:  www.scalaw.com

6  Attorneys for Representative Plaintiff Robert Runnings
   and the Plaintiff Class
7
   Don Edgar, Esq. (S.B. #139324)
8  Jeremy Fietz, Esq. (S.B. #200396)
   **THE EDGAR LAW FIRM**
9  408 College Avenue
   Santa Rosa, California 95401
10 Telephone: (707) 545-3200
   Facsimile: (707) 587- 3040
11
   Attorneys for Representative Plaintiffs John Hansen
12 and Miguel Cruz and the Plaintiff Class

13

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16

17 MIGUEL A. CRUZ and JOHN D.          )  **Case No.: C-07-02050 SC**
   HANSEN, et al.,                     )
18                                      )  **CLASS ACTION**
                     Plaintiffs,        )
19 vs.                                  )  **REPRESENTATIVE PLAINTIFFS'**
                                        )  **REQUEST FOR PRODUCTION OF**
20 DOLLAR TREE STORES, INC.             )  **DOCUMENTS AND THINGS (SET ONE)**
                                        )
21                   Defendant.         )
                                        )
22 ROBERT RUNNINGS, et al.,             )  **Case No.: C-07-4012 SC**
                                        )  *(Consolidated Action)*
23                   Plaintiff,         )
   vs.                                  )  **CLASS ACTION**
24                                      )
   DOLLAR TREE STORES, INC.             )
25                                      )
                     Defendant.         )
26 ─────────────────────────────────    )

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

PROPOUNDING PARTY:    Representative Plaintiffs

RESPONDING PARTY:    Defendant Dollar Tree Stores

SET NO:    One

**PLEASE TAKE NOTICE** that, pursuant to Federal Rules of Civil Procedure 34, Representative Plaintiffs in the above-entitled action hereby demand that you identify and produce therefor the following documents in your possession, custody and/or control, as described below. Defendant is directed to produce the specified documents within thirty (30) days of the date of service of these demands. Said production shall take place at the law offices of **Scott Cole & Associates, APC,** located at 1970 Broadway, Ninth Floor, Oakland, California 94612.

Please also take notice that, pursuant to Federal Rule of Civil Procedure 34(b), Defendant is required to serve a written response to this inspection demand within thirty (30) days from the date of service of this demand.

## DEFINITIONS AND INSTRUCTIONS

1.    The term **"Defendant," "You"** or **"Your(s)"** refers to the party(ies) to which these requests are propounded and any agents, employees, officers, directors, subsidiaries, affiliates, predecessor corporation(s), both present and former, including their attorneys and insurers, except to the extent that a privilege not to answer is specifically stated.

2.    The term **"Class(es)"** refer(s) to each [of the] class definition(s) provided in the **Complaint** (as defined herein).

3.    The term **"Class Member(s)"** refer(s) to [each and every one of] the named plaintiffs in the above-captioned action as well as each and every person eligible for membership in one or more of the plaintiff class(es) and/or subclass(es), as described and defined in the operative Complaint(s) filed in this action and, if a consolidation or coordination of actions, the collective allegations and parties to each and every one of the included actions.

4.    The term **"Representative Plaintiff(s)"** refer(s) to each and every named plaintiff identified in the operative Complaint(s) filed in this action and, if a consolidation or coordination

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    of actions, the collective allegations to each and every one of the included actions.

2        5.    **"Persons"** and/or **"individual(s)"** means natural persons, corporations, partnerships,

3    sole proprietorships, unions, associations, federations, employers, or any other kind of entity or

4    subsidiary, division and/or department thereof.

5        6.    **"Complaint"** refer(s) to the operative (most recent version of and/or amendment to)

6    Complaint filed in this action and, if a consolidation or coordination of actions, the collective

7    allegations and parties to each and every one of the Included/Consolidated/Coordinated Complaints.

8        7.    **"Document(s)"** or **"records"** shall mean a writing, as defined by Federal Rules of

9    Evidence 1001, and shall include writings and printed matter of any kind and description, including,

10    but not limited to: electronically-stored data, including computer disks or tapes; electronic audio or

11    video recordings and the scripts of same; electronic or hard copy embodiments of analytical or

12    monitoring equipment or devices; photographs; drawings; maps; sketches; plot plans; diagrams;

13    notes; minutes and electronic recordings of oral communications; letters and memoranda; computer

14    printouts and any hard copy representation(s) of data, information and/or other record compilations

15    which are stored by means of computer or electronic devices; logs; charts or strips of analytical or

16    monitoring equipment; x-rays or other output of radiographic examinations; transcripts of testimony

17    and proceedings; videotapes; films; blueprints; reports; summaries; newspaper accounts; statements;

18    estimates; proposals and protocols; citations; orders and court pleadings. It shall also include any

19    additional copy or duplicate of any document as described above which contains any handwriting,

20    typewriting, notation, modification or other addition thereto of any kind, as well as any rough or

21    preliminary draft(s) of the document. Defendant shall produce those documents and/or other tangible

22    items sought herein whether or not created, maintained, distributed, acquired or otherwise in the

23    possession of any predecessor corporations or business entities to the extent that said documents

24    and/or tangible items are within the care, custody and/or control of Defendant.

25        8.    The words **"identifying," "describing," "referring to," "relating to," "concerning"**

26    or variations thereof, as used herein in connection with any category of documents, means and

27    includes all documents that discuss, constitute, memorialize, mention, summarize, reflect, refer to

28    or may provide evidence of the subject matter of such category of **documents**.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

9.      If any information called for by any discovery request herein is withheld because **You** claim that such information constitutes a privileged **document** and/or communication, state the following with respect to each **document** or communication:

    a.      the date;

    b.      the identity of the author or maker, including the business or legal title or position and the individual's current address, and business and residence telephone numbers;

    c.      the identity of the recipient, including business or legal title or position and the individual's current address and business and residence telephone numbers;

    d.      the number of pages;

    e.      the subject matter;

    f.      the identity of all other persons who received copies of the **document** or otherwise learned of the document or communication; and

    g.      the specific factual basis of the claimed privilege.

10.     If any **document** requested has already been produced pursuant to previous discovery in this litigation, state with respect to such **document**:

    a.      the Bates number of the **document**, if applicable;

    b.      the date of the **document**;

    c.      the person who originated the **document**;

    d.      the present location of the **document**; and

    e.      the person in whose possession or under whose control the **document** presently is and the relationship of this "**person**" to You, if any.

11.     The time period covered by these requests shall be the most expansive class period defined in the **Complaint** (i.e., four years prior to the filing of the initial **Complaint**), through the present, unless otherwise specified (herein also referred to as the "**class period**"). Unless so specified, each and every demand herein requests **documents** generated or acquired by **You** and/or within **Your** possession, custody and/or control during said period <u>and/or</u> generated prior thereto, but remaining in effect or becoming effective at any point in time during said period.

12.     The conjunctive shall also include the disjunctive and vice versa.

13.     The singular shall also include the plural and vice versa.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**DOCUMENT REQUESTS**

1.     All **documents referring** or **relating** to performance evaluations, awards, commendations and/or criticisms of the **Representative Plaintiffs** by any of **Your** current or former employees or agents.

2.     All **documents referring** or **relating** to communications with and/or statements by any employee, contractor and/or agent of **Yours** regarding the **Representative Plaintiffs** or this legal action.

3.     A list of the facilities (by address, telephone number and/or location number, if applicable) (whether or not operational and/or under **Your** control at the present time) where any **Class Member** has performed work at any time during the **class period**.

4.     All organizational charts that **identify** and/or **describe** each and every job position that reported, directly or indirectly, to **Class Members**, or any of them, during the **class period**.

5.     All **documents referring** or **relating** to any bonus and/or financial incentive programs in effect during the **class period** which were intended to provide compensation to the immediate supervisors of **Class Members**, or any of them.

6.     All **documents** which support **Your** contention, if any, that the job tasks performed by the **Representative Plaintiffs** are/were not representative of the job tasks performed by other **Class Members**.

7.     All **documents** which support **Your** contention, if any, that the job tasks performed by the **Representative Plaintiffs** differed, in any manner considered material by **You**, from the tasks **You** expect(ed) them to perform.

8.     All documents **referring or relating** to **Class Members'** knowledge of the applicable test for the Executive Exemption to California's overtime laws.

9.     All **documents referring** or **relating to Class Members'** communications with **Your** Human Resources department concerning responses on/to the "Payroll Certification" during any pay period.

10.     All **documents referring** or **relating to** any additional training you offered to **Class Members** as a result of Store Managers' statement of non-compliance on any "Payroll Certification"

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WORLD SAVINGS TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  form.

2      11.    All **documents referring** or **relating to** any disciplinary action you took against

3  **Class Members** as a result of Store Managers' statement of non-compliance on any "Payroll

4  Certification" form.

5      12.    All **documents referring** or **relating** to **Your** policies and procedures for receiving

6  and reviewing **Class Members'** "Payroll Certifications" during each and very pay period.

7      13.    All **documents referring** or **relating** to the job candidate hiring criteria for each and

8  every **Class Member** and/or **Class** position.

9      14.    All **documents referring** or **relating** to job descriptions, lists of particular positions'

10  essential functions, task lists and/or actual duties for each and every **Class Member**.

11      15.    All **documents referring** to or evidencing any modifications/revisions (at any time

12  during the **class period**) to **Your** job description for the Store Manager position.

13      16.    All **documents referring** to or evidencing any modifications/revisions (at any time)

14  to **Your** job description for any Assistant Store Manager position.

15      17.    All **documents referring** to or evidencing any modifications/revisions (at any time

16  during the **class period**) to the "Payroll Certification" form used by Store Managers.

17      18.    All **documents referring** to or **evidencing** any modifications/revisions (at any time

18  during the **class period**) to the ASR (Automatic Store Replenishment) system used by **Class**

19  **Members** to order supplies.

20      19.    All **documents referring** or **relating** to testing procedures for candidates applying

21  for the Store Manager position.

22      20.    All time/motion studies **You** performed concerning the work of **Class Members**.

23      21.    All audits **You** performed concerning the work of **Class Members**.

24      22.    Copies of all video surveillance (and/or other forms of electronic or other media),

25  generated during the **class period**, which recorded any **Class Member** performing labor.

26      23.    All **documents referring** or **relating** to work performed by **Class Members** for **You**

27  during the **class period**.

28

24. All **documents referring** or **relating** to the list of tasks performed by **Class Members** that **You** contend are exempt under California law.

25. All **documents referring** or **relating** to **Your** expectations regarding what non-exempt duties would be performed on a regular basis by **Class Members**.

26. All **documents referring** or **relating** to **Your** expectations regarding what exempt duties would be performed on a regular basis by **Class Members**.

27. All **documents referring** or **relating** to claims made by **Class Members**, whether verbally or in writing, against **You** regarding allegations of unpaid hours of work and/or a failure to provide meal and/or rest periods.

28. All **documents referring** to or **evidencing** any modifications/revisions (at any time during the **class period**) to the Compass system for tracking time worked by **Your** employees.

29. All **documents referring to**, or **evidencing** any disciplinary action **You** took against any **Class Member** during the **class period** for exceeding his or her allotted payroll budget.

30. All **documents referring** or **relating** to efforts made by **You** to ensure that **Class Members** took meal and/or rest breaks.

31. All **documents referring** or **relating** to **Your** expectations regarding the number of hours **Class Members** would work at **Your** facilities.

32. All advance and/or work/time schedules, prepared at any time during the **class period**, which evidence **Class Members'** actual and/or anticipated hours of work.

33. All **documents referring** or **relating** to efforts made by **You** to limit or prohibit overtime work by **Class Members**.

34. All **documents referring** or **relating** to the methods or procedure(s) (including, but not necessarily limited to use of time keeping systems, punch clocks, written logs, verbal confirmations, register key-in procedures, swipe cards, etc.) for determining the number of hours (including overtime hours) actually and/or reportedly worked by **Class Members** during the **class period**.

35. All **documents referring** or **relating** to the procedure(s) for collecting, maintaining and securing the integrity of payroll records regarding hours worked by **Class Members** during the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  class period.

2       36.    All **documents referring** or **relating** to the identity of individuals who have had

3  access to records of the number of hours (including overtime hours) worked by **Class Members**

4  during the **class period**.

5       37.    All **documents referring** or **relating** to the identity of individuals who were

6  responsible for collecting and storing the **Class Members'** work hours during the **class period**.

7       38.    All time records (including, but not limited to, wage and/or deduction statements) for

8  **Representative Plaintiffs** for work performed during the **class period**.

9       39.    All time records (including, but not limited to, wage and/or deduction statements) for

10  **Class Members** for work performed during the **class period**.

11       40.    All **documents** which support **Your** contention, if any, that some or all of the

12  allegations in the **Complaint** and/or **Class** definition(s) contained therein are inappropriate for class-

13  wide adjudication.

14       41.    All **documents** identified in **Your** responses to Plaintiffs' Special Interrogatories,

15  served concurrently herewith.

16       42.    All **documents referring** or **relating** to any disciplinary action taken by **You** against

17  any person identified in **Your** Initial Disclosures.

18       43.    All **documents referring** or **relating** to any financial incentive program offered by

19  **You** to any person identified in your Initial Disclosures.

20

21  Dated: December 13, 2007

22                           **SCOTT COLE & ASSOCIATES, APC**

23       By: _____

24                           Carrie S. Lin, Esq.
                             Attorneys for the Representative Plaintiffs
25                           and the Plaintiff Class

26

27

28

Representative Plaintiffs' Request for Production of Documents and Things (Set One)

1 | Scott Edward Cole, Esq. (S.B. #160744)
2 | Matthew R. Bainer, Esq. (S.B. #220972)
Carrie S. Lin, Esq (S.B. #241849)
3 | **SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
4 | Oakland, California 94612
Telephone: (510) 891-9800
5 | Facsimile: (510) 891-7030
web:    www.scalaw.com

6 | Attorneys for Representative Plaintiff
7 | and the Plaintiff Classes

8 | Don Edgar, Esq. (S.B. #139324)
Jeremy Fietz, Esq. (S.B. #200396)
9 | **THE EDGAR LAW GROUP**
408 College Avenue
10 | Santa Rosa, CA 95401
Telephone: (707) 545-3200
11 | Facsimile: (707) 587-3040

12 | Attorneys for Representative Plaintiffs John Hansen
and Miguel Cruz and the Plaintiff Class

13

14 | **UNITED STATES DISTRICT COURT**

15 | **NORTHERN DISTRICT OF CALIFORNIA**

16

17 | MIGUEL A. CRUZ and JOHN D.    ) **Case No.: C-07-02050 SC**
HANSEN, et al.,                       )
18 |                                    ) **PROOF OF SERVICE**
                    Plaintiffs,        )
19 |                                    ) **CLASS ACTION**
v.                                     )
20 | DOLLAR TREE STORES, INC.           )
21 |                    Defendant.      )
22 | ROBERT RUNNINGS, et al.,           ) **Case No.: C-07-4012 SC**
                                       ) *(Consolidated Action)*
23 |                    Plaintiff,      )
vs.                                    ) **CLASS ACTION**
24 | DOLLAR TREE STORES, INC.           )
25 |                    Defendant       )
26 |                                    )
27
28

- 1 -
Proof of Service

## PROOF OF SERVICE

I am over 18 years of age and not a party to the within entitled action. I am employed at and my business address is the law offices of Scott Cole & Associates, A Professional Corporation, 1970 Broadway, Ninth Floor, Oakland, California 94612. On this date, I served a copy of:

**REPRESENTATIVE PLAINTIFFS' SPECIAL INTERROGATORIES (SET ONE)**

**REPRESENTATIVE PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)**

on the attorney(s) for the parties to this action by the following method(s):

[X]    by placing one true copy thereof enclosed in a sealed envelope, and serving same as follows:

[ ]    by personally delivering same addressed as shown below, to an attorney, as indicated below, at the indicated address and serving same in accordance with CCP § 1011(a) by leaving same at the attorney's office, with the envelope being clearly labeled, as below, to indicate the attorney(s) being served, with a receptionist or with a person having charge thereof;

[X]    by placing same, with postage fully prepaid, in the United States Mail, addressed as indicated below. I am readily familiar with the practices of these law offices for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service in the same day in the ordinary course of business.

Maureen McClain, Esq.
Alex Hernaez, Esq.
**KAUFF McCLAIN & McGUIRE, LLP**
One Post Street, Ste. 2600
San Francisco, CA 94104

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed at Oakland, California, on December 13, 2007.

George Rafal

# EXHIBIT C

## Carrie S. Lin

**From:**    Carrie S. Lin
**Sent:**    Thursday, January 10, 2008 4:43 PM
**To:**      'Hernaez, Alex'
**Cc:**      Legal Mgmt
**Subject:** Discovery

Alex,

Your proposed two week extension is fine. We will expect your client's responses on January 29th.


Carrie S. Lin, Esq.
Scott Cole & Associates, APC
Attorneys and Counselors
Telephone: (510) 891-9800
Facsimile: (510) 891-7030

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Please Note:
The information in this E-mail message is legally privileged and confidential information intended only for the
use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are
hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have
received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the
erroneously received message from any device/media where the message is stored. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit our website at: http://www.scalaw.com for more information about Scott Cole & Associates, APC.


**From:** Hernaez, Alex [mailto:hernaez@kmm.com]
**Sent:** Thursday, January 10, 2008 1:47 PM
**To:** Carrie S. Lin
**Subject:** Discovery


Are you OK with that 2-week extension?

Alex Hernaez
Kauff McClain & McGuire LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 955-1408
Mobile: (415) 902-5628
Fax: (415) 421-0938

www.kmm.com

This e-mail is intended only for the addressee and contains information that is privileged,
confidential or otherwise protected from disclosure. Dissemination, distribution or copying of

this e-mail or the information herein by anyone other than the intended recipient is prohibited.  If you have received this e-mail in error, please delete it and notify me immediately.

# EXHIBIT D

1   MAUREEN E. McCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   ALEX HERNAEZ (State Bar No. 201441)
    Email: hernaez@kmm.com
3   KAUFF McCLAIN & McGUIRE LLP
    One Post Street, Suite 2600
4   San Francisco, California 94104
    Telephone:   (415) 421-3111
5   Facsimile:   (415) 421-0938

6   Attorneys for Defendant
    DOLLAR TREE STORES, INC.
7
    BETH HIRSCH BERMAN (VA Bar No. 28091)
8   Email: bberman@williamsmullen.com
    WILLIAMS MULLEN
9   Dominion Tower, Suite 1700
    999 Waterside Drive
10  Norfolk, VA 23510
    Telephone:   (757) 629-0604
11  Facsimile:   (757) 629-0660

12  *Pro Hac Vice* Attorneys For Defendant
    DOLLAR TREE STORES, INC.
13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16  MIGUEL A. CRUZ, and JOHN D. HANSEN,          CASE NO.  C 07 2050 SC
    individually and on behalf of all others
17  similarly situated,

18                      Plaintiffs,

19  v.

20  DOLLAR TREE STORES, INC.,

21                      Defendant.

22  ROBERT RUNNINGS individually, and on         CASE NO. C 07 04012 SC
    behalf of all others similarly situated,
23                                               **RESPONSE TO
                        Plaintiff,               REPRESENTATIVE PLAINTIFFS'
24                                               SPECIAL INTERROGATORIES
    v.                                           (SET ONE)**
25
    DOLLAR TREE STORES, INC.,                    **JUDGE:**    Hon. Samuel Conti
26                                               **COMPLAINTS FILED:**    April 11, 2007
                        Defendant.                                        July 6, 2007
27                                               **TRIAL DATES:**    No dates set.

28

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL       CASE NO. C 07 2050 SC
INTERROGATORIES (SET ONE)                            CASE NO. C 07 04012 SC

1    PROPOUNDING PARTY:  REPRESENTATIVE PLAINTIFFS

2    RESPONDING PARTY:    DEFENDANT DOLLAR TREE STORES, INC.

3    SET NUMBER:              One

4           Defendant Dollar Tree Stores, Inc. ("Dollar Tree") submits the following

5    responses, pursuant to Rule 33(b)(3) of the Federal Rules of Civil Procedure, to

6    Representative Plaintiffs' Special Interrogatories (Set One).

7                              **GENERAL OBJECTIONS**

8           These answers and objections are made solely for the purpose of this

9    action.  Each answer is subject to all objections as to competence, relevance,

10   materiality, propriety and admissibility, and any and all other objections and grounds that

11   would require the exclusion of any statement if any interrogatories were asked of, or any

12   statements contained herein were made by, a witness present and testifying in court, all

13   of which objections and grounds are reserved and may be interposed at the time of trial.

14   The following answers are based upon information presently available to Defendant and,

15   except for explicit facts admitted herein, no incidental or implied admissions are intended

16   hereby.  The fact that Defendant has answered or objected to any interrogatory or part

17   thereof should not be taken as an admission that Defendant accepts or admits the

18   existence of any facts set forth or assumed by such interrogatories or that such answer

19   or objection constitutes admissible evidence.  The fact that Defendant has answered

20   part or all of any interrogatory is not intended and shall not be construed to be a waiver

21   by Defendant of all or any part of any objection to any interrogatory.

22           To the extent that any or all of the interrogatories call for information which

23   constitutes information or material prepared in anticipation of litigation or for trial or for

24   information or material covered by the work product doctrine or which constitutes

25   information which is privileged by virtue of the attorney-client privilege, Defendant

26   objects to each and every such interrogatory and thus will not supply or render any

27   information or material protected from discovery by virtue of the work product doctrine or

28   the attorney-client privilege.

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-1-

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL                    CASE NO. C 07 2050 SC
INTERROGATORIES (SET ONE)                                                    CASE NO. C 07 04012 SC

1    Defendant objects to providing information regarding the so-called "Class

2  Members." Because no class has been certified, Class Members do not exists.

3  Moreover, Defendant contends that a class cannot be properly certified because of the

4  facts of this case. Responses herein will be generally limited to the named plaintiffs.

5    The above-stated objections are hereby made applicable to each and all of

6  these requests and are hereby, as to each and all of them, incorporated by reference as

7  if fully set forth therein.

8  **INTERROGATORY NO. 1:**

9    **Identify** each and every **Class Member**.

10  **RESPONSE TO INTERROGATORY NO. 1:**

11    Objection: this Interrogatory is overbroad, unduly burdensome, and outside

12  the scope of permissible discovery.

13  **INTERROGATORY NO. 2:**

14    **Identify** each facility (by address, telephone number and/or location

15  number, if applicable) where any **Class Member** has performed work for **You** at any

16  time during the **class period**.

17  **RESPONSE TO INTERROGATORY NO. 2:**

18    Defendant will produce documents in response to this Interrogatory.

19  Please see response to Request for Production No. 3.

20  **INTERROGATORY NO. 3:**

21    **Identify** and/or **describe** how **You** determine whether **Class Members**

22  should be paid on an overtime-exempt basis for each pay period with the **class period**.

23  **RESPONSE TO INTERROGATORY NO. 3:**

24    Objection: this Interrogatory seeks information protected by the attorney-

25  client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

26  discovery. The premise of this Interrogatory is faulty and therefore Defendant cannot

27  answer it fully. Defendant classifies its various job classifications as exempt or non-

28  exempt. For example, Dollar Tree classifies its store managers as exempt. This

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL        CASE NO. C 07 2050 SC
INTERROGATORIES (SET ONE)                              CASE NO. C 07 4012 SC

1  decision was made by personnel in Dollar Tree's human resources department in

2  consultation with outside counsel.  Defendant considered the job duties and position

3  description of its store managers, together with all applicable laws and regulations.

4  **INTERROGATORY NO. 4:**

5  **Identify** and/or **describe** each task performed by **Class Members** that

6  **You** contend is exempt under California law.

7  **RESPONSE TO INTERROGATORY NO. 4:**

8  Objection: this Interrogatory seeks information protected by the attorney-

9  client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

10  discovery.  Defendant responds to this Interrogatory by directing plaintiffs to the store

11  manager job description, which has already been produced.

12  In addition, while all store managers have certain core duties in common,

13  depending upon the store in which they work store managers may have responsibility for

14  complying with state laws regarding the sale of alcohol and/or acceptance of food

15  stamps.  Some store managers are training managers which gives them additional

16  responsibilities and duties with respect to training store manager and assistant store

17  managers and providing assistance to them after they are trained.  Other store

18  managers have responsibility for visiting other stores and helping them with problems

19  that may arise.  Some store managers have responsibilities related to surveillance

20  cameras.  Depending on the location of the store, i.e. mall, strip shopping centers, stand

21  alone, and the particular landlord's requirements, the store managers have different

22  responsibilities with respect to the maintenance, upkeep and report of the store facilities

23  and areas immediately adjacent thereto and may have different responsibilities with

24  respect to their tenancy.  A few of Defendant's stores sell merchandise at multi-price

25  points, thereby requiring pricing information for which the store manager is responsible.

26  Store managers in different districts have different responsibilities with respect to hiring,

27  firing, promoting and setting pay rates for the store employees.

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL
INTERROGATORIES (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1    **INTERROGATORY NO. 5:**

2        **Identify** and or **describe** each task performed by **Class Members** that

3    **You** consider to be non-exempt under California law.

4    **RESPONSE TO INTERROGATORY NO. 5:**

5        Objection: this Interrogatory seeks information protected by the attorney-

6    client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

7    discovery. Defendant cannot reasonably answer this Interrogatory because, inter alia, it

8    involves an individualized inquiry as to each putative "class member." Moreover, as

9    noted above, an inquiry of this scope is premature because no class has been certified.

10    **INTERROGATORY NO. 6:**

11        **Describe** all efforts **You** have made to ensure that **Class Members** are

12    performing more exempt than non-exempt work for each pay period within the **class**

13    **period**.

14    **RESPONSE TO INTERROGATORY NO. 6:**

15        Objection: this Interrogatory seeks information protected by the attorney-

16    client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

17    discovery. Defendant responds to this Interrogatory by directing plaintiffs to the

18    certification documents (both manual and automated), which have already been

19    produced. In addition, District Managers are charged with the responsibility of ensuring

20    that Defendant's store managers perform work consistent with their status as exempt

21    employees.

22    **INTERROGATORY NO. 7:**

23        **Identify** and/or **describe Your** policies and procedures regarding the

24    methods by which **Class Members** reported the number of hours worked for each week

25    during the **class period**.

26    **RESPONSE TO INTERROGATORY NO. 7:**

27        Objection: this Interrogatory seeks information protected by the attorney-

28    client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

- 4 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL
INTERROGATORIES (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1    discovery. Defendant responds to this Interrogatory by directing plaintiffs to the work

2    schedules of the representative plaintiffs, which have already been produced.

3    **INTERROGATORY NO. 8:**

4              **Identify** and/or **describe** any and all efforts made by **You** to provide or

5    permit **Class Members** to take meal and/or rest breaks.

6    **RESPONSE TO INTERROGATORY NO. 8:**

7              Objection: this Interrogatory seeks information protected by the attorney-

8    client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

9    discovery. Although not required by applicable law, Plaintiffs made their own schedules

10   and were encouraged by District Managers to take meal and rest breaks. Plaintiffs also

11   received training regarding meal and rest breaks.

12   **INTERROGATORY NO. 9:**

13             **Identify** and/or **describe** any and all efforts made by **You** to inform **Class**

14   **Members** of the applicable test for the Executive Exemption to California's overtime

15   laws.

16   **RESPONSE TO INTERROGATORY NO. 9:**

17             Objection: this Interrogatory seeks information protected by the attorney-

18   client privilege, is overbroad, unduly burdensome, and outside the scope of permissible

19   discovery.

20

21   DATED:      January 29, 2008          KAUFF MCCLAIN & MCGUIRE LLP

22

23                                        By: _____
                                              ALEX HERNAEZ
24

25                                        Attorneys for Defendant
                                          DOLLAR TREE STORES, INC.
26

27

28

KAUFF MCCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 5 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL          CASE NO. C 07 2050 SC
INTERROGATORIES (SET ONE)                               CASE NO. C 07 4012 SC

1    **PROOF OF SERVICE BY MAIL**

2         I am a citizen of the United States and employed in San Francisco County,

3    California. I am over the age of eighteen years and not a party to the within-entitled

4    action. My business address is One Post Street, Suite 2600, San Francisco, California

5    94104. I am readily familiar with this firm's practice for collection and processing of

6    correspondence for mailing with the United States Postal Service. On January 29, 2008,

7    I placed with this firm at the above address for deposit with the United States Postal

8    Service a true and correct copy of the within document(s):

9         **RESPONSE TO REPRESENTATIVE PLAINTIFFS'**
         **SPECIAL INTERROGATORIES (SET ONE)**
10
     in a sealed envelope, postage fully paid, addressed as follows:
11

12   Scott Edward Cole, Esq.              Jeremy R. Fietz, Esq.
     Scott Cole & Associates, APC         Edgar Law Firm
13   The World Savings Tower              408 College Avenue
     1970 Broadway, Ninth Floor           Santa Rosa, CA 95401
14   Oakland, CA 94612

15         Following ordinary business practices, the envelope was sealed and

16   placed for collection and mailing on this date, and would, in the ordinary course of

17   business, be deposited with the United States Postal Service on this date.

18         I declare that I am employed in the office of a member of the bar of this

19   court at whose direction the service was made.

20         Executed on January 29, 2008, at San Francisco, California.

21

22                                    _____
23                                          Rita I. Chavez

24   4831-7786-7266.2

25

26

27

28

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 6 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' SPECIAL
INTERROGATORIES (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1  MAUREEN E. McCLAIN (State Bar No. 062050)
   Email: mcclain@kmm.com
2  ALEX HERNAEZ (State Bar No. 201441)
   Email: hernaez@kmm.com
3  KAUFF McCLAIN & McGUIRE LLP
   One Post Street, Suite 2600
4  San Francisco, California 94104
   Telephone:  (415) 421-3111
5  Facsimile:  (415) 421-0938

6  Attorneys for Defendant
   DOLLAR TREE STORES, INC.
7
   BETH HIRSCH BERMAN (VA Bar No. 28091)
8  Email: bberman@williamsmullen.com
   WILLIAMS MULLEN
9  Dominion Tower, Suite 1700
   999 Waterside Drive
10 Norfolk, VA 23510
   Telephone:  (757) 629-0604
11 Facsimile:  (757) 629-0660

12 *Pro Hac Vice* Attorneys For Defendant
   DOLLAR TREE STORES, INC.
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16 MIGUEL A. CRUZ, and JOHN D. HANSEN,        CASE NO.  C 07 2050 SC
   individually and on behalf of all others
17 similarly situated,
18              Plaintiffs,
19 v.
20 DOLLAR TREE STORES, INC.,
21              Defendant.

22 ROBERT RUNNINGS individually, and on       CASE NO. C 07 04012 SC
   behalf of all others similarly situated,
23              Plaintiff,                      **RESPONSE TO
                                                REPRESENTATIVE PLAINTIFFS'
24 v.                                           REQUEST FOR PRODUCTION
                                                OF DOCUMENTS AND THINGS (SET
25 DOLLAR TREE STORES, INC.,                    ONE)**
26              Defendant.
                                               **JUDGE:**     Hon. Samuel Conti
27                                             **COMPLAINTS FILED:**    April 11, 2007
                                                                        July 6, 2007
28                                             **TRIAL DATES:**   No dates set.

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    PROPOUNDING PARTY:  REPRESENTATIVE PLAINTIFFS

2    RESPONDING PARTY:    DEFENDANT DOLLAR TREE STORES, INC.

3    SET NUMBER:          One

4              Defendant Dollar Tree Stores, Inc. ("Dollar Tree") submits the following

5    responses, pursuant to Rule 34 of the Federal Rules of Civil Procedure, to

6    Representative Plaintiffs' Request For Production Of Documents And Things (Set One).

7                         **GENERAL OBJECTIONS**

8              These answers and objections are made solely for the purpose of this

9    action.  Each answer is subject to all objections as to competence, relevance,

10   materiality, propriety and admissibility, and any and all other objections and grounds that

11   would require the exclusion of any statement if any request were asked of, or any

12   statements contained in a document produced hereby were made by, a witness present

13   and testifying in court, all of which objections and grounds are reserved and may be

14   interposed at the time of trial.  The following answers are based upon information

15   presently available to Defendant and, except for explicit facts admitted herein, no

16   incidental or implied admissions are intended hereby.  The fact that Defendant has

17   answered or objected to any request or part thereof should not be taken as an admission

18   that Defendant accepts or admits the existence of any facts set forth or assumed by

19   such requests or that such answer or objection constitutes admissible evidence.  The

20   fact that Defendant has answered part or all of any request is not intended and shall not

21   be construed to be a waiver by Defendant of all or any part of any objection to any

22   request.

23             To the extent that any or all of the requests call for information which

24   constitutes information or material prepared in anticipation of litigation or for trial or for

25   information or material covered by the work product doctrine or which constitutes

26   information which is privileged by virtue of the attorney-client privilege, Defendant

27   objects to each and every such request and thus will not supply or render any

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 04012 SC

1  information or material protected from discovery by virtue of the work product doctrine or

2  the attorney-client privilege.

3        Defendant objects to providing information regarding the so-called "Class

4  Members." Because no class has been certified, Class Members do not exist.

5  Moreover, Defendant contends that a class cannot be properly certified because of the

6  facts of this case. Unless specifically indicated otherwise below, Defendant's responses

7  will be limited to the representative plaintiffs.

8        The above-stated objections are hereby made applicable to each and all of

9  these requests and are hereby, as to each and all of them, incorporated by reference as

10  if fully set forth therein.

11                    **SPECIFIC OBJECTIONS AND RESPONSES**

12  **REQUEST FOR PRODUCTION NO. 1:**

13        All **documents referring** or **relating** to performance evaluations, awards,

14  commendations and/or criticisms of the **Representative Plaintiffs** by any of **Your**

15  current or former employees or agents.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

17        Defendant has already produced documents responsive to this request.

18  **REQUEST FOR PRODUCTION NO. 2:**

19        All **documents referring** or **relating** to communications with and/or

20  statements by any employee, contractor and/or agent of **Yours** regarding the

21  **Representative Plaintiffs** or this legal action.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

23        Objection: this request is compound, unintelligible, overbroad, unduly

24  burdensome, and seeks information protected by the attorney-client privilege.

25  **REQUEST FOR PRODUCTION NO. 3:**

26        A list of the facilities (by address, telephone number and/or location

27  number if applicable) (whether or not operational and/or under **Your** control at the

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111
- 2 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   present time) where any **Class Member** has performed work at any time during the

2   **class period.**

3   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

4           Defendant will produce a list of its present and former California store

5   locations from December 12, 2004 through the present.

6   **REQUEST FOR PRODUCTION NO. 4:**

7           All organizational charts that **identify** and/or **describe** each and every job

8   position that reported, directly or indirectly, to **Class Members**, or any of them, during

9   the **class period.**

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

11          Defendant will produce documents responsive to this request.

12  **REQUEST FOR PRODUCTION NO. 5:**

13          All **documents referring** or **relating** to any bonus and/or financial

14  incentive programs in effect during the **class period** which were intended to provide

15  compensation to the immediate supervisors of **Class Members**, or any of them.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

17          Objection: this request is overbroad, unduly burdensome, and seeks

18  information outside the scope of permissible discovery.

19  **REQUEST FOR PRODUCTION NO. 6:**

20          All **documents** which support **Your** contention, if any, that the job tasks

21  performed by the **Representative Plaintiffs** are/were not representative of the job tasks

22  performed by other **Class Members.**

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

24          Defendant will produce documents responsive to this request.

25  **REQUEST FOR PRODUCTION NO. 7:**

26          All **documents** which support **Your** contention, if any, that the job tasks

27  performed by the **Representative Plaintiffs** differed, in any manner considered material

28  by **You**, from the tasks **You** expect(ed) them to perform.

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 3 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

2        Defendant will produce documents responsive to this request.

3   **REQUEST FOR PRODUCTION NO. 8:**

4        All **documents referring** or **relating** to **Class Members'** knowledge of the

5   applicable test for the Executive Exemption to California's overtime laws.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

7        Defendant will produce documents responsive to this request.

8   **REQUEST FOR PRODUCTION NO. 9:**

9        All **documents referring** or **relating** to **Class Members'** communications

10   with **Your** Human Resources department concerning responses on/to the "Payroll

11   Certification" during any pay period.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

13        Defendant will produce data in summary form regarding communications

14   responsive to this request.

15   **REQUEST FOR PRODUCTION NO. 10:**

16        All **documents referring** or **relating** to any additional training **You** offered

17   to **Class Members** as a result of Store Managers' statement of non-compliance on any

18   "Payroll Certification" form.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

20        Objection: this request is overbroad, unduly burdensome, and seeks

21   information outside the scope of permissible discovery.

22   **REQUEST FOR PRODUCTION NO. 11:**

23        All **documents referring** or **relating** to any disciplinary action **You** took

24   against **Class Members** as a result of Store Managers' statement of non-compliance on

25   any "Payroll Certification" form.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

27        As limited to the representative plaintiffs, Defendant has no documents

28   responsive to this request.

- 4 -

KAUFF MCCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   **REQUEST FOR PRODUCTION NO. 12:**

2           All **documents referring** or **relating** to **Your** policies and procedures for

3   receiving and reviewing **Class Members'** "Payroll Certifications" during each and every

4   pay period.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

6           As limited to the representative plaintiffs, Defendant has no documents

7   responsive to this request.

8   **REQUEST FOR PRODUCTION NO. 13:**

9           All **documents referring** or **relating** to the job candidate hiring criteria for

10  each and every **Class Member** and/or **Class** position.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

12          Objection: this request is overbroad and unduly burdensome.  Defendant

13  will provide exemplars of documents responsive to this request.

14  **REQUEST FOR PRODUCTION NO. 14:**

15          All **documents referring** or **relating** to job descriptions, lists of particular

16  positions' essential functions, task lists and/or actual duties for each and every **Class**

17  **Member.**

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

19          Objection: this request is overbroad, unduly burdensome, and calls for

20  information particular to individual employees not party to this litigation.  Defendant

21  already has produced documents responsive to this request.

22  **REQUEST FOR PRODUCTION NO. 15:**

23          All **documents referring** to or evidencing any modifications/revisions (at

24  any time during the **class period**) to **Your** job description for the Store Manager

25  position.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

27          Defendant has no documents responsive to this request.

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   **REQUEST FOR PRODUCTION NO. 16:**

2       All **documents referring** to or evidencing any modifications/revisions (at

3   any time) to **Your** job description for any Assistant Store Manager position.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

5       Objection: this request is overbroad and unduly burdensome.  Defendant

6   has no documents responsive to this request within the so-called "class period".

7   **REQUEST FOR PRODUCTION NO. 17:**

8       All **documents referring** to or evidencing any modifications/revisions (at

9   any time during the **class period**) to the "Payroll Certification" form used by Store

10  Managers.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

12      Defendant has no documents responsive to this request.

13  **REQUEST FOR PRODUCTION NO. 18:**

14      All **documents referring** to or **evidencing** any modifications/revisions (at

15  any time during the **class period**) to the ASR (Automatic Store Replenishment) system

16  used by **Class Members** to order supplies.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

18      Objection: this request is unintelligible, outside the scope of permissible

19  discovery and vague as to the use of the word "system."

20  **REQUEST FOR PRODUCTION NO. 19:**

21      All **documents referring** or **relating** to testing procedures for candidates

22  applying for the Store Manager position.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

24      Objection: this request is vague as to the use of the word "testing."

25  Construing this request as seeking documents that test a candidate's ability to be a

26  Store Manager, Defendant has no documents responsive to this request.

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1 | **REQUEST FOR PRODUCTION NO. 20:**

2    All time/motion studies **You** performed concerning the work of **Class**

3 **Members**.

4 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

5    Objection: this request is overbroad, unduly burdensome, and seeks

6 information outside the scope of permissible discovery.

7 | **REQUEST FOR PRODUCTION NO. 21:**

8    All audits **You** performed concerning the work of **Class Members**.

9 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

10    Objection: this request is overbroad, vague as to the term "audit," unduly

11 burdensome and outside the scope of permissible discovery.

12 | **REQUEST FOR PRODUCTION NO. 22:**

13    Copies of all video surveillance (and/or other forms of electronic or other

14 media), generated during the **class period**, which recorded any **Class Member**

15 performing labor.

16 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

17    Objection: this request is overbroad and unduly burdensome.

18 | **REQUEST FOR PRODUCTION NO. 23:**

19    All **documents referring** or **relating** to work performed by **Class**

20 **Members** for **You** during the **class period**.

21 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

22    Objection: this request is overbroad and unduly burdensome.

23 | **REQUEST FOR PRODUCTION NO. 24:**

24    All **documents referring** or **relating** to the list of tasks performed by **Class**

25 **Members** that **You** contend are exempt under California law.

26

27

28

KAUFF MCCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-5111

-7-

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

2          Objection: this request is overbroad and unduly burdensome. Defendant

3    already has produced position descriptions, which are responsive to this request.

4    **REQUEST FOR PRODUCTION NO. 25:**

5          All **documents referring** or **relating** to **Your** expectations regarding what

6    non-exempt duties would be performed on a regular basis by **Class Members**.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

8          Objection: this request is overbroad and unduly burdensome. Defendant

9    has already produced documents responsive to this request.

10    **REQUEST FOR PRODUCTION NO. 26:**

11          All **documents referring** or **relating to Your** expectations regarding what

12    exempt duties would be performed on a regular basis by **Class Members**.

13    **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

14          Objection: this request is overbroad and unduly burdensome. Defendant

15    already has produced position descriptions, which are responsive to this request.

16    **REQUEST FOR PRODUCTION NO. 27:**

17          All **documents referring** or **relating** to claims made by **Class Members**,

18    whether verbally or in writing against **You** regarding allegations of unpaid hours of work

19    and/or a failure to provide meal and/or rest periods.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

21          Objection: this request is overbroad, unduly burdensome, and outside the

22    scope of permissible discovery.

23    **REQUEST FOR PRODUCTION NO. 28:**

24          All **documents referring** to or **evidencing** any modifications/revisions (at

25    any time during the **class period**) to the Compass system for tracking time worked by

26    **Your** employees.

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 8 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

2          Objection: this request is overbroad, unduly burdensome, and outside the

3   scope of permissible discovery.

4   **REQUEST FOR PRODUCTION NO. 29:**

5          All **documents referring** to, or **evidencing** any disciplinary action **You**

6   took against any **Class Member** during the **class period** for exceeding his or her

7   allotted payroll budget.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

9          Objection: this request is overbroad, unduly burdensome, and outside the

10  scope of permissible discovery. With respect to the representative plaintiffs, Defendant

11  has already produced responsive documents.

12  **REQUEST FOR PRODUCTION NO. 30:**

13         All **documents referring** or **relating** to efforts made by **You** to ensure that

14  **Class Members** took meal and/or rest breaks.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

16         Objection: this request is overbroad, unduly burdensome, and outside the

17  scope of permissible discovery. With respect to the representative plaintiffs, Defendant

18  has already produced responsive documents.

19  **REQUEST FOR PRODUCTION NO. 31:**

20         All **documents referring** or **relating** to **Your** expectations regarding the

21  number of hours **Class Members** would work at **Your** facilities.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

23         Objection: this request is overbroad, unduly burdensome, and seeks

24  information outside the scope of permissible discovery. Defendant has already

25  produced documents responsive to this request.

26  **REQUEST FOR PRODUCTION NO. 32:**

27         All advance and/or work/time schedules, prepared at any time during the

28  **class period**, which evidence **Class Members'** actual and/or anticipated hours of work.

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

2              Objection: this request is overbroad, unduly burdensome, and outside the

3   scope of permissible discovery. With respect to the representative plaintiffs, Defendant

4   has already produced responsive documents. Moreover, as to Runnings, Defendant will

5   produce additional responsive documents.

6   **REQUEST FOR PRODUCTION NO. 33:**

7              All **documents referring** or **relating** to efforts made by **You** to limit or

8   prohibit overtime work by **Class Members.**

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

10             Objection: this request is overbroad, unduly burdensome, and outside the

11  scope of permissible discovery. With respect to the representative plaintiffs, Defendant

12  has already produced responsive documents.

13  **REQUEST FOR PRODUCTION NO. 34:**

14             All **documents referring** or **relating** to the methods or procedures(s)

15  (including, but not necessarily limited to use of time keeping systems, punch clocks,

16  written logs, verbal confirmations, register key-in procedures, swipe cards, etc.) for

17  determining the number of hours (including overtime hours) actually and/or reportedly

18  worked by **Class Members** during the **class period.**

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

20             Objection: this request is overbroad, unduly burdensome, and outside the

21  scope of permissible discovery. With respect to the representative plaintiffs, Defendant

22  has already produced responsive documents. Moreover, as to Runnings, Defendant will

23  produce additional responsive documents.

24  **REQUEST FOR PRODUCTION NO. 35:**

25             All **documents referring** or **relating** to the procedure(s) for collecting,

26  maintaining and securing the integrity of payroll records regarding hours worked by

27  **Class Members** during the **class period.**

28

- 10 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

2       Objection: this request is overbroad, unduly burdensome, and outside the

3   scope of permissible discovery.

4   **REQUEST FOR PRODUCTION NO. 36:**

5       All **documents referring** or **relating** to the identity of individuals who have

6   had access to records of the number of hours (including overtime hours) worked by

7   **Class Members** during the **class period**.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

9       Objection: this request is overbroad, unduly burdensome, and outside the

10   scope of permissible discovery.

11   **REQUEST FOR PRODUCTION NO. 37:**

12       All **documents referring** or **relating** to the identity of individuals who were

13   responsible for collecting and storing the **Class Members'** work hours during the **class**

14   **period**.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

16       Objection: this request is overbroad, unduly burdensome, and outside the

17   scope of permissible discovery.  Defendant has no documents responsive to this

18   request.

19   **REQUEST FOR PRODUCTION NO. 38:**

20       All time records (including, but not limited to, wage and/or deduction

21   statements) for **Representative Plaintiffs** for work performed during the **class period**.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

23       Defendant has produced responsive documents and, as to Runnings, will

24   produce additional responsive documents.

25   **REQUEST FOR PRODUCTION NO. 39:**

26       All time records (including, but not limited to, wage and/or deduction

27   statements) for **Class Members** for work performed during the **class period**.

28

- 11 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

2    Objection: this request is overbroad, unduly burdensome, and outside the

3    scope of permissible discovery.

4    **REQUEST FOR PRODUCTION NO. 40:**

5    All **documents** which support **Your** contention, if any, that some or all of

6    the allegations in the **Complaint** and/or **Class** definition(s) contained therein are

7    inappropriate for class-wide adjudication.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

9    Defendant already has produced documents responsive to this request.

10   **REQUEST FOR PRODUCTION NO. 41:**

11   All **documents** identified in **Your** responses to Plaintiffs' Special

12   Interrogatories, served concurrently herewith.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

14   Except to the extent they have already been produced, Defendant will

15   produce documents responsive to this request.

16   **REQUEST FOR PRODUCTION NO. 42:**

17   All **documents referring** or **relating** to any disciplinary action taken by

18   **You** against any person identified in **Your** Initial Disclosures.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

20   Objection: this request is overbroad, unduly burdensome, and outside the

21   scope of permissible discovery.

22   **REQUEST FOR PRODUCTION NO. 43:**

23   All **documents referring** or **relating** to any financial incentive program

24   offered by **You** to any person identified in **Your** Initial Disclosures.

25

26

27

28

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 12 -

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

1   <u>**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**</u>

2          Objection: this request is overbroad, unduly burdensome, and outside the

3   scope of permissible discovery.

4

5   January 29, 2008                               KAUFF McCLAIN & McGUIRE LLP

6

7                                                  By: _____
                                                          ALEX HERNAEZ

8                                                  Attorneys for Defendant
                                                   DOLLAR TREE STORES, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)

CASE NO. C 07 2050 SC
CASE NO. C 07 4012 SC

## PROOF OF SERVICE BY MAIL

1

2       I am a citizen of the United States and employed in San Francisco County,

3   California. I am over the age of eighteen years and not a party to the within-entitled

4   action. My business address is One Post Street, Suite 2600, San Francisco, California

5   94104. I am readily familiar with this firm's practice for collection and processing of

6   correspondence for mailing with the United States Postal Service. On January 29, 2008,

7   I placed with this firm at the above address for deposit with the United States Postal

8   Service a true and correct copy of the within document(s):

9           **RESPONSE TO REPRESENTATIVE PLAINTIFFS'**
            **REQUEST FOR PRODUCTION OF DOCUMENTS AND**
10          **THINGS (SET ONE)**

11  in a sealed envelope, postage fully paid, addressed as follows:

12      Scott Edward Cole, Esq.             Jeremy R. Fietz, Esq.
        Scott Cole & Associates, APC        Edgar Law Firm
13      The World Savings Tower             408 College Avenue
        1970 Broadway, Ninth Floor          Santa Rosa, CA  95401
14      Oakland, CA  94612

15          Following ordinary business practices, the envelope was sealed and

16  placed for collection and mailing on this date, and would, in the ordinary course of

17  business, be deposited with the United States Postal Service on this date.

18          I declare that I am employed in the office of a member of the bar of this

19  court at whose direction the service was made.

20          Executed on January 29, 2008, at San Francisco, California.

21

22

23                                          _____
                                                    Rita I. Chavez

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

RESPONSE TO REPRESENTATIVE PLAINTIFFS' REQUEST FOR          CASE NO. C 07 2060 SC
PRODUCTION OF DOCUMENTS AND THINGS (SET ONE)               CASE NO. C 07 4012 SC

# EXHIBIT E

1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5
     MIGUEL A. CRUZ, and JOHN D. HANSEN,)    Case Nos. 07-2050 SC
6    individually and on behalf of all )              07-4012 SC
     others similarly situated,        )
7                                      )
                Plaintiffs,            )    ORDER SETTING
8                                      )    BRIEFING SCHEDULE FOR
          v.                           )    DEFENDANT'S MOTIONS
9                                      )    FOR SUMMARY JUDGMENT
     DOLLAR TREE STORES, INC.,         )
10                                     )
                Defendant.             )
11   _____)
                                       )
12   ROBERT RUNNINGS, individually, and )
     on behalf of all others similarly )
13   situated,                         )
                Plaintiffs,            )
14                                     )
          v.                           )
15                                     )
     DOLLAR TREE STORES, INC.,         )
16                                     )
                Defendant.             )
17                                     )
     _____)
18

19        The Defendant Dollar Tree Stores filed Motions for Summary

20   Judgment against the plaintiffs Miguel Cruz and John Hansen, in

21   case number 07-2050, and against Robert Runnings, case number 07-

22   4012, on January 19, 2008.  See Cruz Docket No. 48, Runnings

23   Docket No. 36.  As there was some confusion between the parties

24   regarding the briefing schedule for the Summary Judgment Motions,

25   the Court hereby sets the following schedule:

26        Plaintiffs' Oppositions are due no later than 12:00 p.m. on

27   Friday, February 29, 2008.  Defendant's Replies must be submitted

28   by 12:00 p.m. on Friday, March 14, 2008.  A hearing on this matter

United States District Court
For the Northern District of California

1   is set for Friday, March 21, 2008, at 10:00 a.m. in courtroom #1

2   on the 17th floor.

3

4          IT IS SO ORDERED.

5

6       Dated: February 15, 2008

7                                              UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

2

# EXHIBIT F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIGUEL A. CRUZ, and JOHN D.   )
HANSEN, individually, and on   )
behalf of all others similarly )
situated,   )
  )
         Plaintiffs,   )
  )
vs.   )  Case No: C07 02050 SC
  )
  )
DOLLAR TREE STORES, INC.,   )
  )
        Defendant.   )
————————————————————)
  )
ROBERT RUNNINGS, individually, )
and on behalf of all others   )
similarly situated,   )
  )
         Plaintiff,   )
  )Case No: C 07 04012 SC
vs.   )
  )
DOLLAR TREE STORES, INC.,   )
  )
        Defendant.   )
————————————————————

COPY

DEPOSITION OF ROBERT LEWIS RUNNINGS

VOLUME I, pages 1 to 383

1

1

2

3

4

5

6

7               DEPOSITION OF ROBERT LEWIS RUNNINGS

8                  VOLUME I, pages 1 to 383

9

10   DATE:                December 17, 2007

11   TIME:                9:17 a.m.

12   LOCATION:            Kauff, McClain & McGuire
                          One Post Street, 26th Floor
13                        San Francisco, California 94104

14

15

16

17

18

19

20

21

22                   PREFERRED REPORTERS
               Certified Shorthand Reporters
23              19229 Sonoma Highway, #112
                 Sonoma, California 95476
24                    707-938-9227

25   Reported By:  Linda Vaccarezza, RPR, CSR #10201

2

| | | |
|---|---|---|
| 1 | Q    Yes.  Would you agree that higher volume | 09:37:59a |
| 2 | would generally led to being more employees in | 09:38:02a |
| 3 | the store? | 09:38:04a |
| 4 | A    In my store or any store? | 09:38:05a |
| 5 | Q    In the stores you're familiar with. | 09:38:07a |
| 6 | A    Yes. | 09:38:08a |
| 7 | Q    All my questions go to your personal | 09:38:10a |
| 8 | knowledge. | 09:38:12a |
| 9 | A    Okay. | 09:38:12a |
| 10 | Q    And the stores that you have actually | 09:38:12a |
| 11 | observed. | 09:38:15a |
| 12 | A    Okay. | 09:38:16a |
| 13 | Q    Is the Healdsburg store different than | 09:38:24a |
| 14 | the Willits store? | 09:38:27a |
| 15 | A    Yes. | 09:38:29a |
| 16 | Q    In what ways? | 09:38:30a |
| 17 | A    My store is a racetrack store.  When I | 09:38:31a |
| 18 | worked in Healdsburg, it was not. | 09:38:34a |
| 19 | Q    And how does that impact what the store | 09:38:35a |
| 20 | manager does, if it does? | 09:38:37a |
| 21 | A    I really don't think it does. | 09:38:38a |
| 22 | Q    You have different configurations of | 09:38:42a |
| 23 | merchandise, shelving, correct? | 09:38:45a |
| 24 | A    Correct. | 09:38:47a |
| 25 | Q    Is it correct that a racetrack store can | 09:38:48a |

28

| | | |
|---|---|---|
| 1 | order different goods than a small store, for | 09:38:54a |
| 2 | example? | 09:38:57a |
| 3 | A    That's what I've been told.  Yes. | 09:38:57a |
| 4 | Q    You don't know that from personal | 09:38:59a |
| 5 | experience? | 09:39:01a |
| 6 | A    No. | 09:39:01a |
| 7 | Q    Does Willits sell liquor? | 09:39:02a |
| 8 | A    No, we don't. | 09:39:10a |
| 9 | Q    Do you know that there are stores that | 09:39:11a |
| 10 | sell liquor? | 09:39:14a |
| 11 | A    Yes. | 09:39:16a |
| 12 | Q    Have you ever worked in one? | 09:39:17a |
| 13 | A    Yes. | 09:39:18a |
| 14 | Q    Which ones? | 09:39:18a |
| 15 | A    Healdsburg and Roseland. | 09:39:19a |
| 16 | Q    Does that selling of liquor impact what | 09:39:20a |
| 17 | the employees at the store do? | 09:39:24a |
| 18 | A    Aside from having one more item to | 09:39:26a |
| 19 | stock, no. | 09:39:29a |
| 20 | Q    Isn't it right that you have to train | 09:39:30a |
| 21 | employees in that situation to check age? | 09:39:34a |
| 22 | A    Yes. | 09:39:38a |
| 23 | Q    Is that unique to a liquor purchase | 09:39:38a |
| 24 | situation, checking age? | 09:39:43a |
| 25 | A    I believe so. | 09:39:44a |

29

1    A    We receive DSD from Frito Lay, Producers                09:40:36a

2    Dairy, Coca Cola and Pepsi.                                   09:40:41a

3    Q    Producers Dairy is milk products?                       09:40:43a

4    A    Correct.  Ice cream for our store.                      09:40:47a

5    Q    As to those direct vendor deliveries, do                09:40:49a

6    you have any particular responsibilities as the              09:40:54a

7    store manager?                                               09:40:57a

8    A    Simply to check them in when they come                  09:40:58a

9    in.                                                          09:41:01a

10   Q    So you need to be there when they                       09:41:01a

11   arrive?                                                      09:41:03a

12   A    No.  Any management can do that.                        09:41:03a

13   Q    So either you or your assistant store                   09:41:05a

14   managers need to be present when the vendor                  09:41:08a

15   arrives; is that right?                                      09:41:11a

16   A    Yes.                                                    09:41:11a

17   Q    What do you do to check a vendor in?                    09:41:11a

18   A    We have a gun, it's called the prism                    09:41:15a

19   gun, and we scan the merchandise and print out an            09:41:18a

20   invoice and that's it.                                       09:41:22a

21   Q    Is that a function that's restricted to                 09:41:23a

22   the management team?                                         09:41:26a

23   A    Yes.                                                    09:41:27a

24   Q    Is Willits a stand-alone store, is it in                09:41:33a

25   a mall?  What's the location?                                09:41:36a

31

| | | |
|---|---|---|
| 1 | A    It's in a small strip center. | 09:41:37a |
| 2 | Q    Has that been true of every store that | 09:41:42a |
| 3 | you've worked at? | 09:41:45a |
| 4 | A    No. | 09:41:46a |
| 5 | Q    Healdsburg is not? | 09:41:46a |
| 6 | A    Healdsburg is in a strip center as well; | 09:41:47a |
| 7 | Roseland is a stand-alone. | 09:41:50a |
| 8 | Q    Is Willits a high volume store? | 09:41:56a |
| 9 | A    I'm not quite sure. | 09:41:59a |
| 10 | Q    How would you characterize it? | 09:42:05a |
| 11 | A    We are high volume in the district.  By | 09:42:06a |
| 12 | Dollar Tree standards, I'm not sure. | 09:42:09a |
| 13 | Q    What do you mean by "high volume"?  You | 09:42:12a |
| 14 | have good sales compared to others in the | 09:42:15a |
| 15 | district? | 09:42:18a |
| 16 | A    Yes.  We are the fourth. | 09:42:18a |
| 17 | Q    I'll see if I can shorten my questions, | 09:42:21a |
| 18 | Mr. Runnings. | 09:42:23a |
| 19 | You're fourth in the district? | 09:42:24a |
| 20 | A    Yes. | 09:42:29a |
| 21 | Q    How does your square footage compare -- | 09:42:29a |
| 22 | your square selling footage compare to other | 09:42:32a |
| 23 | stores, do you know? | 09:42:35a |
| 24 | A    Within the district, we are the largest. | 09:42:36a |
| 25 | Q    What is the dimension of your storage | 09:42:44a |

```
 1        Q     Was Mr. Cossolotto a store manager at          09:58:55a

 2   the time of this meeting?                                 09:58:57a

 3        A     Yes.                                           09:58:59a

 4        Q     He had been a district manager, correct?       09:58:59a

 5        A     Yes.                                           09:59:02a

 6        Q     He's also an area manager; is that             09:59:02a

 7   right?                                                    09:59:04a

 8        A     Yes.                                           09:59:04a

 9        Q     Was he an area manager at the time of          09:59:04a

10   this meeting, do you know?                                09:59:07a

11        A     I don't know.                                  09:59:08a

12        Q     What, generally, were people saying they       09:59:09a

13   were unhappy about?                                       09:59:15a

14        A     The biggest thing is that we throw             09:59:17a

15   freight.  We are not supposed to be throwing              09:59:21a

16   freight all the time, but it feels like that's            09:59:26a

17   what we do.                                               09:59:28a

18        Q     Why do you say we are not supposed to          09:59:29a

19   throw freight all the time?                               09:59:33a

20        A     Because that's -- that's told to us, is        09:59:35a

21   that we are not supposed to -- we are supposed to         09:59:37a

22   spend a certain amount of our time -- I believe           09:59:41a

23   it's -- we are not supposed to exceed a certain           09:59:44a

24   time in the week doing physical activity.                 09:59:54a

25              Sorry.  That was hard to get out.              09:59:56a
```

47

| | | |
|---|---|---|
| 1 | Q    Who has told you you're not supposed to | 09:59:57a |
| 2 | throw freight a lot? | 10:00:04a |
| 3 | A    Dollar Tree. | 10:00:06a |
| 4 | Q    Are there Dollar Tree people who have | 10:00:09a |
| 5 | told you that?  Have you received written | 10:00:12a |
| 6 | communications? | 10:00:14a |
| 7 | A    We have been told that in various | 10:00:14a |
| 8 | meetings.  It's on our compliance sheet.  I've | 10:00:17a |
| 9 | been told that by Rick. | 10:00:21a |
| 10 | Q    Mr. Tellstrom? | 10:00:22a |
| 11 | A    Yes. | 10:00:24a |
| 12 | Q    Mr. Tellstrom is currently your district | 10:00:25a |
| 13 | manager; is that right? | 10:00:27a |
| 14 | A    Yes. | 10:00:27a |
| 15 | Q    You would agree, then, that the Dollar | 10:00:27a |
| 16 | Tree policy that has been expressed to you is | 10:00:37a |
| 17 | that you are not supposed to do physical work | 10:00:39a |
| 18 | more than 50 percent of the time? | 10:00:42a |
| 19 | A    I believe it's less than that. | 10:00:43a |
| 20 | Q    You're not supposed to do physical work | 10:00:46a |
| 21 | more than 35 percent of the time? | 10:00:49a |
| 22 | A    That sounds about right. | 10:00:51a |
| 23 | Q    Was there any other eliminate of | 10:00:58a |
| 24 | unhappiness that was expressed at this meeting | 10:01:01a |
| 25 | that you recall, other than throwing too much | 10:01:02a |

48

| | | |
|---|---|---|
| 1 | freight? | 10:01:04a |
| 2 | A    The overall expectations of Dollar Tree. | 10:01:04a |
| 3 | Q    What do you mean by that? | 10:01:07a |
| 4 | A    They expect your store to be fully | 10:01:09a |
| 5 | recovered, 100 percent stocked at all times.  But | 10:01:16a |
| 6 | we feel that we aren't provided with enough | 10:01:18a |
| 7 | staffing to do that. | 10:01:22a |
| 8 | Q    Do you know one way or the other whether | 10:01:23a |
| 9 | there are stores that are fully recovered and 100 | 10:01:27a |
| 10 | percent stocked? | 10:01:30a |
| 11 | A    I've never seen one. | 10:01:30a |
| 12 | Q    How many stores have you been in? | 10:01:32a |
| 13 | A    The stores within the district and a | 10:01:34a |
| 14 | couple of stores in the Sacramento area. | 10:01:38a |
| 15 | Q    What stores in the Sacramento area have | 10:01:40a |
| 16 | you been in? | 10:01:42a |
| 17 | A    I could not specify. | 10:01:42a |
| 18 | Q    There's more than a couple of stores in | 10:01:44a |
| 19 | Sacramento, correct? | 10:01:47a |
| 20 | A    Yes. | 10:01:48a |
| 21 | Q    You said that a couple of store managers | 10:01:48a |
| 22 | called you and asked you questions following | 10:01:55a |
| 23 | distribution of Exhibit 2.  Who called you? | 10:01:57a |
| 24 | A    Jesus. | 10:02:01a |
| 25 | Q    Anyone else? | 10:02:03a |

49

| | | |
|---|---|---|
| 1 | A    Yes. | 10:06:55a |
| 2 | Q    Is it correct that, generally speaking, | 10:06:56a |
| 3 | store managers are expected to work five days a | 10:07:00a |
| 4 | week except during the holiday season? | 10:07:02a |
| 5 | A    Correct. | 10:07:04a |
| 6 | Q    When does the holiday season start? | 10:07:06a |
| 7 | A    November. | 10:07:10a |
| 8 | Q    The very beginning of November? | 10:07:10a |
| 9 | A    In years past, yes.  This year they | 10:07:12a |
| 10 | started the six-day work week after Thanksgiving. | 10:07:15a |
| 11 | Q    Have you been working a six-day work | 10:07:21a |
| 12 | week since Thanksgiving? | 10:07:24a |
| 13 | A    Aside from last week, yes. | 10:07:28a |
| 14 | Q    Have you told anyone you don't want to | 10:07:30a |
| 15 | work a six-day work week? | 10:07:32a |
| 16 | A    Yes. | 10:07:33a |
| 17 | Q    Who have you told -- | 10:07:33a |
| 18 | A    Rick. | 10:07:34a |
| 19 | Q    -- that to? | 10:07:35a |
| 20 | How did Mr. Tellstrom respond? | 10:07:41a |
| 21 | A    He told me I had to.  That's what Dollar | 10:07:43a |
| 22 | Tree expected. | 10:07:45a |
| 23 | Q    So you've been following his direction? | 10:07:49a |
| 24 | A    To the best of my ability, yes. | 10:07:52a |
| 25 | Q    Does this schedule that we are looking | 10:07:56a |

54

| | | |
|---|---|---|
| 1 | time? | 10:10:24a |
| 2 | MR. COLE: Objection. Compound. If you can | 10:10:24a |
| 3 | break it down, go ahead. If you can't, let her | 10:10:30a |
| 4 | know and she'll rephrase it for you. | 10:10:33a |
| 5 | THE WITNESS: No, it definitely changes very | 10:10:36a |
| 6 | frequently. | 10:10:37a |
| 7 | BY MS. MCCLAIN: | 10:10:38a |
| 8 | Q    So I can't look at any schedule | 10:10:38a |
| 9 | necessarily and know that that's when you | 10:10:40a |
| 10 | actually worked; is that right? | 10:10:41a |
| 11 | A    It's usually fairly close, but it | 10:10:43a |
| 12 | definitely changes. It's subject to, you know, | 10:10:45a |
| 13 | whether or not we are getting visits. So we are | 10:10:50a |
| 14 | not allowed to schedule ourselves more than the | 10:10:52a |
| 15 | 45 hours. So if we work over 45 hours, that's | 10:10:54a |
| 16 | not reflected. | 10:10:58a |
| 17 | Q    How do you know that you're not allowed | 10:11:05a |
| 18 | to schedule yourself over 45 hours? | 10:11:06a |
| 19 | A    Because I've done so, and I've been | 10:11:08a |
| 20 | reprimanded for it. | 10:11:15a |
| 21 | Q    When was the first time that that | 10:11:17a |
| 22 | happened? | 10:11:19a |
| 23 | A    I could not tell you. | 10:11:20a |
| 24 | Q    Has it happened more than once that | 10:11:24a |
| 25 | you've been reprimanded for that? | 10:11:25a |

57

1    Mr. Runnings, are the assistant managers with          10:13:45a

2    whom you have spoken about your unhappiness with        10:13:51a

3    Dollar Tree the assistant managers who are listed       10:14:00a

4    on this schedule?                                        10:14:05a

5       A    Not Chris.  Chris is brand new, so the          10:14:07a

6    13th was his first day.                                  10:14:14a

7       Q    Aside from Chris, you have spoken to            10:14:17a

8    Ashley, Michael and Andrew; is that right?              10:14:23a

9       A    Yes.                                            10:14:25a

10      Q    Essentially, what have you said to them?        10:14:26a

11      A    How unhappy I am.                               10:14:29a

12      Q    Is that all you've said?                        10:14:33a

13      A    How unhappy I am with the situation.            10:14:36a

14   And, you know, when they come to me with their          10:14:41a

15   concerns about not having enough help, and I let        10:14:44a

16   them know there's nothing I can do about it.            10:14:47a

17   It's Rick and Rick's superiors.  So...                  10:14:49a

18      Q    So you've had conversations with them           10:14:53a

19   about the fact that you would like more hours in        10:14:55a

20   the store; is that right?                               10:14:58a

21      A    Yes.                                            10:14:59a

22      Q    Have you generally had four assistant           10:14:59a

23   managers throughout the time that you've been a         10:15:04a

24   store manager?                                           10:15:07a

25      A    For 2005 and '6, yes.  And then they            10:15:09a

1    eliminated the fourth spot and reduced us to                10:15:14a

2    three.                                                      10:15:17a

3        Q    You're back up to four?                            10:15:18a

4        A    No.  No.  Michael is no longer employed.           10:15:19a

5        Q    So Chris replaced Michael; is that                 10:15:23a

6    right?                                                      10:15:25a

7        A    Yes.                                               10:15:25a

8        Q    In 2007, how did it come to be that they           10:15:26a

9    reduced you to three?  Who was "they"?                      10:15:31a

10       A    Dollar Tree, as a whole.                           10:15:33a

11       Q    How do you know that?                              10:15:35a

12       A    They did it, I believe, company wide.              10:15:37a

13   Actually, I don't know if it's company wide.               10:15:40a

14   They did it in California.                                  10:15:42a

15       Q    How was that communicated to you?                  10:15:43a

16       A    I believe I first heard it from Rick.             10:15:44a

17       Q    Have you ever seen anything in writing            10:15:50a

18   about this elimination?                                    10:15:51a

19       A    I don't think so.                                 10:15:53a

20       Q    What did Mr. Tellstrom tell you?                  10:15:54a

21       A    At the time I lost an assistant manager          10:15:56a

22   and wanted to find a replacement, and he said            10:16:00a

23   that she would not be replaced.                           10:16:02a

24       Q    Who was that?                                     10:16:04a

25       A    Elizabeth Segmiller.                              10:16:05a

                                                                   61

| | | |
|---|---|---|
| 1 | Q     Do you agree that the individuals who | 10:16:29a |
| 2 | are best able to comment upon your actual work at | 10:16:31a |
| 3 | Dollar Tree are your assistant store managers? | 10:16:39a |
| 4 | MR. COLE:  Objection.  Calls for speculation. | 10:16:42a |
| 5 | BY MS. MCCLAIN: | 10:16:43a |
| 6 | Q     Are they in a position, as far as you | 10:16:43a |
| 7 | can observe, to have observed what you were | 10:16:44a |
| 8 | doing? | 10:16:49a |
| 9 | MR. COLE:  Objection.  Calls for speculation. | 10:16:49a |
| 10 | If you can answer, go ahead. | 10:16:53a |
| 11 | THE WITNESS:  Yes. | 10:16:54a |
| 12 | BY MS. MCCLAIN: | 10:16:55a |
| 13 | Q     Aside from your assistant store | 10:16:55a |
| 14 | managers, are there other people that you believe | 10:16:58a |
| 15 | are in a position to observe what you do at work | 10:17:01a |
| 16 | and when you work? | 10:17:04a |
| 17 | MR. COLE:  Same objection and compound. | 10:17:06a |
| 18 | Go ahead, if you can. | 10:17:11a |
| 19 | THE WITNESS:  Customers.  Customers come in | 10:17:11a |
| 20 | all the time and comment, you know, Oh, you're | 10:17:14a |
| 21 | sure busy today.  So I guess customers.  Yeah. | 10:17:16a |
| 22 | BY MS. MCCLAIN: | 10:17:20a |
| 23 | Q     Anyone else? | 10:17:21a |
| 24 | A     Rick. | 10:17:22a |
| 25 | Q     How often do you see Mr. Tellstrom in | 10:17:24a |

62

1    person?                                          10:17:29a

2        A    It varies.  It varies week to week.    10:17:30a

3        Q    In 2007, can you give me an estimate of  10:17:37a

4    the highest amount of times he's been in your   10:17:42a

5    store per week and the lowest amount?           10:17:46a

6        A    The lowest would be not seeing him at   10:17:48a

7    all; the highest would probably be four times a 10:17:50a

8    week.                                           10:17:52a

9        Q    There have been weeks, then, in 2007    10:17:56a

10   when you haven't personally seen Mr. Tellstrom? 10:17:59a

11       A    Yes.                                    10:18:01a

12       Q    Is that a rarity?  Does it happen often? 10:18:05a

13       A    It happens fairly often.                10:18:08a

14       Q    If Mr. Tellstrom visits you four times  10:18:12a

15   per week, to your observation, is there a       10:18:16a

16   particular reason for that?                     10:18:18a

17       A    No.  We are his home store, so he stops 10:18:20a

18   in to do paperwork.  Stuff like that.           10:18:28a

19       Q    Does he have an office at the Willits   10:18:31a

20   store?                                          10:18:34a

21       A    He shares my office.                    10:18:34a

22       Q    Are there times when he comes to the    10:18:36a

23   store and just does his work without interacting 10:18:37a

24   with you?                                       10:18:41a

25       A    No.                                     10:18:41a

63

| | | |
|---|---|---|
| 1 | Q    Are you the highest management person | 10:19:52a |
| 2 | there 90 percent of the time? | 10:19:54a |
| 3 | A    Aside from when Rick or his supervisors | 10:19:56a |
| 4 | are there, yes. | 10:20:00a |
| 5 | Q    In those normal weeks when you are | 10:20:01a |
| 6 | communicating with a district manager about an | 10:20:11a |
| 7 | hour of the time during the week, what kinds of | 10:20:14a |
| 8 | topics are you and the district manager | 10:20:16a |
| 9 | communicating about; can you give me some | 10:20:19a |
| 10 | examples? | 10:20:20a |
| 11 | A    It's usually just him telling me what he | 10:20:21a |
| 12 | wants to see get done over the course of the | 10:20:24a |
| 13 | week. | 10:20:26a |
| 14 | Q    Such as? | 10:20:27a |
| 15 | A    Whether or not the schedule has been | 10:20:28a |
| 16 | wrote yet, whether or not certain displays have | 10:20:30a |
| 17 | been built, how certain employees may be doing. | 10:20:32a |
| 18 | Q    Do you hire for store 2939? | 10:20:48a |
| 19 | A    Yes. | 10:20:51a |
| 20 | Q    How many employees do you think you've | 10:20:52a |
| 21 | hired since November of 2004? | 10:20:55a |
| 22 | A    I don't know. | 10:20:57a |
| 23 | Q    More than 30? | 10:21:01a |
| 24 | A    Yes. | 10:21:01a |
| 25 | Q    More than 50? | 10:21:02a |

65

| | | |
|---|---|---|
| 1 | question?  If it's the same question, it's been | 10:22:22a |
| 2 | asked and answered. | 10:22:24a |
| 3 | BY MS. MCCLAIN: | 10:22:25a |
| 4 | Q    Prior to -- | 10:22:25a |
| 5 | MR. COLE:  You can shake your head, Maureen, | 10:22:26a |
| 6 | but it's been asked and answered. | 10:22:27a |
| 7 | MS. MCCLAIN:  It has not. | 10:22:30a |
| 8 | Q    Prior to Mr. Tellstrom taking over, what | 10:22:31a |
| 9 | was your role in hiring assistant store managers? | 10:22:33a |
| 10 | A    I would find somebody that I wanted to | 10:22:36a |
| 11 | hire and then get the approval of Mike | 10:22:40a |
| 12 | Cossolotto. | 10:22:42a |
| 13 | Q    How would you get Mr. Cossolotto's | 10:22:43a |
| 14 | approval? | 10:22:44a |
| 15 | A    By basically calling him and telling | 10:22:45a |
| 16 | him, hey, I have so and so, I would like to hire | 10:22:49a |
| 17 | him. | 10:22:51a |
| 18 | Q    Mr. Cossolotto did not interview that | 10:22:52a |
| 19 | applicant; is that right? | 10:22:56a |
| 20 | A    Which applicant? | 10:22:58a |
| 21 | Q    The applicant for assistant store | 10:22:59a |
| 22 | manager? | 10:23:02a |
| 23 | A    I'm not sure if he did or not. | 10:23:02a |
| 24 | Q    Did he normally give you approval to | 10:23:04a |
| 25 | hire over the telephone? | 10:23:06a |

67

| | | |
|---|---|---|
| 1 | Q    Was there any component in the manager- | 10:25:59a |
| 2 | in-training program on hiring? | 10:26:02a |
| 3 | A    Not that I know of.  No. | 10:26:04a |
| 4 | Q    Is there any other aspect of your job | 10:26:05a |
| 5 | that you think you are not so good at aside from | 10:26:12a |
| 6 | interviewing? | 10:26:16a |
| 7 | A    No.  I don't think so. | 10:26:17a |
| 8 | Q    If you look at Exhibit 3, was Ms. Massey | 10:26:20a |
| 9 | someone you hired? | 10:26:32a |
| 10 | A    I hired her as a cashier. | 10:26:32a |
| 11 | Q    Is Ms. Massey someone you promoted? | 10:26:39a |
| 12 | A    Yes. | 10:26:41a |
| 13 | Q    Do you recall when she became an | 10:26:45a |
| 14 | assistant store manager? | 10:26:48a |
| 15 | A    I don't. | 10:26:49a |
| 16 | Q    Was that your decision to promote her? | 10:26:49a |
| 17 | A    It was a co-decision with Mr. Tellstrom. | 10:26:56a |
| 18 | Q    Did you recommend her promotion? | 10:26:59a |
| 19 | A    Yes. | 10:27:01a |
| 20 | Q    Did Mr. Tellstrom accept that | 10:27:02a |
| 21 | recommendation? | 10:27:04a |
| 22 | A    I had another store manager interview | 10:27:05a |
| 23 | her and Rick discussed it with that manager, and | 10:27:08a |
| 24 | then it was approved. | 10:27:11a |
| 25 | Q    Who was that store manager? | 10:27:12a |

71

```
 1      A    Jerry Burger.                        10:27:14a
 2      Q    Mr. Burger was at Healdsburg at that 10:27:16a
 3  point in time?                                10:27:20a
 4      A    Yes.                                 10:27:20a
 5      Q    You say, "I had another store manager 10:27:21a
 6  interview her."  Was that your decision to make 10:27:24a
 7  that request?                                 10:27:27a
 8      A    Yes.                                 10:27:28a
 9      Q    Because you wanted some additional   10:27:28a
10  feedback?                                     10:27:31a
11      A    Yes.                                 10:27:33a
12      Q    Did you hire Mr. Porter?             10:27:33a
13      A    No, I did not.                       10:27:40a
14      Q    Was Mr. Porter already working when you 10:27:41a
15  became a store manager?                       10:27:45a
16      A    No.                                  10:27:46a
17      Q    How was he hired?                    10:27:46a
18      A    Rick hired him.                      10:27:47a
19      Q    How were you told about Mr. Porter's 10:27:48a
20  hire?                                         10:27:52a
21      A    By Rick.                             10:27:52a
22      Q    What did Mr. Tellstrom say to you?   10:27:54a
23      A    He said that he had somebody that he had 10:27:56a
24  worked with previously that he wanted to bring 10:27:59a
25  aboard.                                       10:28:01a
```

72

| | | | |
|---|---|---|---|
| 1 | Q | What tasks are you not getting done? | 10:57:55a |
| 2 | A | Most of it is merchandising. | 10:57:58a |
| 3 | Q | You're not building displays? | 10:58:02a |
| 4 | A | That's some of it, yes. | 10:58:04a |
| 5 | Q | Do you generally build the displays at | 10:58:06a |
| 6 | 2939 or do you delegate that function or a little | | 10:58:08a |
| 7 | of both? | | 10:58:11a |
| 8 | A | Both. | 10:58:12a |
| 9 | Q | Is it a function you like? | 10:58:13a |
| 10 | A | No. | 10:58:15a |
| 11 | Q | Why not? | 10:58:16a |
| 12 | A | Just not something I enjoy doing. | 10:58:20a |
| 13 | Q | Do you ever build a managers' table or | 10:58:24a |
| 14 | managers' promotion? | | 10:58:32a |
| 15 | A | Wow tables? | 10:58:35a |
| 16 | Q | You build wow tables, right? | 10:58:36a |
| 17 | A | I have. Yes. | 10:58:38a |
| 18 | Q | This is a table in the front of the | 10:58:38a |
| 19 | store; is that right? | | 10:58:41a |
| 20 | A | Right. | 10:58:41a |
| 21 | Q | Generally, is there some theme for the | 10:58:42a |
| 22 | table that Dollar Tree provides to you? | | 10:58:44a |
| 23 | A | Yes. | 10:58:46a |
| 24 | Q | Let's do a Mother's Day wow table; is | 10:58:47a |
| 25 | that right? | | 10:58:50a |

82

```
 1        A     Yes.                                  10:58:50a

 2        Q     And is that really as specific as the  10:58:51a

 3   instructions get for the wow table?              10:58:54a

 4        A     They usually include a photo of maybe a  10:58:57a

 5   recommended display.                             10:59:02a

 6        Q     Is it correct that it's not required   10:59:03a

 7   that you follow that recommended display?        10:59:05a

 8        A     Yes.                                  10:59:07a

 9        Q     Do you develop gift baskets for various  10:59:11a

10   holidays?                                        10:59:18a

11        A     Yes.                                  10:59:18a

12        Q     Is that something you do personally or  10:59:19a

13   do you delegate that or both?                    10:59:21a

14        A     Both.                                 10:59:22a

15        Q     Is that something you like to do?      10:59:23a

16        A     No.                                   10:59:24a

17        Q     Is it correct that the store manager or  10:59:36a

18   the person to whom the store manager delegates   10:59:40a

19   this task has the discretion to pick what items  10:59:43a

20   go into any given gift basket?                   10:59:48a

21        A     For the most part, yes.               10:59:51a

22        Q     Do you think that the more attractive  10:59:52a

23   the wow table, the higher the sales are likely to  10:59:57a

24   be?  Do you see a correlation between those two?  11:00:00a

25        A     No.                                   11:00:05a
```

83

| | | |
|---|---|---|
| 1 | that need built. | 11:08:51a |
| 2 | Q    Does anyone your store, aside from the | 11:08:52a |
| 3 | assistant managers or the store manager, build | 11:08:57a |
| 4 | displays? | 11:09:00a |
| 5 | A    Yes. | 11:09:01a |
| 6 | Q    Who else? | 11:09:01a |
| 7 | A    The freight crew, cashiers. | 11:09:02a |
| 8 | Q    Do they do so with direction from the | 11:09:04a |
| 9 | management team? | 11:09:08a |
| 10 | A    Yes. | 11:09:09a |
| 11 | Q    Do you delegate any personnel functions | 11:09:10a |
| 12 | to your assistant store managers? | 11:09:17a |
| 13 | A    I don't think so. | 11:09:19a |
| 14 | Q    So you do all the hiring, all of the | 11:09:21a |
| 15 | counseling, all of the input of personnel | 11:09:24a |
| 16 | information? | 11:09:26a |
| 17 | A    No.  No.  I have had assistants in the | 11:09:26a |
| 18 | past do hiring. | 11:09:30a |
| 19 | Q    Do you input all of the new hire | 11:09:32a |
| 20 | information into the human resources system | 11:09:36a |
| 21 | yourself or do you have someone else do that? | 11:09:39a |
| 22 | A    For the regular employees, I do; for | 11:09:41a |
| 23 | assistant managers, Rick or whichever DM is in | 11:09:44a |
| 24 | charge. | 11:09:48a |
| 25 | Q    Is it correct, then, that you have not | 11:09:48a |

93

| | | |
|---|---|---|
| 1 | Q    Do you call them into the office for | 11:13:56a |
| 2 | that purpose? | 11:13:58a |
| 3 | A    Sometimes; sometimes it's on the sales | 11:13:59a |
| 4 | floor. | 11:14:03a |
| 5 | Q    You delegate markdown functions to your | 11:14:15a |
| 6 | assistant store managers; is that right? | 11:14:18a |
| 7 | A    Sometimes. | 11:14:19a |
| 8 | Q    Do you sometimes do the markdown | 11:14:19a |
| 9 | functions yourself? | 11:14:22a |
| 10 | A    Yes. | 11:14:23a |
| 11 | Q    What does that consist of?  How do you | 11:14:23a |
| 12 | do that? | 11:14:25a |
| 13 | A    Taking the damaged products and scanning | 11:14:25a |
| 14 | them with the prism gun. | 11:14:29a |
| 15 | Q    You told me that sales have increased | 11:14:35a |
| 16 | since you've been the store manager at 2939? | 11:14:37a |
| 17 | A    Yes. | 11:14:40a |
| 18 | Q    Has that been due to anything that you | 11:14:40a |
| 19 | believe you have done? | 11:14:43a |
| 20 | A    I just believe it's more word of mouth. | 11:14:46a |
| 21 | Our customer count has increased, therefore our | 11:14:52a |
| 22 | sales have increased. | 11:14:55a |
| 23 | Q    And have you done anything to, in your | 11:14:55a |
| 24 | judgment, to increase the word of mouth? | 11:14:59a |
| 25 | A    I'm not sure. | 11:15:01a |

98

| | | | |
|---|---|---|---|
| 1 | Q | Why is that? | 11:19:49a |
| 2 | A | He may be going over paperwork with me. | 11:19:50a |
| 3 | Q | What do you do when you're in the | 11:19:53a |
| 4 | office, what kinds of things do you work on? | | 11:20:02a |
| 5 | A | The order, scheduling, cashing out the | 11:20:06a |
| 6 | cashiers, doing the deposits.  That's about it. | | 11:20:10a |
| 7 | Q | Do you do any planning?  Do you develop | 11:20:17a |
| 8 | a master list for the week? | | 11:20:22a |
| 9 | A | I usually do a to-do list.  But I do | 11:20:24a |
| 10 | that daily. | | 11:20:27a |
| 11 | Q | Do you do that in the beginning of the | 11:20:29a |
| 12 | day usually? | | 11:20:30a |
| 13 | A | Yes. | 11:20:31a |
| 14 | Q | Do you keep your to-do lists? | 11:20:32a |
| 15 | A | Yes. | 11:20:35a |
| 16 | Q | Do you have them somewhere? | 11:20:36a |
| 17 | A | Yes.  They are in my clipboard in the | 11:20:37a |
| 18 | office. | | 11:20:39a |
| 19 | Q | Is your playbook in the office as well? | 11:20:40a |
| 20 | A | Yes. | 11:20:43a |
| 21 | Q | Could you make copies of those for me, | 11:20:54a |
| 22 | please? | | 11:20:57a |
| 23 | A | Of? | 11:20:57a |
| 24 | Q | The playbook and clipboard -- and your | 11:20:59a |
| 25 | clipboard to-do list? | | 11:21:01a |

102

| | | |
|---|---|---|
| 1 | A    It varies. | 11:21:54a |
| 2 | Q    Do you look at e-mails you've gotten | 11:21:58a |
| 3 | from Dollar Tree in developing your to-do list? | 11:22:00a |
| 4 | A    Sometimes.  Yes. | 11:22:02a |
| 5 | Q    Do you get e-mails regularly from the | 11:22:03a |
| 6 | operations folks in Virginia? | 11:22:07a |
| 7 | A    Every Monday, yes. | 11:22:09a |
| 8 | Q    And what sort of items are on those | 11:22:13a |
| 9 | Monday e-mails from operations? | 11:22:16a |
| 10 | A    That would be the merchandise bulletin | 11:22:17a |
| 11 | which gives you suggestions of displays, displays | 11:22:19a |
| 12 | that they want built, out-of-date merchandise | 11:22:23a |
| 13 | that's coming up.  And then a sales bulletin | 11:22:30a |
| 14 | which is usually just announcements of anything | 11:22:33a |
| 15 | that's happening. | 11:22:35a |
| 16 | Q    Can you give me an example? | 11:22:37a |
| 17 | A    Off the top of my head, no. | 11:22:39a |
| 18 | Q    Do you recall what the merchandising | 11:22:52a |
| 19 | bulletin was last week? | 11:22:55a |
| 20 | A    No, I don't. | 11:22:57a |
| 21 | Q    Can you give me a typical merchandising | 11:22:58a |
| 22 | bulletin?  Can you describe one to me? | 11:23:00a |
| 23 | A    Yes.  Usually the first part of it is | 11:23:02a |
| 24 | the -- tells you what the item of the week is, | 11:23:05a |
| 25 | and gives you a link for a sign to print off and | 11:23:09a |

104

```
 1    hang up in front to show the customers.  And then      11:23:13a

 2    it goes down, sometimes it's two or three pages,        11:23:15a

 3    sometimes it's only two pages, giving you various       11:23:18a

 4    tasks throughout the week.                              11:23:23a

 5        Q    Do you usually hang the sign for the           11:23:25a

 6    item of the week?                                       11:23:27a

 7        A    When it's printable, yes.                      11:23:28a

 8        Q    Sometimes you can't print it, so you           11:23:32a

 9    don't hang it; is that right?                           11:23:33a

10        A    Correct.                                       11:23:35a

11        Q    Do you build new displays every week?          11:23:37a

12        A    Yes.                                           11:23:39a

13        Q    Approximately, how many end caps do you        11:23:40a

14    have at 2939?                                           11:23:48a

15        A    Approximately, I believe it's right            11:23:50a

16    around 80.                                              11:23:53a

17        Q    So you have a lot of end caps because          11:23:54a

18    you're a racetrack store, correct?                      11:23:58a

19        A    I don't know.                                  11:23:59a

20        Q    You haven't compared the number of end         11:24:01a

21    caps that other stores have?                            11:24:04a

22        A    No.                                            11:24:05a

23        Q    And Dollar Tree gives you some suggested       11:24:05a

24    pictures for end caps, correct?                         11:24:13a

25        A    Yes.                                           11:24:14a
```

105

| | | |
|---|---|---|
| 1 | Q    Do they give you suggested pictures for | 11:24:15a |
| 2 | all 80 end caps? | 11:24:18a |
| 3 | A    No. | 11:24:20a |
| 4 | Q    Approximately, how many do you have to | 11:24:20a |
| 5 | develop yourself without any suggestions? | 11:24:23a |
| 6 | A    I would approximate 75 percent. | 11:24:25a |
| 7 | Q    Do you change your end caps regularly? | 11:24:27a |
| 8 | A    Yes. | 11:24:33a |
| 9 | Q    Can you give me an example of an end cap | 11:24:34a |
| 10 | you've just done? | 11:24:37a |
| 11 | A    Me personally or in the store? | 11:24:38a |
| 12 | Q    Yeah.  Or you developed and asked | 11:24:41a |
| 13 | someone else to do, but one that you designed. | 11:24:44a |
| 14 | A    No. | 11:24:47a |
| 15 | Q    You don't have a favorite end cap in | 11:24:50a |
| 16 | mind? | 11:24:53a |
| 17 | A    No. | 11:24:53a |
| 18 | Q    Do you have front windows? | 11:24:54a |
| 19 | A    Yes. | 11:24:58a |
| 20 | Q    Do you normally have a front window | 11:24:58a |
| 21 | display? | 11:25:01a |
| 22 | A    No. | 11:25:02a |
| 23 | Q    Why not? | 11:25:03a |
| 24 | A    We have shopping carts in our front | 11:25:04a |
| 25 | window. | 11:25:06a |

106

| | | |
|---|---|---|
| 1 | Q     So there's no separate merchandising | 11:25:06a |
| 2 | display in your front window; is that right? | 11:25:11a |
| 3 | A     I don't think so.  No. | 11:25:14a |
| 4 | Q     Is that your decision -- | 11:25:15a |
| 5 | A     No. | 11:25:19a |
| 6 | Q     -- or is there not a place for it? | 11:25:19a |
| 7 | A     For -- I'm sorry? | 11:25:21a |
| 8 | Q     Or is there not a place for a display? | 11:25:21a |
| 9 | A     We used to have displays there. | 11:25:24a |
| 10 | Roselyn changed it.  And now we have shopping | 11:25:26a |
| 11 | carts there instead. | 11:25:30a |
| 12 | Q     Did Ms. Hammond talk to you about that? | 11:25:30a |
| 13 | A     Yes. | 11:25:33a |
| 14 | Q     Did she ask for your view on that | 11:25:33a |
| 15 | change? | 11:25:36a |
| 16 | A     I don't remember. | 11:25:36a |
| 17 | Q     Do you think it's a good change? | 11:25:37a |
| 18 | A     No, I don't. | 11:25:41a |
| 19 | Q     Why not? | 11:25:42a |
| 20 | A     The shopping carts are on tile.  And | 11:25:43a |
| 21 | during rainy season, we have slip-and-fall | 11:25:47a |
| 22 | hazards nearly all day long. | 11:25:50a |
| 23 | Q     Have you talked to Ms. Hammond about | 11:25:52a |
| 24 | that? | 11:25:54a |
| 25 | A     No. | 11:25:54a |

107

| | | | |
|---|---|---|---|
| 1 | Q | Why not? | 11:25:54a |
| 2 | A | I've talked to Rick about it. | 11:25:55a |
| 3 | Q | And what has Rick said? | 11:25:57a |
| 4 | A | That's what Roselyn wants. | 11:25:59a |
| 5 | Q | Have you had any accidents -- | 11:26:01a |
| 6 | A | Not yet, no. | 11:26:08a |
| 7 | Q | -- since it started raining? | 11:26:09a |

8      Have you taken any special precautions      11:26:11a
9  to keep the tile clean?                        11:26:13a
10     A    Mopped up, yeah.  We keep paper towels  11:26:16a
11 up in the check stands for puddles and whatnot.  11:26:21a
12     Q    Was that something that you decided to   11:26:24a
13 do?                                             11:26:26a
14     A    Yes.                                    11:26:26a
15     Q    Did you direct the cashiers to pay      11:26:27a
16 attention to that?                              11:26:28a
17     A    Some of them.  Yes.                     11:26:29a
18     Q    Does your playbook have a monthly       11:26:35a
19 planner?                                        11:26:38a
20     A    Sometimes.                              11:26:39a
21     Q    Do you use that monthly planner?        11:26:40a
22     A    We try to.                              11:26:42a
23     Q    How do you use it?                      11:26:44a
24     A    It shows you where some of the displays 11:26:47a
25 are supposed to be built.                       11:26:50a

108

| | | |
|---|---|---|
| 1 | Q    So you use it as a guideline for the | 11:26:52a |
| 2 | displays? | 11:26:54a |
| 3 | A    Yes. | 11:26:55a |
| 4 | Q    And as I understood your testimony | 11:26:55a |
| 5 | before, you don't always follow the guidelines, | 11:26:57a |
| 6 | correct? | 11:26:59a |
| 7 | A    Correct. | 11:26:59a |
| 8 | Q    Is there a reason for that?  Do you | 11:27:00a |
| 9 | think another display is better or do you not | 11:27:02a |
| 10 | have the product or -- | 11:27:05a |
| 11 | A    It's usually lack of product. | 11:27:06a |
| 12 | Q    So you have to substitute product? | 11:27:08a |
| 13 | A    Yes. | 11:27:11a |
| 14 | Q    Do you keep a weekly business summary in | 11:27:11a |
| 15 | your playbook? | 11:27:21a |
| 16 | A    Occasionally. | 11:27:23a |
| 17 | Q    And why do you only do so occasionally? | 11:27:23a |
| 18 | A    I only have access to that through | 11:27:29a |
| 19 | Rick.  And it's not something that I'm given each | 11:27:31a |
| 20 | week.  So when I have it, it's in there. | 11:27:35a |
| 21 | Q    Do you review it when you have it? | 11:27:37a |
| 22 | A    Yes. | 11:27:39a |
| 23 | Q    And does it assist you in any way? | 11:27:39a |
| 24 | A    No. | 11:27:42a |
| 25 | Q    It tells you what your sales have been. | 11:27:46a |

109

| | | |
|---|---|---|
| 1 | best things to sell, right? | 11:30:49a |
| 2 | A    Yes. | 11:30:52a |
| 3 | Q    Do you track that and do you try to | 11:30:57a |
| 4 | change your merchandising to incorporate where | 11:30:59a |
| 5 | there's a higher margin? | 11:31:03a |
| 6 | A    Not usually.  No. | 11:31:04a |
| 7 | Q    So you look at it, but it doesn't really | 11:31:05a |
| 8 | affect any decisions you make in terms of | 11:31:08a |
| 9 | merchandising or ordering; is that right? | 11:31:10a |
| 10 | A    Correct. | 11:31:11a |
| 11 | Q    Has anyone talked to you about that, | 11:31:12a |
| 12 | said, you know, if you paid more attention to | 11:31:19a |
| 13 | margin, you might be able to increase your sales | 11:31:22a |
| 14 | or the profitability of your sales? | 11:31:24a |
| 15 | A    Yes. | 11:31:25a |
| 16 | Q    Who has told you that? | 11:31:26a |
| 17 | A    I believe Roselyn. | 11:31:27a |
| 18 | Q    And does that make sense to you? | 11:31:29a |
| 19 | A    Yes. | 11:31:31a |
| 20 | Q    So why don't you do it? | 11:31:32a |
| 21 | A    We don't generally have control over the | 11:31:34a |
| 22 | product we receive.  The best I've found is some | 11:31:37a |
| 23 | of the mandatory displays. | 11:31:42a |
| 24 | Q    Some of the mandatory displays that you | 11:31:44a |
| 25 | don't necessarily follow? | 11:31:48a |

| | | | |
|---|---|---|---|
| 1 | A | We follow the two I'm thinking of. | 11:31:49a |
| 2 | Q | Which two are those? | 11:31:52a |
| 3 | A | Tupperware end caps. | 11:31:55a |
| 4 | Q | And Tupperware is houseware; is that | 11:31:59a |
| 5 | | right? | 11:32:01a |
| 6 | A | Yes. | 11:32:02a |
| 7 | Q | Is that the department that it's in? | 11:32:03a |
| 8 | A | Yes. | 11:32:06a |
| 9 | Q | So that's a high margin department? | 11:32:06a |
| 10 | A | Yes. | 11:32:08a |
| 11 | Q | So when you're building a wow table, do | 11:32:09a |
| 12 | | you try to put goods on it that you have from | 11:32:13a |
| 13 | | high margin departments? | 11:32:15a |
| 14 | A | No. | 11:32:17a |
| 15 | Q | Why not? | 11:32:17a |
| 16 | A | We are typically told what to put on the | 11:32:18a |
| 17 | | wow table. | 11:32:22a |
| 18 | Q | You're told generally what the theme of | 11:32:23a |
| 19 | | the wow table is? | 11:32:25a |
| 20 | | MR. COLE:  Objection.  Argumentative. | 11:32:26a |
| 21 | | BY MS. MCCLAIN: | 11:32:29a |
| 22 | Q | Isn't that right?  You're told to build | 11:32:29a |
| 23 | | a wow table for Christmas? | 11:32:30a |
| 24 | A | We are usually told a specific, you | 11:32:32a |
| 25 | | know, this week put picture frames on it.  This | 11:32:34a |

114

| | | |
|---|---|---|
| 1 | Q    And shows those subdepartments by | 11:43:04a |
| 2 | margin? | 11:43:08a |
| 3 | A    I'm not sure. | 11:43:09a |
| 4 | Q    Does it show them by the amount sold? | 11:43:10a |
| 5 | A    It shows the dollars sold. | 11:43:13a |
| 6 | Q    Do you look at that to see what has been | 11:43:16a |
| 7 | selling in your store? | 11:43:19a |
| 8 | A    No. | 11:43:20a |
| 9 | Q    Why not? | 11:43:20a |
| 10 | A    I don't order it, so it doesn't really | 11:43:21a |
| 11 | affect me in my opinion. | 11:43:27a |
| 12 | Q    You don't order anything yourself? | 11:43:29a |
| 13 | A    I order very little. | 11:43:31a |
| 14 | Q    One percent? | 11:43:32a |
| 15 | A    I don't know the number. | 11:43:33a |
| 16 | Q    Do you use the topic 200 SKUs when | 11:43:34a |
| 17 | planning your merchandising or ordering? | 11:43:40a |
| 18 | A    I look at it, yes. | 11:43:43a |
| 19 | Q    What do you do with it? | 11:43:45a |
| 20 | A    It's usually just interesting to see | 11:43:48a |
| 21 | what your best selling items are. | 11:43:50a |
| 22 | Q    And if you have a best selling item, do | 11:43:52a |
| 23 | you try to make sure that item is always stocked, | 11:43:54a |
| 24 | always on the floor? | 11:43:58a |
| 25 | A    No.  No.  If we have it, yes. | 11:44:00a |

| | | |
|---|---|---|
| 1 | be a useful exercise? | 11:44:55a |
| 2 | A    I don't think so. | 11:44:57a |
| 3 | Q    Does your playbook have pull and holds? | 11:44:59a |
| 4 | A    Yes. | 11:45:04a |
| 5 | Q    And what are they? | 11:45:04a |
| 6 | A    Items that have to be pulled off the | 11:45:05a |
| 7 | sales floor. | 11:45:08a |
| 8 | Q    For a variety of reasons; is that right? | 11:45:09a |
| 9 | A    Yes. | 11:45:10a |
| 10 | Q    Either because they are damaged or -- | 11:45:11a |
| 11 | A    We don't know the reasons.  We are not | 11:45:16a |
| 12 | told. | 11:45:18a |
| 13 | Q    You're just told pull and hold? | 11:45:18a |
| 14 | A    Yes. | 11:45:19a |
| 15 | Q    And the things that you pull off the | 11:45:20a |
| 16 | sales floor have to be recorded as being out of | 11:45:21a |
| 17 | inventory, correct? | 11:45:25a |
| 18 | A    Sometimes. | 11:45:25a |
| 19 | Q    What is the distinction? | 11:45:31a |
| 20 | A    A pull and hold, we have to hold it | 11:45:33a |
| 21 | until they tell us what to do with it.  If they | 11:45:35a |
| 22 | tell us to destroy it, then it's removed from the | 11:45:38a |
| 23 | inventory. | 11:45:41a |
| 24 | Q    And do you supervise that process? | 11:45:42a |
| 25 | A    Usually. | 11:45:45a |

PREFERRED REPORTERS
1-866-372-3376

| | | |
|---|---|---|
| 1 | A      Separate form. | 11:48:27a |
| 2 | Q      What is shown on the register order | 11:48:28a |
| 3 | form? | 11:48:30a |
| 4 | A      It's a register audit form.  It's for | 11:48:31a |
| 5 | auditing cashiers during their shift to check the | 11:48:36a |
| 6 | accuracy of their till. | 11:48:39a |
| 7 | Q      So that's essentially a counting of the | 11:48:40a |
| 8 | till, is that right, compared to what's on the | 11:48:43a |
| 9 | register in the transaction recording? | 11:48:45a |
| 10 | A      That's -- | 11:48:51a |
| 11 | Q      How do you do a register audit? | 11:48:51a |
| 12 | A      Okay.  Well, we have a machine in the | 11:48:53a |
| 13 | office that weighs money and we take that machine | 11:48:55a |
| 14 | out to the register and we count the cashier's | 11:48:59a |
| 15 | cash at the register, run a report and match the | 11:49:04a |
| 16 | two together. | 11:49:07a |
| 17 | Q      When you say "we," who does that? | 11:49:08a |
| 18 | A      Myself and assistant managers. | 11:49:13a |
| 19 | Q      Is that a function that's restricted to | 11:49:17a |
| 20 | the management team? | 11:49:18a |
| 21 | A      Yes. | 11:49:19a |
| 22 | MS. MCCLAIN:  May I have this marked as next | 11:49:20a |
| 23 | in order, please? | 11:49:35a |
| 24 | This is in your packet.  It's 1283. | 11:49:54a |
| 25 | (Exhibit 9 was marked for identification.) | 11:49:59a |

123

| | | |
|---|---|---|
| 1 | A    Sort of. | 11:59:37a |
| 2 | Q    Do you see 63 percent, 52 percent, 23 | 11:59:39a |
| 3 | percent? | 11:59:42a |
| 4 | A    Okay.  Yes. | 11:59:43a |
| 5 | Q    If we turn to the last page, which | 11:59:43a |
| 6 | brings us to 2007, we see some variation.  We | 11:59:55a |
| 7 | see, for example, a 22 percent, a 35 percent, and | 12:00:04p |
| 8 | we also see smaller numbers. | 12:00:10p |
| 9 | Is it correct that looking at the period | 12:00:13p |
| 10 | of 2004 to present, the amount you directly order | 12:00:14p |
| 11 | as opposed to the amount that is on the SLIK | 12:00:18p |
| 12 | system, has declined? | 12:00:23p |
| 13 | A    Yes. | 12:00:26p |
| 14 | Q    Are there also -- do you also place less | 12:00:26p |
| 15 | orders?  That is, is the decline only due to | 12:00:36p |
| 16 | what's on the automatic system or is it due to | 12:00:39p |
| 17 | how you've been ordering as well or can you say? | 12:00:41p |
| 18 | A    There's been periods where we used to | 12:00:46p |
| 19 | get two orders a week.  But the majority of it is | 12:00:50p |
| 20 | based on the store switching everything over to | 12:00:53p |
| 21 | automatic replenishment. | 12:00:56p |
| 22 | Q    Well, it's not everything, is it? | 12:00:58p |
| 23 | A    No, it's the majority. | 12:01:00p |
| 24 | Q    What goods do you order that are not on | 12:01:01p |
| 25 | automatic replenishment, presently? | 12:01:03p |

131

| | | |
|---|---|---|
| 1 | A    I usually only order the food department | 12:01:06p |
| 2 | and drinks. | 12:01:09p |
| 3 | Q    So when you place an order yourself, it | 12:01:11p |
| 4 | is normally either for food or drinks; is that | 12:01:16p |
| 5 | right? | 12:01:21p |
| 6 | A    That's usually right, yes. | 12:01:21p |
| 7 | Q    Is there any exception to that | 12:01:23p |
| 8 | currently? | 12:01:25p |
| 9 | A    Yes. | 12:01:26p |
| 10 | Q    What's the exception? | 12:01:26p |
| 11 | A    Occasionally I'll pop into another | 12:01:27p |
| 12 | department and order something. | 12:01:30p |
| 13 | Q    Under what circumstances would you do | 12:01:33p |
| 14 | that?  Can you give me an example? | 12:01:34p |
| 15 | A    Yeah.  If Rick or somebody sends out an | 12:01:37p |
| 16 | e-mail, you know, hey, this item is in the order | 12:01:39p |
| 17 | book, order it.  Then I can go into that | 12:01:42p |
| 18 | department and order it.  And then I also order | 12:01:44p |
| 19 | store supplies. | 12:01:46p |
| 20 | Q    Do you ever look at the order book to | 12:01:47p |
| 21 | see what items are available or do you wait for | 12:01:51p |
| 22 | Mr. Tellstrom to tell you that? | 12:01:55p |
| 23 | A    Not recently.  No. | 12:01:56p |
| 24 | Q    Why not? | 12:01:58p |
| 25 | A    Because so much of it is automatically | 12:01:59p |

132

| | |
|---|---|
| 1 | replenished.  And we are so overstocked in our | 12:02:02p |
| 2 | stockroom, that I don't want merchandise to come | 12:02:06p |
| 3 | in. | 12:02:08p |
| 4 | Q    You would have a different view or a | 12:02:08p |
| 5 | different course of action, if you weren't | 12:02:14p |
| 6 | overstocked; is that right? | 12:02:16p |
| 7 | A    Yes. | 12:02:17p |
| 8 | Q    Have there been times when you've been a | 12:02:18p |
| 9 | store manager when you were not overstocked? | 12:02:20p |
| 10 | A    Yes. | 12:02:22p |
| 11 | Q    Can you tell me the last period of time | 12:02:22p |
| 12 | when that was the case? | 12:02:26p |
| 13 | A    No. | 12:02:26p |
| 14 | Q    This year? | 12:02:27p |
| 15 | A    I don't know. | 12:02:28p |
| 16 | Q    Has your business declined?  What is the | 12:02:30p |
| 17 | reason for the overstock? | 12:02:34p |
| 18 | A    We get whatever corporate wants to send | 12:02:35p |
| 19 | us.  So -- and if we don't have enough manpower | 12:02:39p |
| 20 | to get all that merchandise out, then it fills up | 12:02:43p |
| 21 | the stockroom. | 12:02:46p |
| 22 | Q    Do you know that you can make a request | 12:02:47p |
| 23 | to get less stock? | 12:02:48p |
| 24 | A    Yes. | 12:02:50p |
| 25 | Q    Have you done that? | 12:02:50p |

133

```
 1      A      No.                                    12:48:40p

 2      Q      He's still there?                      12:48:41p

 3      A      Yes.                                   12:48:44p

 4      Q      So he stopped making these kinds of    12:48:46p

 5   mistakes?                                        12:48:48p

 6      A      Yes.                                   12:48:49p

 7      Q      So this worked?                        12:48:52p

 8      A      To an extent.  I believe it may have   12:48:53p

 9   happened since, I'm not positive.                12:48:58p

10      Q      Wouldn't you know that?                12:49:00p

11      A      Not without his file in front of me.   12:49:04p

12   No.                                              12:49:06p

13      Q      If it happened since, do you have any  12:49:06p

14   recollection of your reasoning in not terminating 12:49:13p

15   him?                                             12:49:15p

16      A      It's not up to me to terminate.  So I  12:49:15p

17   have to get approval through HR and --           12:49:21p

18      Q      When you terminate, you consult with HR; 12:49:26p

19   is that right?                                   12:49:29p

20      A      Yes.                                   12:49:29p

21      Q      Who do you normally consult with?      12:49:29p

22      A      The majority of the time it's been     12:49:33p

23   Candace; for a period of time it was Reed.       12:49:35p

24      Q      So that's Mr. Balderas and Ms. Camp,   12:49:38p

25   correct?                                         12:49:42p
```

173

1    Q    So now there's a cashier in charge even          03:01:28p

2  when an assistant manager is not in the store?          03:01:32p

3    A    Yes.                                             03:01:36p

4    Q    Is it your ultimate responsibility to           03:01:36p

5  approve payroll?                                        03:01:53p

6    A    Sometimes.                                       03:01:54p

7    Q    What do you mean by "sometimes"?                 03:01:55p

8    A    Sometimes I approve it; sometimes an            03:02:02p

9  assistant approves it.  Depends on who is working       03:02:05p

10  on the day of approval.                                03:02:08p

11    Q    Is it correct that only you can finally         03:02:10p

12  approve the payroll?                                   03:02:21p

13    A    No.                                             03:02:22p

14    Q    That's something that you allow your            03:02:23p

15  assistant managers to do if they are in the store      03:02:25p

16  when payroll needs to be approved --                   03:02:28p

17    A    Yes.                                            03:02:30p

18    Q    -- and you are not?                             03:02:30p

19    A    Yes.                                            03:02:31p

20    Q    So when I asked you whether your store          03:02:32p

21  employees regularly took their breaks and meal         03:02:55p

22  periods, you said the cashiers, yes, but with          03:02:57p

23  respect to the managers, it's been a problem.          03:02:59p

24  And you have explained to me that problem relates      03:03:02p

25  to you believing you do not have enough coverage       03:03:06p

229

1    Q    Do you agree that it's Dollar Tree's         03:08:11p
2    policy that managers must correct any outstanding    03:08:13p
3    violations, warnings or informed messages?         03:08:15p
4    A    Yes.                                          03:08:20p
5    Q    Those are messages that appear in the        03:08:20p
6    Compass system, correct?                           03:08:22p
7    A    Yes.                                          03:08:23p
8    Q    For example, if someone fails to punch       03:08:23p
9    back in after a break, you will get a message to   03:08:26p
10   that effect?                                       03:08:28p
11   A    Yes.                                          03:08:29p
12   Q    It's the manager's responsibility to         03:08:29p
13   correct that; is that right?                       03:08:30p
14   A    Or one of the assistants.  Yes.              03:08:31p
15   Q    The management team?                          03:08:33p
16   A    Yes.                                          03:08:35p
17   Q    Is it correct that assistant managers        03:08:36p
18   can approve associate hours but cannot approve     03:08:46p
19   their own hours?                                   03:08:52p
20   A    Yes.                                          03:08:53p
21   Q    Do you provide final approval to the         03:08:53p
22   assistant managers' hours every week?              03:08:54p
23   A    No.                                           03:08:57p
24   Q    Who does that?                                03:08:57p
25   A    The other assistant managers.                 03:08:58p

234

| | | |
|---|---|---|
| 1 | Q     You've excluded evaluation because | 03:41:32p |
| 2 | you've not regularly completed performance | 03:41:35p |
| 3 | evaluations; is that right? | 03:41:37p |
| 4 | A     Yes. | 03:41:38p |
| 5 | Q     Do you agree that it is one of your | 03:41:40p |
| 6 | principal responsibilities to maintain production | 03:41:43p |
| 7 | records to evaluate the job performance of sales | 03:41:44p |
| 8 | associates? | 03:41:47p |
| 9 | A     No. | 03:41:48p |
| 10 | Q     Do you review production records? | 03:41:53p |
| 11 | A     The only production records we have ever | 03:41:56p |
| 12 | had were for freight crew, and that was | 03:42:00p |
| 13 | discontinued. | 03:42:03p |
| 14 | Q     When was that discontinued? | 03:42:04p |
| 15 | A     At the last regional meeting. | 03:42:07p |
| 16 | Q     Who discussed the discontinuance of | 03:42:10p |
| 17 | that? | 03:42:15p |
| 18 | A     I don't remember who gave that speech. | 03:42:15p |
| 19 | Q     Do you recall the reason? | 03:42:16p |
| 20 | A     No, I don't. | 03:42:17p |
| 21 | Q     Are stockers expected to have any | 03:42:18p |
| 22 | minimum standards at this point in time? | 03:42:25p |
| 23 | A     Not that I'm aware of, no. | 03:42:31p |
| 24 | Q     Do you agree that it's one of your | 03:42:32p |
| 25 | principal responsibilities to provide leadership | 03:42:36p |

266

```
 1      A    Yes.                                    03:52:00p

 2      Q    So if all you're doing is putting       03:52:01p

 3   something in place in precise position as        03:52:03p

 4   suggested to you in a picture, you don't think   03:52:06p

 5   that's a management responsibility; but if you're 03:52:09p

 6   pulling goods from other parts of the store and   03:52:11p

 7   you're creating your own wow table, you believe   03:52:14p

 8   that's a management responsibility?              03:52:15p

 9      A    No.                                      03:52:16p

10      Q    What's wrong about that statement?       03:52:17p

11      A    If I'm telling somebody how to do it,    03:52:19p

12   that's managerial.                               03:52:21p

13      Q    So you think it's not a managerial       03:52:23p

14   function in any way, shape or form to actually    03:52:28p

15   physically help build the end cap; is that right? 03:52:31p

16      A    Correct.                                 03:52:33p

17      Q    Have you ever told anyone that that's    03:52:34p

18   your impression?                                 03:52:35p

19      A    Yes.                                     03:52:35p

20      Q    Who have you told?                       03:52:37p

21      A    Mr. Cossolotto, Rick.   Other store      03:52:39p

22   managers.                                        03:52:41p

23      Q    Have Mr. Cossolotto and Mr. Tellstrom    03:52:45p

24   agreed with you?                                 03:52:49p

25      A    I can't recall.                          03:52:49p
```

277

```
 1         -- "each day," sorry.  Am I reading that right?        03:55:45p
 2     "I spend most of each day stocking product and            03:55:49p
 3     building sets per my DM's expectations."                   03:55:51p
 4              Am I reading that correctly?                      03:55:54p
 5     A     Yes.                                                 03:55:55p
 6     Q     Is that a reference to Mr. Tellstrom?                03:55:56p
 7     A     Mr. Cossolotto.                                      03:55:58p
 8     Q     Because we are looking at a time frame               03:55:59p
 9     prior to when Mr. Tellstrom assumed the DM                 03:56:01p
10     position; is that right?                                   03:56:05p
11     A     Yes.                                                 03:56:06p
12     Q     Mr. Cossolotto told you that he expected            03:56:06p
13     you to spend most of each day stocking product             03:56:11p
14     and building sets?                                         03:56:14p
15     A     I don't recall.                                      03:56:15p
16     Q     Do you recall why you wrote that?                    03:56:16p
17     A     Yes.  Because I spend the majority of my            03:56:24p
18     time stocking, and Mike never told me not to do            03:56:28p
19     that.                                                      03:56:31p
20     Q     Did you tell Mike that's what you were              03:56:32p
21     doing?                                                     03:56:35p
22     A     Yes.                                                 03:56:36p
23     Q     And how would you prove, Mr. Runnings,             03:56:36p
24     that you spent a majority of your time stocking?           03:56:40p
25     A     I can't.                                             03:56:43p
```

1   STATE OF CALIFORNIA    )

2   COUNTY OF SONOMA     )

3       I, LINDA VACCAREZZA, a Certified Shorthand

4   Reporter of the State of California, duly authorized

5   to administer oaths pursuant to Section 2025 of the

6   California Code of Civil Procedure, do hereby certify

7   that

8             ROBERT LEWIS RUNNINGS,

9      The witness in the foregoing examination, was by

10   me duly sworn to testify the truth, the whole truth

11   and nothing but the truth in the within-entitled

12   cause; that said testimony of said witness was

13   reported by a disinterested person, and was thereafter

14   transcribed under my direction into typewriting and is

15   a true and correct transcription of said proceedings.

16      I further certify that I am not of counsel or

17   attorney for either or any of the parties in the

18   foregoing examination and caption named, nor in any

19   way interested in the outcome of the cause named in

20   said caption.

21      Dated the 3rd day of January, 2008

22

23   LINDA VACCAREZZA, RPR, CSR #10201

24

25

382

```
 1                    Preferred Reporters
                 19229 Sonoma Highway, #112
 2                Sonoma, California 95476-5413
 3
                      January 3, 2008
 4
 5
      To:  Robert Lewis Runnings
 6         SCOTT COLE & ASSOCIATES
           ATTN:  SCOTT COLE, ESQUIRE
 7         1970 Broadway, Ninth Floor
           Oakland, California  94612
 8
      Re:  Runnings v. Dollar Tree Stores
 9         Deposition taken on December 17, 2007
           Reported by Linda Vaccarezza, CSR #10201
10
      Dear Mr. Runnings,
11
           The original transcript of your deposition taken
12    in the above-entitled action has been prepared and is
      available at this office for your reading, correcting
13    and signing.
14         You may wish to discuss this matter with your
      attorney to determine if counsel requires that the
15    original transcript of your deposition be read,
      corrected and signed by you before it is sealed.
16
           Your rights regarding signature of this
17    deposition are contained in the California Code of
      Civil Procedure.
18
           If you wish to make arrangements to review the
19    original transcript of your deposition, please contact
      this office during office hours, 9:00 to 5:00 Monday
20    through Friday, to make an appointment to review the
      original transcript.
21
                      Sincerely,
22
23
                      Linda Vaccarezza
                      Certified Shorthand Reporter
24    cc:  All Counsel
25
```

                                                        383

# EXHIBIT G

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

MIGUEL A. CRUZ, and JOHN
D. HANSEN, individually
and on behalf of all
others similarly
situated,



          Plaintiffs,     Case No.   C07-02050 SC

     vs.


DOLLAR TREE STORES, INC.,

          Defendant.


          DEPOSITION OF MIGUEL A. CRUZ



  DATE:          FRIDAY, OCTOBER 12, 2007

  TIME:          9:32 A.M.

  LOCATION:      Kauff, McClain & McGuire
                 One Post Street, Suite 2600
                 San Francisco, California



          PREFERRED REPORTERS
     Certified Shorthand Reporters
          201 E. Watmaugh Road
       Sonoma, California 95476
          707-938-9227



     REPORTED BY:  Wendy L. Van Meerbeke, CSR #3676

1

1    Q.   Dollar Tree generally told you it expected        10:16:43

2    you to work about 45 hours; correct?                   10:16:45

3    A.   Forty-three to 45.                                10:16:49

4    Q.   Forty-three to 45?                                10:16:51

5    A.   Yes.                                              10:16:53

6    Q.   Why was it that you worked so many more           10:16:53

7    hours than Dollar Tree expected you to work?           10:16:57

8    A.   Not enough employees.                             10:16:59

9    Q.   Did you have vacancies when you were store        10:17:03

10   manager?                                               10:17:05

11   A.   No.                                               10:17:05

12   Q.   Did anyone ever restrict your hiring of           10:17:08

13   employees?                                             10:17:11

14   A.   No.                                               10:17:12

15   Q.   Isn't it right that you could have hired          10:17:13

16   as many employees as you wanted?                       10:17:15

17   A.   No.                                               10:17:16

18   Q.   Who told you you couldn't hire as many            10:17:18

19   employees as you wanted?                               10:17:20

20   A.   Rick.                                             10:17:21

21   Q.   How did he say that?  What did he say?            10:17:23

22   A.   Not enough payroll.                               10:17:26

23   Q.   There's a difference between payroll hours        10:17:28

24   and the number of employees; isn't that right?         10:17:30

25   A.   How are you going to get employees when           10:17:32

38

```
 1        Q.   What sorts of things did you and          10:31:24
 2   Mr. Tellstrom talk about when he arrived?           10:31:27
 3        A.   Other managers.                           10:31:35
 4        Q.   Did Mr. Tellstrom provide you any         10:31:39
 5   assistance in running the business of your store?   10:31:41
 6        A.   Yes.                                       10:31:45
 7        Q.   What sort of assistance did he provide?   10:31:45
 8        A.   Telling me what to do.                    10:31:50
 9        Q.   What did he tell you to do?               10:31:51
10        A.   Making end caps and how to do freight.    10:31:55
11        Q.   What did he say about how to do freight?  10:32:03
12        A.   How to sort food, beverage.  The store    10:32:10
13   goes by sections, so it goes foods, baby stuff,     10:32:28
14   shampoo, so we have to sort everything on pallets.  10:32:35
15        Q.   So when the freight comes in, it comes in 10:32:41
16   by truck, usually; is that right?                   10:32:45
17        A.   Yes.                                       10:32:47
18        Q.   And when do the trucks usually come to the 10:32:47
19   store?  What time frame during the day?             10:32:49
20        A.   It doesn't have an hour.                  10:32:53
21        Q.   The trucks could come at any time; is that 10:32:55
22   right?                                               10:32:57
23        A.   Any time.  Yes.                           10:32:57
24        Q.   Were the trucks usually unloaded at night? 10:32:58
25        A.   No.                                        10:33:03
```

50

| | | |
|---|---|---|
| 1 | Q.  Did you promote any individuals to become | 10:34:10 |
| 2 | assistant managers? | 10:34:11 |
| 3 | A.  No. | 10:34:12 |
| 4 | Q.  Why not? | 10:34:12 |
| 5 | A.  Because Mr. Rick Tellstrom told me not to | 10:34:13 |
| 6 | do that. | 10:34:17 |
| 7 | Q.  Why did he tell you that?  Did he tell you | 10:34:18 |
| 8 | what the reason was? | 10:34:20 |
| 9 | A.  They're not good enough. | 10:34:22 |
| 10 | Q.  Did he tell you to keep looking for other | 10:34:25 |
| 11 | people? | 10:34:27 |
| 12 | A.  No. | 10:34:27 |
| 13 | Q.  Did you keep looking for other people? | 10:34:28 |
| 14 | A.  No. | 10:34:29 |
| 15 | Q.  So you had someone who had freight | 10:34:34 |
| 16 | responsibility, but they were not an assistant | 10:34:37 |
| 17 | manager; is that right? | 10:34:39 |
| 18 | A.  Yes. | 10:34:40 |
| 19 | Q.  Whenever the trucks came in, they were | 10:34:57 |
| 20 | unloaded, is that right, any time of the day or | 10:34:59 |
| 21 | night? | 10:35:02 |
| 22 | A.  Yes. | 10:35:02 |
| 23 | Q.  Who did the physical unloading of the | 10:35:05 |
| 24 | trucks? | 10:35:08 |
| 25 | A.  The driver. | 10:35:08 |

52

1    Q.   Are you sure he said that?              10:36:01

2    A.   Yes.                                    10:36:03

3    Q.   Are you sure he didn't say, "You have to  10:36:04

4  direct others to engage in stocking"?         10:36:06

5    A.   No.                                     10:36:09

6    Q.   Who was responsible for putting the goods  10:36:11

7  on U-boats and taking them to the selling floor?  10:36:14

8    A.   Us.                                     10:36:18

9    Q.   The stockers and you?                   10:36:19

10    A.   The stockers.  Yeah.                    10:36:20

11    Q.   When you say, "yeah," you mean "yes"; is  10:36:26

12  that right?                                    10:36:32

13    A.   Yes.                                    10:36:32

14    Q.   Aside from when Mr. Tellstrom physically  10:36:37

15  came to your store, how often did you talk with  10:36:40

16  him?                                           10:36:43

17    A.   Every day.                              10:36:48

18    Q.   He would call you or you would call him?  10:36:49

19    A.   He would call me.                       10:36:51

20    Q.   Did you ever call him?                  10:36:52

21    A.   Not really.  No.                        10:36:54

22    Q.   You never had a question for him?       10:36:57

23    A.   Yes.                                    10:37:09

24    Q.   Did you call him when you had that      10:37:11

25  question?                                      10:37:12

                                                        54

1    associates' handbook, Mr. Cruz?  This is just an         10:48:36

2    excerpt from it.  There's a full booklet.  Were you      10:48:39

3    familiar with that full booklet?                          10:48:42

4        A.  No.                                               10:48:44

5        Q.  You never saw the store associates'              10:48:44

6    handbook?                                                 10:48:46

7        A.  I saw.                                            10:48:46

8        Q.  Did you hire any employees while you were        10:48:47

9    at the Healdsburg store?                                  10:48:50

10        A.  One.                                             10:48:52

11        Q.  Did you provide that employee with a copy        10:48:52

12    of the store associates' handbook?                       10:48:55

13        A.  Yes.                                             10:48:57

14        Q.  Did you ever review the store associates'        10:48:57

15    handbook?                                                 10:49:00

16        A.  No.                                              10:49:00

17        Q.  You just handed it out?                          10:49:01

18        A.  Yes.                                             10:49:03

19        Q.  Why didn't you look at it?                       10:49:04

20        A.  No time to.                                      10:49:06

21        Q.  Do you see under "Wage and Hour Policy" on       10:49:11

22    the second page that it says, "Federal law and          10:49:14

23    Dollar Tree's policies require all hourly paid           10:49:18

24    associates to be paid in full for all time worked"?      10:49:23

25        A.  Yes.                                             10:49:26

66

1           MS. McCLAIN:  It is a question.                10:54:10

2      Q.  Did it take a lot of time for you to do       10:54:10

3  that?  You had to go into the computer.  You had to   10:54:12

4  figure out who worked overtime.  You had to repunch   10:54:14

5  the time.  You had to calculate what the hours        10:54:17

6  were.                                                 10:54:24

7      A.  I can't calculate.                            10:54:25

8      Q.  Well, how did you know there was overtime?    10:54:26

9      A.  Mr. Rick will call me.                        10:54:28

10     Q.  So Mr. Tellstrom called you every time        10:54:31

11 somebody worked overtime and said, "Go in there and   10:54:33

12 change that time"?                                     10:54:36

13     A.  Every day he would call.                      10:54:37

14     Q.  Did he say, "So-and-so worked overtime.       10:54:40

15 Change that time"?                                     10:54:44

16     A.  Yes.                                           10:54:45

17     Q.  Did he tell you to change the time from       10:54:45

18 7:10 to 7:00?  Did he give you those specific         10:54:51

19 instructions?                                          10:54:54

20     A.  Yes.                                           10:54:55

21     Q.  He did that every day?                         10:54:55

22     A.  Not every day, but when somebody would go     10:54:56

23 over the time.                                         10:55:00

24     Q.  So you told me just a bit ago that every      10:55:08

25 day, he would call.  That's not right?                10:55:11

                                                              71

1    the Healdsburg store was to remove overtime from      11:02:19

2    employees' records?                                    11:02:21

3        A.   No.                                           11:02:22

4        Q.   You never mentioned that?                     11:02:22

5        A.   No.                                           11:02:24

6        Q.   Was it your intent in training the new        11:02:33

7    manager that you were going to become the freight      11:02:36

8    manager, or did you think you were going to leave?     11:02:38

9    You said, "I was training a new manager."  Did you     11:02:44

10   intend to leave when you were training the new         11:02:47

11   manager?                                               11:02:49

12       A.   No.  Rick send --                             11:02:49

13       Q.   Pardon me?                                    11:02:54

14       A.   Rick sent him to the store to be trained.     11:02:56

15       Q.   Rick sent this guy to the store to be         11:02:58

16   trained?                                               11:03:01

17       A.   Yes.                                          11:03:01

18       Q.   Did you know he was going to take over        11:03:01

19   your store?                                            11:03:03

20       A.   No.                                           11:03:04

21       Q.   What were the circumstances of you leaving    11:03:04

22   on January 25, 2007?  What happened?                   11:03:06

23       A.   I worked, um, too many hours the day          11:03:10

24   before, and we agreed to be there at 7:00 in the       11:03:13

25   morning.  He got there at 5:00 in the morning.  He     11:03:17

78

```
1    called Rick about me not being there.  When I got      11:03:22

2    there at 7:00 o'clock in the morning, I got a phone    11:03:28

3    call from Rick saying, um, "Go home.  Come back and    11:03:30

4    close the store."                                      11:03:36

5         I had my child that I have to take care          11:03:38

6    of, and I said, "I can't."  I said, "I can't come      11:03:44

7    back and close."                                       11:03:50

8         I went home.  An hour later, I got a phone        11:03:52

9    call from Mr. Rick.  He called me a smart ass.         11:03:55

10        THE REPORTER:  "He called me" --

11        THE WITNESS:  A smart ass.

12        MS. McCLAIN:  Smart ass.                          11:04:09

13        THE WITNESS:  And said, "You have to get          11:04:10

14   your last check."                                      11:04:19

15        MS. McCLAIN:                                      11:04:19

16   Q.   So he fired you?                                  11:04:20

17   A.   Yes.                                              11:04:21

18   Q.   Did you talk about that with anybody?  Did        11:04:21

19   you call Candace Camp?  Did you discuss it with        11:04:23

20   anyone?                                                11:04:25

21   A.   No.                                               11:04:26

22   Q.   Were you unhappy about being fired?               11:04:26

23   A.   Yes.                                              11:04:32

24   Q.   Why?  I thought you didn't like it there.         11:04:34

25   A.   Nobody -- nobody likes to get fired.              11:04:38
```

1     Q.  How did you decide when you were going to          11:06:56

2     schedule employees?                                     11:06:58

3     A.  I had this schedule.  I used to go by the           11:07:03

4     same schedule every week that I had.                    11:07:09

5     Q.  You just put in the same schedule --                11:07:13

6     A.  Yes.                                                 11:07:16

7     Q.  Every week?                                          11:07:16

8     A.  Yes.                                                 11:07:17

9     Q.  You did that even though you might be                11:07:17

10    busier one week than another?                           11:07:19

11    A.  Yes.                                                 11:07:20

12    Q.  You did that even though you might have             11:07:21

13    specific freights coming in, in a given week?           11:07:24

14    A.  Yes.                                                 11:07:28

15    Q.  Weren't there differences in the store             11:07:28

16    sales from week to week?                                11:07:32

17    A.  Yes.                                                 11:07:35

18    Q.  For example, you would expect to have more         11:07:37

19    store sales in December than you had in July;           11:07:40

20    correct?                                                11:07:44

21    A.  Yes.                                                 11:07:44

22    Q.  Did you increase your staffing in December         11:07:45

23    or did you use the same old schedule you used in        11:07:49

24    July?                                                   11:07:51

25    A.  I think it would change a little bit.               11:07:53

1    Q.  You can say anything.  The question is    12:36:21

2    whether it's true.    12:36:23

3    A.  Well, if I would punch in and out, that    12:36:24

4    would show, you know, but I didn't.    12:36:28

5    Q.  You're going with all the time; is that    12:36:37

6    right?    12:36:39

7    A.  Yes.    12:36:39

8    Q.  Do you know whether Mr. Corina still works    12:37:28

9    at 2262?    12:37:31

10    A.  I really don't know.    12:37:35

11    Q.  Was he there when you left?    12:37:36

12    A.  Yes.    12:37:39

13    MS. McCLAIN:  May I have this marked as    12:37:53

14    next in order, please?    12:37:54

15    (A document was marked as Exhibit 39    12:37:55

16    for identification.)    12:38:41

17    MS. McCLAIN:    12:38:41

18    Q.  Have you seen this document before,    12:38:42

19    Mr. Cruz?    12:38:43

20    A.  I don't remember.    12:38:44

21    Q.  From time to time, did you complete    12:38:52

22    certifications of the time you were spending on    12:38:53

23    various job responsibilities when you worked at    12:38:58

24    Dollar Tree?    12:39:01

25    A.  I --    12:39:08

131

1      Q.   Did you ever go online and answer whether        12:39:08

2   you were doing the job duties that are set forth in      12:39:11

3   this document?                                           12:39:13

4      A.   No.                                              12:39:14

5      Q.   Did you ever hear anything about a               12:39:17

6   certification process?                                   12:39:19

7      A.   No.                                              12:39:20

8      Q.   Did you supervise associates?                    12:39:25

9      A.   I didn't supervise.  I was working with          12:39:31

10   them.                                                    12:39:34

11      Q.   You never directed an associate to get on       12:39:35

12   the cash register, for example?                          12:39:39

13      A.   No.                                              12:39:44

14      Q.   You never gave an associate one direction?      12:39:45

15      A.   Yes.                                             12:39:51

16      Q.   You never said to an associate, "Get a          12:39:52

17   U-boat and get the balloons out on the floor"?           12:39:55

18      A.   Most of the time, we ran out of helium,         12:40:04

19   so --                                                    12:40:10

20      Q.   That was an example -- did you ever direct      12:40:10

21   any associate to get a U-boat and get some form of       12:40:15

22   product on the floor?                                    12:40:21

23      A.   Yes.                                             12:40:22

24      Q.   Did you ever direct an associate to build       12:40:23

25   an end cap?                                              12:40:26

                                                              132

Preferred Reporters
1-866-372-3376

1      A.  No.                                        12:40:28

2      Q.  Who built the end caps?                    12:40:29

3      A.  Me.                                         12:40:31

4      Q.  You never had an associate help?           12:40:31

5      A.  No.                                         12:40:36

6      Q.  You did the end caps all by yourself?      12:40:36

7      A.  Yes.                                        12:40:38

8      Q.  Always?                                     12:40:38

9      A.  Yes.                                        12:40:39

10     Q.  Why?                                        12:40:40

11     A.  I was told from Mr. Rick that my end caps  12:40:45

12  were good because he showed me how to do them.    12:40:51

13     Q.  Did you ever show any of your associates   12:40:57

14  how to do them?                                    12:41:01

15     A.  No.  They would help me.                   12:41:09

16     Q.  Your associates would help you build end   12:41:19

17  caps?                                              12:41:23

18     A.  Yes.                                        12:41:24

19     Q.  Seconds ago, Mr. Cruz, you told me that    12:41:31

20  you never had an associate help you build end caps. 12:41:37

21  Which one of those answers is truthful?            12:41:41

22     A.  I can say they would help.                 12:41:46

23     Q.  Did you ever direct an associate to help   12:41:54

24  you build a particular end cap?                    12:41:57

25     A.  No.                                         12:42:00

```
 1        A.  Uh-huh.                                   01:50:37

 2        Q.  You counted it regularly, you deposited it  01:50:38

 3   regularly, and you did paperwork to show what the    01:50:44

 4   totals and deposits were; correct?                   01:50:47

 5        A.  Yes.                                        01:50:49

 6        Q.  And that was paperwork that you were        01:50:49

 7   responsible for verifying; is that right?            01:50:53

 8        A.  Not just me.  Also the assistant manager.   01:50:54

 9        Q.  You told me that you only hired one         01:51:05

10   employee the whole time you were there; is that      01:51:07

11   right?                                               01:51:09

12        A.  Yes.                                        01:51:09

13        Q.  Did you tell me the name of that employee?  01:51:10

14        A.  Kayla Smith.  Well, at one point, we        01:51:12

15   hired -- I hired ten people.                         01:51:20

16        Q.  When was that?                              01:51:27

17        A.  I don't remember the exact date.            01:51:29

18        Q.  Do you remember the time of year it was?    01:51:34

19        A.  No.                                         01:51:39

20        Q.  Do you remember why you were hiring ten     01:51:40

21   people?                                              01:51:43

22        A.  Because I guess Manuel Rodriguez was        01:51:45

23   coming, and Mr. Rick called me to hire ten people    01:51:55

24   the same date.  To hire -- he called me in the       01:51:58

25   morning and said, "You have to hire ten people by    01:52:04
```

147

```
 1    tonight, and I want them" -- I don't remember if it    01:52:06
 2    was 2:00 in the morning or midnight the same day.      01:52:17
 3         Q.   This has something to do with Manuel          01:52:21
 4    Rodriguez?                                             01:52:25
 5         A.   Yeah.                                         01:52:25
 6         Q.   Who is that?                                  01:52:25
 7         A.   Manuel Rodriguez.  It's the -- what is it?    01:52:26
 8    I guess Rick's boss.                                   01:52:34
 9         Q.   Mr. Rodriguez, who you understood to be       01:52:38
10    Mr. Tellstrom's boss, was coming to visit your         01:52:43
11    store; is that right?                                  01:52:46
12         A.   Yes.  Uh-huh.                                 01:52:48
13         Q.   Mr. Tellstrom called you that morning and    01:52:49
14    said, "Hire ten people to clean up the store"?         01:52:51
15         A.   Uh-huh.                                       01:52:54
16         Q.   To do anything else?                          01:52:55
17         A.   Just to get everything out of the            01:52:56
18    stockroom.                                             01:52:58
19         Q.   To get everything on the shelves --          01:52:58
20         A.   Yes.                                          01:53:01
21         Q.   -- is that right?                             01:53:01
22         A.   Uh-huh.                                       01:53:02
23         Q.   Did you hire ten people?                     01:53:03
24         A.   I think like eight or nine.                  01:53:05
25         Q.   How did you do that?                         01:53:07
```

1    A.  One stayed like a month and a half or          01:54:03

2    something.                                          01:54:10

3    Q.  Do you remember any of their names?            01:54:14

4    A.  I think it was -- one was Carmen, Ramon.       01:54:41

5    Q.  Is that all you recall?                        01:54:55

6    A.  Yes.                                            01:55:00

7        MS. McCLAIN:  May I have this marked as         01:55:22

8    next in order, please?                              01:55:24

9        (A document was marked as Exhibit 40            01:55:24

10   for identification.)                                01:55:36

11       MS. McCLAIN:                                    01:55:43

12   Q.  Ms. Smith is a person that you hired; is       01:55:44

13   that right?                                         01:55:46

14   A.  Yes.                                            01:55:46

15   Q.  Did you consult with anyone with respect        01:55:46

16   to the decision to offer her employment?           01:55:48

17   A.  I think it was Mike Cassollotto.               01:55:56

18   Q.  Are you guessing?                               01:56:01

19   A.  It was Mike Cassollotto.                        01:56:02

20   Q.  So your answer is, yes, you consulted with     01:56:04

21   someone, and the person you consulted with was     01:56:07

22   Mr. Cassollotto; is that right?                     01:56:10

23   A.  Yeah.                                           01:56:12

24   Q.  Is that because Mr. Cassollotto was your       01:56:12

25   district manager in August of 2006?               01:56:14

| | | |
|---|---|---|
| 1 | Q.  Was that a decision on your part?  Did you | 01:59:32 |
| 2 | get approval from anyone to contact those people? | 01:59:36 |
| 3 | A.  No. | 01:59:39 |
| 4 | Q.  Did you ever put an advertisement in a | 01:59:41 |
| 5 | newspaper? | 01:59:44 |
| 6 | A.  No. | 01:59:45 |
| 7 | Q.  Did you have the authority to do that? | 01:59:45 |
| 8 | A.  No. | 01:59:48 |
| 9 | Q.  How do you know that? | 01:59:48 |
| 10 | A.  I never asked them. | 01:59:55 |
| 11 | Q.  So how do you know? | 02:00:00 |
| 12 | A.  Because I'm -- I don't know if I was not | 02:00:02 |
| 13 | allowed.  I wasn't allowed to spend money or where | 02:00:06 |
| 14 | I was going to get the money from to make an | 02:00:15 |
| 15 | advertisement in the newspaper. | 02:00:17 |
| 16 | Q.  You believed you didn't have the funds to | 02:00:19 |
| 17 | do an advertisement? | 02:00:21 |
| 18 | A.  No. | 02:00:22 |
| 19 | Q.  So you called Ms. Smith and said, "Do you | 02:00:22 |
| 20 | want to come to work with me at Dollar Tree," | 02:00:26 |
| 21 | essentially?  Yes? | 02:00:29 |
| 22 | A.  Yes. | 02:00:31 |
| 23 | Q.  Was Ms. Smith still working at Work World | 02:00:31 |
| 24 | at the time? | 02:00:35 |
| 25 | A.  No. | 02:00:35 |

154

| | | |
|---|---|---|
| 1 | A.  No. | 02:03:35 |
| 2 | Q.  Did you have any one of your assistant | 02:03:36 |
| 3 | managers interview Ms. Smith? | 02:03:40 |
| 4 | A.  No. | 02:03:41 |
| 5 | Q.  You got her application and then you | 02:03:41 |
| 6 | offered her a job; is that right? | 02:03:45 |
| 7 | A.  Yes.  But who interviewed her -- it was | 02:03:48 |
| 8 | Rick. | 02:03:52 |
| 9 | Q.  Mr. Tellstrom interviewed her? | 02:03:53 |
| 10 | A.  Yes. | 02:03:54 |
| 11 | Q.  And was that on or around August 28th of | 02:03:56 |
| 12 | 2006 that that occurred? | 02:04:00 |
| 13 | A.  Um, I don't remember the exact date, but, | 02:04:05 |
| 14 | yeah, it was around there. | 02:04:13 |
| 15 | Q.  Is it correct then that you made a | 02:04:16 |
| 16 | recommendation to Mr. Tellstrom that Ms. Smith | 02:04:18 |
| 17 | should be hired, he interviewed her, and agreed | 02:04:21 |
| 18 | with your recommendation? | 02:04:24 |
| 19 | A.  Yes. | 02:04:25 |
| 20 | Q.  And what was Ms. Smith's starting pay? | 02:04:26 |
| 21 | A.  $14 an hour. | 02:04:35 |
| 22 | Q.  Did you make a recommendation as to how | 02:04:36 |
| 23 | much she should be paid? | 02:04:39 |
| 24 | A.  I don't remember. | 02:04:43 |
| 25 | Q.  Did you talk with Ms. Smith about what the | 02:04:45 |

158

| | | |
|---|---|---|
| 1 | potential pay range would be? | 02:04:47 |
| 2 | A.  No. | 02:04:48 |
| 3 | Q.  Were you present the day that Ms. Smith | 02:04:52 |
| 4 | first came to work at Dollar Tree? | 02:04:56 |
| 5 | A.  Yes. | 02:05:04 |
| 6 | Q.  Did you provide Ms. Smith with new-hire | 02:05:05 |
| 7 | paperwork? | 02:05:09 |
| 8 | A.  No. | 02:05:09 |
| 9 | Q.  Did you discuss anything about her being | 02:05:14 |
| 10 | hired with her on that first day? | 02:05:17 |
| 11 | A.  No. | 02:05:19 |
| 12 | Q.  There is new-hire paperwork that needs to | 02:05:19 |
| 13 | be completed; correct? | 02:05:22 |
| 14 | A.  And Rick did it. | 02:05:23 |
| 15 | Q.  Mr. Tellstrom did that? | 02:05:26 |
| 16 | A.  Yes. | 02:05:27 |
| 17 | Q.  Do you know why Mr. Tellstrom did that? | 02:05:30 |
| 18 | Did he tell you why he was doing that as opposed to | 02:05:36 |
| 19 | you? | 02:05:38 |
| 20 | A.  No. | 02:05:38 |
| 21 | Q.  Aside from Ms. Smith and the ten people | 02:05:41 |
| 22 | you hired for a very temporary period of time, did | 02:05:46 |
| 23 | you become involved in the hire of any other | 02:05:51 |
| 24 | individuals at store 2262 between July and January | 02:05:53 |
| 25 | when you were store manager? | 02:05:59 |

159

```
1        Q.  Did you hire Jose Oseguera?              02:11:54

2        A.  Yes.                                      02:12:01

3        Q.  Did you look at his application?          02:12:01

4        A.  I think I did.                            02:12:07

5        Q.  Did you interview him?                    02:12:08

6        A.  Not interview.  Just hired him.           02:12:10

7        Q.  You looked at his application and you     02:12:13

8    thought it looked fine and you extended an offer; 02:12:15

9    is that right?                                    02:12:18

10       A.  Yeah.                                      02:12:19

11       Q.  How did you know how much to pay him?     02:12:19

12       A.  How much?                                  02:12:21

13       Q.  How did you know how much to pay him?     02:12:22

14       A.  Minimum wage.  That's what we were        02:12:24

15   supposed to pay.                                  02:12:26

16       Q.  Who told you that?                         02:12:27

17       A.  Rick.                                       02:12:28

18       Q.  Did you understand that you had any       02:12:29

19   discretion to vary from minimum wage?             02:12:31

20       A.  What is it?                                 02:12:33

21       Q.  Did you understand that you had any       02:12:34

22   ability, any authority to pay more than minimum   02:12:36

23   wage?                                             02:12:39

24       A.  No.                                         02:12:39

25       Q.  Mr. Tellstrom told you to the contrary,   02:12:40
```

164

| | | |
|---|---|---|
| 1 | that you did not have such authority; is that | 02:12:44 |
| 2 | right? | 02:12:46 |
| 3 | A.  Yes. | 02:12:46 |
| 4 | Q.  How long did Mr. Oseguera work for you? | 02:12:47 |
| 5 | A.  I think he was working -- when I left, I | 02:12:55 |
| 6 | think he was still there.  I don't know. | 02:12:59 |
| 7 | MS. McCLAIN:  May I have this marked as | 02:13:07 |
| 8 | next in order, please? | 02:13:08 |
| 9 | (A document was marked as Exhibit 42 | 02:13:10 |
| 10 | for identification.) | 02:13:24 |
| 11 | MS. McCLAIN: | 02:13:24 |
| 12 | Q.  Is this a performance evaluation you | 02:13:24 |
| 13 | completed with regard to Cynthia Marillo? | 02:13:26 |
| 14 | A.  No, I didn't. | 02:13:28 |
| 15 | Q.  Do you know who did? | 02:13:29 |
| 16 | A.  No. | 02:13:31 |
| 17 | Q.  Did you direct your assistant managers to | 02:13:32 |
| 18 | complete performance evaluations? | 02:13:34 |
| 19 | A.  No. | 02:14:04 |
| 20 | Q.  Do you have any understanding as to who | 02:14:05 |
| 21 | completed this performance evaluation in August of | 02:14:06 |
| 22 | 2006? | 02:14:09 |
| 23 | A.  No. | 02:14:10 |
| 24 | Q.  Was Ms. Marillo an employee of your store | 02:14:10 |
| 25 | in August of 2006? | 02:14:14 |

165

```
 1        A.   Yes.                                    02:14:15

 2        Q.   Did you keep track of when performance   02:14:16

 3   evaluations were due?                              02:14:18

 4        A.   No.                                      02:14:20

 5        Q.   Is it correct that they were due after 30  02:14:21

 6   days, after six months, and then annually?         02:14:25

 7        A.   Yes.                                      02:14:28

 8        Q.   How would you know when to get them done   02:14:28

 9   if you didn't keep track of it?                    02:14:30

10        A.   Mr. Rick went to the store and told me to   02:14:31

11   do that because they were asking for a raise so he   02:14:36

12   asked me to do that.                               02:14:40

13        Q.   Asked you to do what?                    02:14:41

14        A.   Review.                                  02:14:42

15        Q.   When did Mr. Tellstrom ask you to do one   02:14:45

16   or more reviews?                                   02:14:47

17        A.   I don't remember how many times.         02:14:49

18        Q.   This happened on more than one occasion?   02:14:52

19        A.   No.                                      02:14:54

20        Q.   At one point, one employee asked you for a   02:14:54

21   raise.  You discussed it with Mr. Tellstrom.  He   02:14:57

22   said you have to do a review for the employee to   02:14:59

23   get a raise.  Is that right?                       02:15:02

24        A.   No.  He asked me to do the reviews.      02:15:03

25        Q.   No one said anything about a raise to you?  02:15:06
```

166

```
1          A.   They said, and I asked Rick, and he told      02:15:12

2     me to do the evaluation, but that's it.              02:15:17

3          Q.   Who are the employees that asked you about   02:15:22

4     a raise?                                              02:15:24

5          A.   Maria.                                       02:15:25

6          Q.   The employee we're looking at, Ms. --       02:15:27

7          A.   Juanna, I think.                             02:15:30

8          Q.   Pardon me?                                   02:15:32

9          A.   Maria, Juanna.                               02:15:33

10         Q.   So not Ms. Marillo?                          02:15:34

11         A.   Huh?                                         02:15:36

12         Q.   Not the employee we're looking at?  Not     02:15:37

13    Ms. Marillo?  The people you're talking about are     02:15:40

14    Juanna and Maria; is that right?                      02:15:42

15         A.   Yes.                                         02:15:44

16         Q.   Juanna's last name was Rodriguez?           02:15:44

17         A.   Yes.                                         02:15:48

18         Q.   And Marie's something name was what?        02:15:48

19         A.   Olvera.                                      02:15:51

20         Q.   Did you perform -- complete a performance   02:15:54

21    evaluation for Juanna and Maria?                      02:15:59

22         A.   Yes.                                         02:16:01

23         Q.   Did they get a raise?                        02:16:01

24         A.   No.                                          02:16:02

25         Q.   What was your evaluation?  Was it good?     02:16:03
```

167

| | | |
|---|---|---|
| 1 | How did you evaluate their work performance? | 02:16:08 |
| 2 | A. Above average. | 02:16:11 |
| 3 | Q. Did you fill out a form similar to the one | 02:16:15 |
| 4 | we're looking at in Exhibit 42 -- | 02:16:18 |
| 5 | A. Yes. | 02:16:20 |
| 6 | Q. -- on those two individuals? | 02:16:20 |
| 7 | A. Yes, I think I did. | 02:16:21 |
| 8 | Q. Do you know why they didn't get a raise? | 02:16:23 |
| 9 | A. No. | 02:16:25 |
| 10 | Q. Do you -- are you sure they didn't get a | 02:16:27 |
| 11 | raise? | 02:16:30 |
| 12 | A. Um, no. | 02:16:33 |
| 13 | Q. So you don't know whether they got a raise | 02:16:42 |
| 14 | at that time or not? | 02:16:44 |
| 15 | A. No. | 02:16:45 |
| 16 | Q. One way or the other? | 02:16:45 |
| 17 | A. Yeah. | 02:16:46 |
| 18 | Q. A few seconds ago I said, "Did they get a | 02:16:52 |
| 19 | raise?" You answered, "No." That answer was | 02:16:55 |
| 20 | incorrect? | 02:17:00 |
| 21 | A. What I remember is not getting a raise. | 02:17:02 |
| 22 | Q. But you're not sure about that; is that | 02:17:07 |
| 23 | right? | 02:17:11 |
| 24 | A. No, they didn't get a raise. | 02:17:13 |
| 25 | Q. Did you hire Omar Moya? | 02:17:23 |

168

```
 1        A.   I didn't choose.                          02:26:27

 2        Q.   Nothing prevented you from calling them in  02:26:29

 3   and talking to them?                                02:26:32

 4        A.   Not when my boss is telling me, "Just     02:26:38

 5   don't waste your time.   It's just another body.   If  02:26:41

 6   it works, it works."                               02:26:45

 7        Q.   Mr. Tellstrom told you not to interview   02:26:47

 8   people?                                            02:26:49

 9        A.   Yeah.                                     02:26:49

10        Q.   He told you not to waste your time on     02:26:50

11   interviewing people; is that right?                02:26:51

12        A.   Yeah.                                     02:26:53

13        Q.   When did he tell you that?                02:26:53

14        A.   I don't remember.                         02:26:55

15        Q.   Did he tell you that more than once?      02:26:56

16        A.   Yes.                                      02:26:58

17        Q.   When Mr. Tellstrom interviewed Ms. Smith,  02:27:02

18   did you ask him why he was wasting his time on that  02:27:06

19   process?                                           02:27:09

20        A.   No.                                       02:27:10

21        Q.   Did you point out that he was being       02:27:11

22   inconsistent with what he had told you?            02:27:13

23        A.   That was when I first started.            02:27:16

24        Q.   Pardon me?                                02:27:18

25        A.   He hired her when I just first started.   02:27:20
```

```
 1      the ordering of product?                        02:36:49

 2          A.   Yes.                                    02:36:50

 3          Q.   Because you had to submit a computer    02:36:51

 4      order; is that right?                            02:36:54

 5          A.   Yes.                                    02:36:55

 6          Q.   Did you have vendors delivering to your 02:36:55

 7      store?                                           02:36:59

 8          A.   Frozen food and milk.                   02:37:01

 9          Q.   Frozen foods and milk?                  02:37:03

10          A.   Dairy.                                  02:37:05

11          Q.   And did you have responsibilities to check 02:37:06

12      the shipments that the vendors were bringing?    02:37:11

13          A.   I never really checked the vendors.     02:37:19

14          Q.   Did you have any responsibility for     02:37:22

15      receiving the goods that the vendors were bringing? 02:37:24

16          A.   Anybody can receive the vendors.        02:37:28

17          Q.   So anyone could have checked off that the 02:37:30

18      vendor was delivering the right amount; is that  02:37:32

19      right?                                           02:37:34

20          A.   Yes.                                    02:37:34

21          Q.   And by "anyone," you mean an hourly     02:37:34

22      associate, an assistant manager?                 02:37:39

23          A.   An assistant manager.                   02:37:41

24          Q.   So you don't mean anyone?               02:37:45

25          A.   Assistant manager, manager.             02:37:46
```

185

```
 1        Q.  So you usually didn't have that amount of    02:47:31

 2   money?                                                02:47:33

 3        A.  No.                                          02:47:34

 4        Q.  You had it at this point in time because     02:47:34

 5   of the Christmas season?                              02:47:36

 6        A.  At this point, it was Christmas.             02:47:37

 7        Q.  Once again, then the issuance of this        02:47:38

 8   counseling form was not your decision?                02:47:42

 9        A.  No.                                          02:47:44

10        Q.  Mr. Tellstrom told you to write it out?      02:47:45

11        A.  Yes.                                         02:47:47

12        Q.  And he told you what to say?                 02:47:47

13        A.  Yes.                                         02:47:48

14        Q.  What did Ms. Cape say when you gave it to    02:47:49

15   her?                                                  02:47:52

16        A.  Nothing.                                     02:47:52

17        Q.  What did you say to her when you gave it     02:47:53

18   to her?                                               02:47:55

19        A.  Well, Rick told me to --                     02:47:58

20        Q.  Did you say, "Um, Lori, Rick Tellstrom       02:47:59

21   told me to give you this"?                            02:48:04

22        A.  Yes.                                         02:48:06

23        Q.  So you told Lori it wasn't your doing,       02:48:06

24   that it was Mr. Tellstrom's doing?                    02:48:08

25        A.  I told her that I was supposed to because    02:48:10
```

193

1          Is it correct that assistant managers were          03:05:19

2     not to assign overtime to employees without          03:05:22

3     approval from you?          03:05:24

4          A.    Nobody should be allowed, not even me.          03:05:26

5          Q.    No one should be allowed to sign overtime;          03:05:29

6     correct?          03:05:32

7          A.    No.          03:05:34

8          Q.    Was it a policy of Dollar Tree that under          03:05:34

9     no circumstances ever, ever, ever could you work          03:05:40

10    overtime -- could anyone work overtime?          03:05:43

11         MR. FIETZ:    Objection.    Vague.          03:05:46

12         MS. McCLAIN:          03:05:46

13         Q.    Did you understand that Dollar Tree had          03:05:47

14    any policy one way or the other about hourly          03:05:48

15    employees working overtime?          03:05:51

16         A.    No.          03:05:54

17         Q.    You didn't understand that there was a          03:05:58

18    policy either prohibiting it or allowing it?          03:05:59

19         A.    As far as I know, you're not supposed to          03:06:04

20    give overtime at Dollar Tree.          03:06:06

21         Q.    How do you know that?          03:06:08

22         A.    From Mr. Rick.          03:06:10

23         MS. McCLAIN:    May I have this marked as          03:06:47

24    next in order, please?          03:06:48

25

1    Q.  Do you have any understanding as to who    03:09:16

2  wrote "605 short"?    03:09:18

3    A.  No.    03:09:20

4        MS. McCLAIN:  May I have this marked as    03:09:33

5  next in order, please?    03:09:35

6        (A document was marked as Exhibit 48    03:09:36

7  for identification.)    03:09:53

8        MS. McCLAIN:    03:09:53

9    Q.  Is Exhibit 48 in your handwriting,    03:09:54

10  Mr. Cruz?    03:09:56

11    A.  Yes.    03:09:57

12    Q.  Did you fill out Exhibit 48?    03:09:57

13    A.  Yes.    03:10:02

14    Q.  Was it your decision to issue this warning    03:10:12

15  to Mr. Davis?    03:10:14

16    A.  No.    03:10:16

17    Q.  Whose decision was it, if you know?    03:10:20

18    A.  Mr. Rick, um, went to the store and he saw    03:10:26

19  us smoking out -- outside of the store, and I guess    03:10:33

20  he talked to Lori, and he asked me to do that, to    03:10:38

21  write him up.    03:10:45

22    Q.  Write him up for what?    03:10:48

23    A.  For clocking in and out.    03:10:49

24    Q.  Is this for clocking in and out or for not    03:11:04

25  clocking?    03:11:06

199

1    A.  For not clocking.                              03:11:07

2    Q.  Mr. Davis was taking breaks but not          03:11:08

3   clocking in and out; is that right?               03:11:13

4    A.  Yes.                                          03:11:14

5    Q.  Did you know that to be the case?            03:11:14

6    A.  No.                                           03:11:16

7    Q.  Had you reviewed his time punches to see     03:11:16

8   that he wasn't punching in and out for breaks?    03:11:20

9    A.  No.                                           03:11:23

10   Q.  So this was news to you?                      03:11:23

11   A.  Yes.                                          03:11:24

12   Q.  Did you talk with Mr. Davis about this?      03:11:28

13   A.  I talked to him.  Yes.                        03:11:35

14   Q.  What did you say and what did he say?        03:11:37

15   A.  He didn't care.                               03:11:41

16   Q.  He said, "I'm not going to punch in and      03:11:44

17  out.  I don't care what you say to me"?           03:11:46

18   A.  He was leaving, I think.                      03:11:52

19   Q.  He was quitting?                              03:11:53

20   A.  Yes.                                          03:11:54

21   Q.  Did he quit shortly after this?             03:11:54

22   A.  I don't remember.                             03:11:56

23   Q.  He said to you, "I don't care what you       03:11:56

24  tell me"?                                          03:11:59

25   A.  Yeah.                                         03:12:00

200

1       Q.   There's always another body, essentially?    03:19:09

2       A.   Yes.                                          03:19:12

3            MS. McCLAIN:   May I have this marked as       03:19:22

4    next in order, please?                               03:19:23

5            (A document was marked as Exhibit 50          03:19:41

6    for identification.)                                 03:19:42

7            MS. McCLAIN:                                  03:19:42

8       Q.   Before we move on to 50, Mr. Cruz, would      03:19:42

9    you have a look at Exhibit 49 again?  Was            03:19:45

10   Ms. Garcia terminated for leaving early?             03:19:49

11      A.   Yes.                                          03:19:55

12      Q.   Did you mark "termination" on this            03:19:55

13   document?                                            03:19:57

14      A.   Yes.                                          03:19:58

15      Q.   So there was another individual who was       03:19:58

16   discharged while you were store manager at 2262,     03:20:00

17   correct, addition to Sandy?                          03:20:08

18      A.   Yes.                                          03:20:10

19      Q.   Was it your decision to discharge             03:20:10

20   Ms. Garcia?                                           03:20:12

21      A.   Yes.                                          03:20:14

22      Q.   Did you apprise Mr. Tellstrom that that       03:20:14

23   was your decision?  Did you tell him, "I'm going to  03:20:25

24   fire her," or did you just do it?                    03:20:27

25      A.   No.   Um, he asked me how many people I had   03:20:29

207

|    |                                                                      |          |
|----|----------------------------------------------------------------------|----------|
| 1  | warning (sic), and I said, "What happened with                       | 03:20:39 |
| 2  | her?"  And he said to get rid of her.                                | 03:20:41 |
| 3  |        Q.  Did you agree with that?                                  | 03:20:43 |
| 4  |        A.  It wasn't if I agreed or not.                             | 03:20:45 |
| 5  |        Q.  I asked you very recently, "Was it your                   | 03:20:52 |
| 6  | decision to discharge Ms. Garcia?"  And your answer                  | 03:20:58 |
| 7  | was, "Yes."  Is that testimony wrong?                                | 03:21:01 |
| 8  |        A.  No.                                                       | 03:21:04 |
| 9  |        Q.  So whose decision was it?                                 | 03:21:10 |
| 10 |        A.  I can say both.                                           | 03:21:13 |
| 11 |        Q.  Pardon me?                                                | 03:21:14 |
| 12 |        A.  Both.                                                     | 03:21:15 |
| 13 |        Q.  You both agreed?                                          | 03:21:15 |
| 14 |        A.  Yes.                                                      | 03:21:16 |
| 15 |        Q.  Who first came up with the idea that                     | 03:21:16 |
| 16 | termination was appropriate?                                         | 03:21:18 |
| 17 |        A.  Mr. Rick.                                                 | 03:21:19 |
| 18 |        Q.  Did you say to Mr. Tellstrom, "I agree                    | 03:21:27 |
| 19 | with that"?                                                          | 03:21:30 |
| 20 |        A.  I didn't say -- I don't remember if I said                | 03:21:32 |
| 21 | that.                                                                | 03:21:35 |
| 22 |        Q.  If you had disagreed, would you have told                 | 03:21:36 |
| 23 | him?  If she was a pretty good employee and you                      | 03:21:38 |
| 24 | thought she wouldn't do this again and you needed                    | 03:21:44 |
| 25 | someone, would you have told that to Mr. Tellstrom?                  | 03:21:46 |

208

```
1        A.  Yes.                                        03:31:26

2        Q.  And as far as you know, no warning notices  03:31:26

3   were ever issued by your assistant managers; is      03:31:30

4   that right?                                           03:31:32

5        A.  Yes.                                         03:31:32

6        Q.  So when you see one that's issued by an      03:31:33

7   assistant manager, you are surprised; is that         03:31:36

8   right?                                                03:31:38

9        A.  Yes.   Especially this.                      03:31:38

10       Q.  Especially this one?  Why?                   03:31:39

11       A.  I never -- I never see this one before.      03:31:43

12   Also, I don't remember this girl.                    03:31:53

13       Q.  You don't remember Ms. Sanchez?             03:31:54

14       A.  No.                                          03:31:56

15       Q.  Did you keep personnel files at the store?   03:32:00

16       A.  Yes.                                         03:32:04

17       Q.  Were they maintained under your              03:32:04

18   supervision?                                          03:32:07

19       A.  Yeah.                                        03:32:10

20       Q.  Yes?                                         03:32:10

21       A.  Yes.                                         03:32:14

22       Q.  Did you actually oversee what was placed     03:32:15

23   in the personnel files?                              03:32:19

24       A.  No.                                          03:32:22

25       Q.  Were they kept in the office?                03:32:22
```

                                                                    215

1      A.   Yes.                                    03:32:24

2      Q.   Did you review the personnel files from  03:32:25

3   time to time?                                    03:32:28

4      A.   No.                                      03:32:28

5      Q.   Is it correct that no assistant manager, 03:32:34

6   when you were a store manager at 2262, said words 03:32:36

7   to the effect of, "I'm going to give so-and-so a  03:32:39

8   warning notice," to you?                         03:32:42

9      A.   Not that I remember.                     03:32:44

10     Q.   No one ever indicated to you that they   03:32:46

11  were going to do so?                             03:32:48

12     A.   Not that I remember.                     03:32:51

13     Q.   Did any employee ever come to you and say, 03:32:52

14  "That assistant manager just gave me a warning    03:32:56

15  notice and I don't think it's right"?             03:32:58

16     A.   I don't remember.                        03:33:08

17        MS. McCLAIN:   May I have this marked as    03:33:22

18  next in order, please?                            03:33:23

19           (A document was marked as Exhibit 53     03:33:26

20  for identification.)                              03:34:00

21        MS. McCLAIN:                                03:34:10

22     Q.   May I see what you have marked as 53?     03:34:11

23  Yes.                                              03:34:18

24        Ms. Smith was an assistant manager;         03:34:20

25  correct?                                          03:34:24

Preferred Reporters
1-866-372-3376

1       A.   Yes.                                    03:34:24

2       Q.   Looking at Exhibit 53, Ms. Stewart was an   03:34:25

3   employee at 2262?                                03:34:32

4       A.   Yes.                                    03:34:35

5       Q.   Did you have any understanding that     03:34:35

6   Ms. Smith was issuing this warning notice?       03:34:37

7       A.   If I remember right, yes, she told me    03:34:40

8   about it.                                        03:34:45

9       Q.   Ms. Smith told you about this?          03:34:45

10      A.   Yes.                                    03:34:47

11      Q.   What did she say?                       03:34:47

12      A.   That Rick called and said Kim had too many   03:34:48

13  items voids, and she had to issue a counseling    03:34:56

14  form.                                            03:35:06

15      Q.   So Ms. Smith told you that Exhibit 53 was   03:35:08

16  Mr. Tellstrom's idea --                          03:35:15

17      A.   Yes.                                    03:35:16

18      Q.   -- is that right?                       03:35:17

19      A.   Yes.                                    03:35:17

20      Q.   Were you surprised that Mr. Tellstrom had   03:35:22

21  asked an assistant store manager to issue a warning   03:35:25

22  notice?                                          03:35:29

23      A.   No.                                     03:35:31

24      Q.   So you thought the assistant store       03:35:34

25  managers had the authority to issue warning notices   03:35:36

217

1    ever before?                                      03:39:36

2        A.   No, no.                                  03:39:37

3        Q.   How were cashiers trained at your store?  03:39:57

4    How did that happen when a new cashier started    03:40:00

5    working?                                          03:40:03

6        A.   Another cashier was trained.             03:40:07

7        Q.   Did you train stockers?                  03:40:10

8        A.   No.                                      03:40:15

9        Q.   Who trained the stockers?               03:40:16

10       A.   I didn't train the stockers, so I would  03:40:21

11   say like, "Oh, just do how you can," I mean.      03:40:25

12       Q.   Did anyone train the stockers?          03:40:32

13       A.   No.                                      03:40:34

14       Q.   Don't you have to at least tell the      03:40:36

15   stockers how they get the freight from the storage 03:40:38

16   area to the floor?  Doesn't somebody have to show  03:40:45

17   them U-boats, for example, or pallets?            03:40:48

18       A.   You can't bring pallets out.             03:40:52

19       Q.   The stockers use pallets from time to    03:40:54

20   time?                                             03:40:58

21       A.   ·Huh?                                    03:40:58

22       Q.   The stockers do use pallets from time to  03:40:58

23   time; right?  Getting the freight from the truck to 03:41:00

24   the warehouse area or the storage area.           03:41:04

25       A.   No.  You have -- what is it called?  Like 03:41:07

```
 1    they didn't need to be trained; is that right?        03:43:57

 2        A.  No.                                            03:43:58

 3        Q.  Why did you tell me that about Safeway?        03:43:59

 4        A.  Because that's what he used to say, like       03:44:02

 5    just let them -- at the registers, you mean, or --     03:44:08

 6    what was the question?                                 03:44:14

 7        Q.  The question was, did you give your store      03:44:15

 8    employees training in customer service ever?           03:44:20

 9        A.  No.                                            03:44:24

10        Q.  Did you say, "We want to wait on customers     03:44:26

11    quickly.  We always want to say, 'Welcome to Dollar    03:44:29

12    Tree.'  You're not supposed to be nasty to             03:44:36

13    customers"?  Did you say anything like that?           03:44:37

14        A.  Rick used to say, "Get them in and out,"       03:44:40

15    so that's why I have to be on the register.            03:44:47

16        Q.  Mr. Cruz, that answer seems to have no         03:44:52

17    relationship to the question posed.  Let me try the    03:44:54

18    question again.                                        03:44:57

19        A.  Well, we didn't have customer service.         03:44:57

20        Q.  Pardon me?                                     03:45:00

21        A.  We didn't have customer service.               03:45:01

22        Q.  You didn't think it was necessary to give      03:45:12

23    your employees any information about how to deal        03:45:16

24    with customers because you were supposed to get        03:45:20

25    them in and out; is that right?                        03:45:24
```

224

| | | |
|---|---|---|
| 1 | Q.   Do you agree that you were responsible for | 03:50:04 |
| 2 | developing the skills of store personnel? | 03:50:07 |
| 3 | A.   No. | 03:50:10 |
| 4 | Q.   Did anyone have that responsibility, in | 03:50:11 |
| 5 | your view? | 03:50:13 |
| 6 | A.   No. | 03:50:14 |
| 7 | Q.   Do you agree that you were responsible for | 03:50:16 |
| 8 | disciplining store personnel? | 03:50:19 |
| 9 | A.   I would say yes. | 03:50:25 |
| 10 | Q.   Did you review production reports to | 03:50:26 |
| 11 | evaluate how productive your employees were? | 03:50:28 |
| 12 | A.   No. | 03:50:33 |
| 13 | Q.   Did you ever look at how many sales were | 03:50:33 |
| 14 | made by any employee? | 03:50:36 |
| 15 | A.   No. | 03:50:38 |
| 16 | Q.   Did you have the ability to look at such a | 03:50:39 |
| 17 | report? | 03:50:41 |
| 18 | A.   What do you mean? | 03:50:42 |
| 19 | Q.   Did you have reports that showed who rang | 03:50:44 |
| 20 | up what sale so that you could see how many sales | 03:50:47 |
| 21 | were rung up by an employee in any given time | 03:50:52 |
| 22 | period? | 03:50:58 |
| 23 | A.   Not by item.  Just by dollars. | 03:51:01 |
| 24 | Q.   So you could see what employees rang up in | 03:51:02 |
| 25 | terms of overall dollar volume; is that right? | 03:51:05 |

229

|   |   |   |
|---|---|---|
| 1 | A.  Yes. | 03:51:11 |
| 2 | Q.  What was that report called? | 03:51:12 |
| 3 | A.  I don't remember. | 03:51:13 |
| 4 | Q.  Where did you find that report? | 03:51:14 |
| 5 | A.  On the closing receipt. | 03:51:16 |
| 6 | Q.  On the cash register itself? | 03:51:20 |
| 7 | A.  Yeah.  When you close the register. | 03:51:23 |
| 8 | Q.  Did you look at the accounting of activity | 03:51:24 |
| 9 | on the register? | 03:51:30 |
| 10 | A.  No. | 03:51:31 |
| 11 | Q.  Did you ever pay any attention to which of | 03:51:32 |
| 12 | your employees was ringing up the most sales? | 03:51:34 |
| 13 | A.  No. | 03:51:37 |
| 14 | Q.  Did you ever pay any attention to which of | 03:51:38 |
| 15 | your employees was the most efficient in terms of | 03:51:40 |
| 16 | stocking? | 03:51:43 |
| 17 | A.  No. | 03:51:47 |
| 18 | Q.  Was there any way, in your judgment, to | 03:51:47 |
| 19 | measure how many pieces of goods were stocked by | 03:51:49 |
| 20 | any given employee? | 03:51:55 |
| 21 | A.  Mr. Rick told me, but I -- nobody could | 03:52:07 |
| 22 | have done whatever he was saying, how many boxes | 03:52:12 |
| 23 | per hour. | 03:52:16 |
| 24 | Q.  The question was, did you have any report | 03:52:27 |
| 25 | or system to measure the productivity of the | 03:52:29 |

230

1       A.   No.                                        03:53:30

2       Q.   Is that right?                             03:53:30

3       A.   Yes.                                        03:53:30

4       Q.   Do you agree that it was your             03:53:33

5   responsibility to provide leadership and direction  03:53:35

6   to store personnel?                                 03:53:36

7       A.   Yes.                                        03:53:37

8       Q.   Do you agree that it was your             03:53:37

9   responsibility to communicate company policies to   03:53:39

10  sales associates?                                   03:53:41

11      A.   No.                                        03:53:43

12      Q.   Did you ever receive any company policies  03:53:44

13  that you communicated to sales associates?          03:53:47

14      A.   No.                                        03:53:48

15          MS. McCLAIN:   May I have this marked as    03:54:34

16  next in order, please?                              03:54:35

17          (A document was marked as Exhibit 57        03:54:36

18  for identification.)                                03:54:50

19          MS. McCLAIN:                                03:54:54

20      Q.   Did you ever see a memorandum similar to   03:54:54

21  this one saying, "Please distribute these notices   03:54:56

22  to associates"?                                     03:55:00

23      A.   No.                                        03:55:05

24      Q.   So the whole time that you were a store    03:55:06

25  manager, you never got a memorandum from            03:55:08

                                                             232

```
 1        Q.   It changed when you were store manager?        04:00:03

 2        A.   Yes.                                           04:00:06

 3        Q.   Then he became kind of overly directive,       04:00:06

 4   in your view?                                            04:00:10

 5        A.   Yes.                                           04:00:11

 6        Q.   Giving you too many directions; is that        04:00:11

 7   right?                                                   04:00:14

 8        A.   Demanding.                                     04:00:14

 9        Q.   Demanding results?                             04:00:16

10        A.   Yes.                                           04:00:17

11        Q.   That was his job; wasn't it?  To demand        04:00:17

12   results from the store managers?                         04:00:22

13        A.   Demanding -- running my store.                 04:00:24

14        Q.   Pardon me?                                     04:00:27

15        A.   He would run my store.                         04:00:27

16        Q.   You thought he was too involved in the         04:00:29

17   running of your store; is that right?                    04:00:31

18        A.   Yes.                                           04:00:32

19        Q.   You would have liked him to have backed        04:00:33

20   off and given you more discretion?                       04:00:36

21        A.   Yes.                                           04:00:38

22        Q.   And in what areas did you want more            04:00:38

23   discretion?                                              04:00:40

24        A.   Make decisions.                                04:00:43

25        Q.   In what areas?  About what?                    04:00:45
```

238

1    A.  Everything.                                04:00:47

2    Q.  Personnel, staffing?                       04:00:50

3    A.  Yes.                                        04:00:52

4    Q.  And you thought he gave you too many        04:00:52

5    restrictions in those areas?                    04:00:55

6    A.  Yes.                                        04:00:56

7    Q.  Do you know whether he treated you in a     04:00:58

8    fashion similar to how he treated other store   04:01:01

9    managers in his district, or do you think he    04:01:04

10   treated you differently, or do you know?        04:01:07

11   A.  I don't know.                               04:01:09

12   Q.  Were you the newest store manager in        04:01:09

13   Mr. Tellstrom's district when he became district 04:01:15

14   manager?                                        04:01:18

15   A.  No.  I think somebody else --              04:01:34

16   Q.  Looking at item ten on Exhibit 39, did you  04:01:38

17   have responsibilities for determining the product 04:01:46

18   mix?                                            04:01:47

19   A.  What number is it?                          04:01:50

20   Q.  Number ten.  For determining where you      04:01:51

21   would place what product.                       04:01:57

22   A.  Yes.                                        04:02:12

23   Q.  Did you have responsibility for ordering    04:02:12

24   goods?                                          04:02:16

25   A.  Yes.                                        04:02:18

239

| | | |
|---|---|---|
| 1 | morning and not at night?  The question I'm asking, | 04:17:46 |
| 2 | Mr. Cruz, is, if he was scheduled to start at 4:00 | 04:17:58 |
| 3 | a.m., what changed that actually got him to start | 04:18:01 |
| 4 | at 10:49 a.m., if you know? | 04:18:08 |
| 5 | A.  I don't remember. | 04:18:11 |
| 6 | Q.  Would that be something that you would | 04:18:13 |
| 7 | decide? | 04:18:15 |
| 8 | A.  No. | 04:18:16 |
| 9 | Q.  You wouldn't decide that he should come in | 04:18:18 |
| 10 | at a different time than he was scheduled? | 04:18:20 |
| 11 | A.  No. | 04:18:22 |
| 12 | Q.  How would that happen?  How would somebody | 04:18:22 |
| 13 | know to come in at a different time than what they | 04:18:26 |
| 14 | were scheduled? | 04:18:29 |
| 15 | A.  I would say somebody would call me and | 04:18:32 |
| 16 | say, "Change somebody else to this time." | 04:18:36 |
| 17 | Q.  Did you publish schedules in advance of | 04:18:40 |
| 18 | the workweek? | 04:18:42 |
| 19 | A.  Yes. | 04:18:43 |
| 20 | Q.  How did you do that?  Did you do them on a | 04:18:43 |
| 21 | piece of paper?  Did you write them out?  Did you | 04:18:48 |
| 22 | send a memo?  How did you do it? | 04:18:50 |
| 23 | A.  Did we what? | 04:18:52 |
| 24 | Q.  How did you communicate to your employees | 04:18:54 |
| 25 | what the schedule was going to be? | 04:18:55 |

251

| | | |
|---|---|---|
| 1 | A.  Mr. Rick. | 04:19:55 |
| 2 | Q.  How did Mr. Tellstrom tell Mr. Corina | 04:19:58 |
| 3 | that? | 04:20:01 |
| 4 | A.  He will call me to tell him. | 04:20:02 |
| 5 | Q.  Is it correct that every time we see a | 04:20:05 |
| 6 | change between the schedule and the actual worked, | 04:20:11 |
| 7 | that Mr. Tellstrom made that decision? | 04:20:18 |
| 8 | A.  Yes. | 04:20:20 |
| 9 | Q.  Every single time it appears in these | 04:20:20 |
| 10 | schedules? | 04:20:22 |
| 11 | A.  Yes. | 04:20:23 |
| 12 | Q.  And Mr. Tellstrom called you up and told | 04:20:23 |
| 13 | you that? | 04:20:25 |
| 14 | A.  Yes. | 04:20:25 |
| 15 | Q.  Did Mr. Corina get overtime for October | 04:20:30 |
| 16 | 11th? | 04:20:34 |
| 17 | A.  I don't remember. | 04:20:39 |
| 18 | MS. McCLAIN:  May I have this marked as | 04:20:54 |
| 19 | next in order, please? | 04:20:55 |
| 20 | (A document was marked as Exhibit 59 | 04:20:56 |
| 21 | for identification.) | 04:21:17 |
| 22 | MS. McCLAIN: | 04:21:17 |
| 23 | Q.  If you look on the second page of this | 04:21:17 |
| 24 | document, Mr. Cruz, do you see a time period on | 04:21:19 |
| 25 | October 11th that corresponds with Mr. Corina's | 04:21:25 |

253

1      Q.  So this is another example where you          04:23:04

2    didn't make a change that reduced an employee's     04:23:06

3    time so that they wouldn't get overtime; correct?   04:23:11

4    There's no change in these punches; is there?       04:23:19

5      A.  No.                                            04:23:22

6      Q.  Does this cause you to reconsider your         04:23:22

7    testimony, Mr. Cruz, that you changed everyone's     04:23:24

8    time so that no one ever got overtime?              04:23:31

9      A.  No.                                            04:23:36

10     Q.  You still think that testimony is              04:23:36

11   accurate?                                           04:23:38

12     A.  Yes.                                           04:23:38

13     Q.  Even in the face of now three examples         04:23:39

14   where people got overtime?                          04:23:41

15     A.  Yes.                                           04:23:43

16     Q.  How do you explain that?                       04:23:45

17     A.  A mistake.                                     04:23:52

18     Q.  A mistake on your part?                        04:23:52

19     A.  Yes.                                           04:23:54

20     Q.  Letting that overtime slip by?                 04:23:54

21     A.  Yes.                                           04:23:55

22     Q.  Did Mr. Tellstrom ever call you and say,       04:23:58

23   "I see that so-and-so got overtime.  You didn't     04:24:02

24   change the punch audit report as you should have"?  04:24:07

25     A.  Oh, yeah, for sure.                            04:24:13

255

| | | |
|---|---|---|
| 1 | store was open? | 04:32:26 |
| 2 | A.  What is it? | 04:32:27 |
| 3 | Q.  Did you have stocking going on when the | 04:32:28 |
| 4 | store was open? | 04:32:29 |
| 5 | A.  Yes. | 04:32:30 |
| 6 | Q.  Could your employees stock any time of the | 04:32:30 |
| 7 | day? | 04:32:33 |
| 8 | A.  Yes. | 04:32:33 |
| 9 | Q.  They didn't have to come in in the middle | 04:32:33 |
| 10 | of the night to stock? | 04:32:36 |
| 11 | A.  Yes, they had to.  And they can do it | 04:32:37 |
| 12 | during the day. | 04:32:39 |
| 13 | Q.  Why do they have to come in in the middle | 04:32:39 |
| 14 | of the night? | 04:32:41 |
| 15 | A.  That's Mr. Rick's orders. | 04:32:43 |
| 16 | Q.  This actual work time for Ms. Olvera on | 04:33:03 |
| 17 | Wednesday, October 11th, 2006 shows that she worked | 04:33:12 |
| 18 | sufficient hours to get overtime; correct? | 04:33:19 |
| 19 | A.  Yes. | 04:33:21 |
| 20 | Q.  Because 4:03 to 8:08 is above eight hours, | 04:33:22 |
| 21 | and the 3:22 to 8:03 is above four hours; correct? | 04:33:29 |
| 22 | So the whole day is above eight hours; correct? | 04:33:36 |
| 23 | A.  But if I remember -- | 04:33:38 |
| 24 | Q.  Do you agree with that, that the hours | 04:33:39 |
| 25 | here listed, if shown on the punch audit report, | 04:33:42 |

261

CERTIFICATION OF DEPOSITION OFFICER

1
2          I, WENDY L. VAN MEERBEKE, duly authorized to
3    administer oaths pursuant to Section 2093(b) of the
4    California Code of Civil Procedure, do hereby
5    certify that the witness in the foregoing
6    deposition was duly sworn by me to testify to the
7    truth in the within entitled cause; that said
8    deposition was taken at the time and place set
9    forth; that the testimony of said witness was
10   reported by me, a Certified Shorthand Reporter and
11   a disinterested person, and was thereafter
12   transcribed by computer under my direction into
13   booklet form; that the witness was given an
14   opportunity to read and correct said deposition and
15   to subscribe to the same.
16        I further certify that I am not of counsel or
17   attorney for either or any of the parties in the
18   foregoing deposition and caption named, nor in any
19   way interested in the outcome of the cause named in
20   said caption.
21        Dated the 1st day of November, 2007.

23        WENDY L. VAN MEERBEKE, CSR 3676
24
25

                                                   265