1    **LITTLER MENDELSON  L.L.P.**
     MAUREEN MCCLAIN (Bar No. 062050)
2    650 California Street, 20ᵗʰ Floor
     San Francisco, CA 94108-2693
3    Telephone:  (415) 433-1940
     Facsimile:  (415) 399-8490
4
     Attorneys for Defendant
5    Dollar Tree Stores, Inc.

6

7

8                 **UNITED STATES DISTRICT COURT**

9              **NORTHERN DIVISION OF CALIFORNIA**

10

11    MIGUEL A. CRUZ, and JOHN D.        Case Nos.:  07-2050 SC
     HANSEN,, individually and on behalf of                 07-4012 SC
12    others similarly situated,

13             Plaintiffs,

14        vs.

15
                                       **REBUTTAL DECLARATION OF**
16    DOLLAR TREE STORES, INC.,                 **ROBERT CRANDALL, MBA**

                Defendant.
17

18

19    ROBERT RUNNINGS, individually and
     on behalf of others similarly situated,
20
              Plaintiffs,
21
       vs.
22

23    DOLLAR TREE STORES, INC.,

24             Defendant.

25

26

27

28

                                          **DECLARATION OF ROB CRANDALL**

I, ROBERT CRANDALL, declare:

1.     I am making this declaration based of my own, first-hand knowledge (except as to matters declared on information and belief, of which I have been informed and do believe) and, if called upon to do so, could and would competently testify to the following.

## SECTION I - ASSIGNMENT

2.     As noted in my prior report, my initial assignment was to review the available data for the purpose of evaluating class certification and merits issues. More specifically, my prior report presented analyses that demonstrated that there is wide variability in class members' experiences as reported in their weekly Certifications Forms, that the weekly Certification Forms produce valid measures of potentially non-exempt weeks, and that the variability in Store Managers ("SMs") experiences is consistent with the finding of wide variability in SMs experiences that was demonstrated by a 2002-2003 survey of Dollar Tree Store Managers. Also, I was asked to examine whether the data was consistent with the theory that common policies, practices, and procedures resulted in uniformity of experiences and concluded that it was not. Finally, I was asked to comment upon statistical issues that arise when the data indicates that there is wide variability in experiences across class members and noted that in circumstances where there is wide variation in experiences, extrapolations based on representative testimony would likely result in significant errors when applied to individual class members. My assignment in the present report is to review and respond to the opinions proffered by plaintiffs' expert Dr. David Lewin. An overview of my qualifications and relevant experience can be found in my initial report filed in this matter.

1

DECLARATION OF ROBERT CRANDALL

1  **SECTION II - SUMMARY OF OPINIONS**

2

3    3.    As noted above, my present assignment is to review and respond to the eleven paragraph

4  expert report of plaintiffs' expert Dr. Lewin.   From the first seven paragraphs we learn that Dr.

5  Lewin is familiar with wage and hour litigation and that in other matters he has conducted

6  primary research, such as surveys and observation studies, to collect information legally relevant

7  information regarding the work activities of a group potentially misclassified managers.

8  Paragraphs eight through eleven indicate that Dr. Lewin has not conducted any primary research

9  in this matter.  In other words, he has no opinion related to whether there is variability in

10 experiences across members of the class, nor has he suggested that he intends to conduct any

11 primary research related to class members' work activities.  Instead, he offers five basic opinions.

12 First, he offers an opinion that Dollar Tree, like virtually all public corporations, has standard

13 operating procedures "SOPs", corporate policies and practices.[1]  Dr. Lewin's second opinion is

14 that the SM job description documents are too broadly defined, and, as such it is necessary to

15 review both the documents and conduct primary research related to the work activities of SMs.[2]

16 Dr. Lewin's third opinion is a generic opinion that centralized decision making has reduced

17 lower-level managers' ability to exercise discretion judgment in chain store formats.  Dr. Lewin's

18 fourth opinion is that incentive compensation based on cost controls of profits may result in

19 managers substituting their labor for the labor of hourly employees.  Finally, Dr. Lewin's fifth

20 opinion is that if additional discovery demonstrates that class members worked in a common

21 manner there is no need to decertify the class.

22

23  • **Dr. Lewin  opines that documents alone are insufficient to make determinations**

24    **regarding exempt status, but fails to analyze the available data or perform any**

25    **primary research regarding the activities of Dollar Tree SMs**

26  _____

27    [1] Lewin report, paragraph 8.

28    [2] Lewin report, paragraph 8.

2

4.      As noted above, Dr. Lewin's opinion is that the documents alone are insufficient to make determinations regarding the managers' activities or whether managers had "common" experiences.  This opinion is consistent with Dr. Lewin's academic work, which discusses the need to conduct research related to managers work activities <u>before</u> making conclusions regarding whether class members had common work experiences.  More specifically, in his 2006 article in *Contemporary Issues in Employment Relations*, Dr. Lewin cites a need for plaintiffs in managerial misclassification cases to "demonstrate that when these policies are translated into practice, the differences among workplace sales and employment, hourly employees' and upper managers' performance and reliability, and low-level managers' skills and preferences do not out weight common issues of fact."[3]  Dr. Lewin's language implies that one must do a study to test whether the common set of policies actually resulted in uniform experiences across managers, or alternatively, whether individualized store specific and manager specific factors resulted in variability in experiences.  Despite his opinion that one must conduct research related to managers work activities, Dr. Lewin did not perform any studies of his own or review the available certifications data.  Had he done so, Dr. Lewin would have reached findings similar to those reported in my previous declaration, which showed that the data indicates wide variation in experiences.  This finding is not consistent with the theory that systematic common policies, practices, and procedures govern managers' behavior.  In the absence of systematic practices, individualized inquiry would be necessary to make determinations regarding class members' exempt status.

- **<u>Dr. Lewin's opinions are not supported by empirical studies of the work activities of Dollar Tree SMs</u>**

5.      Given Dr. Lewin's experience in conducting primary research and his opinion that one cannot make determinations based solely on the available documents, the question becomes why

---

[3] Levin, D. & Lewin, D. *The New "Managerial Misclassification" Challenge to Old Wage and Hour Law."*  <u>Contemporary Issues in Employment Relations</u>. p196.

**DECLARATION OF ROBERT CRANDALL**

1    Dr. Lewin did not conduct any research or analysis of his own.[4]  Dr. Lewin's failure to conduct

2    any empirical studies results in his report being entirely theoretical.  As such, Dr. Lewin has no

3    basis to make statements related to whether SMs <u>actually</u> exercise discretion and independent

4    judgment, whether Dollar Tree's SOPs <u>actually</u> resulted in uniformity of experiences, or whether

5    most or all SMs <u>actually</u> spent less than half of their time performing managerial duties.

6

7    • **<u>Dollar Tree SMs exercise discretion and independent judgment on a daily basis in</u>**

8      **<u>connection with operating their stores</u>**

9    6.      After discussing how the documents are inconclusive and the need to conduct primary

10   research, Dr. Lewin then presents his academic paper that posits the theory that corporate controls

11   result in centralized decision making that reduces lower level managers' ability to exercise

12   discretion and independent judgment.  In his 2006 article in *Contemporary Issues in Employment*

13   *Relations* Dr. Lewin explains "In particular, as retail chains grow and replicate themselves, they

14   typically centralize responsibility for a vast array of management decisions, including most

15   selection of vendors, product pricing, and store operating hours, employee hiring and promotion

16   policies, and more.  Consequently, responsibility for management decision making moves from

17   local establishments, such as stores, to central headquarters, thereby leaving fewer and fewer

18   decisions in the hands of those who hold jobs carrying such titles as store manager, assistant

19   manager, and department manager."[5]  In considering Dr. Lewin's theory, one question that arises

20   is how many decisions must be taken away from a manager before we decide that the manager no

21   longer exercises discretion and independent judgment.   For example, Dr. Lewin notes that Dollar

22   Tree's corporate office determines the hours a particular store is open to the public.  This type of

23   decision is something that is made once and then rarely changed.  Even if store managers were

24   tasked with the decision of setting store hours, it would not make sense have fluctuating store

25

26          [4] Dr. Lewin was plaintiffs' survey expert in a prior matter alleging Dollar Tree's
       California Store Managers were misclassified as exempt.

27          [5] Levin, D. & Lewin, D. *The New "Managerial Misclassification" Challenge to Old*
       *Wage and Hour Law."* <u>Contemporary Issues in Employment Relations.</u> p199.
28

**DECLARATION OF ROBERT CRANDALL**

1   hours since it would likely result in confused customers.  Further, some managers may deviate

2   from the policy on a daily basis as some managers may stay open longer than the scheduled hours

3   to accommodate customers shopping in their stores.

4

5   7.      Dr. Lewin's focus on decisions that mangers do not make results in him ignoring the

6   discretion and independent judgment managers routinely exercise in connection with operating

7   their stores.   For example, managers are tasked with merchandising decisions such as where

8   certain items are to be stocked in the store, what items are featured, and where complementary

9   products are merchandised.  Since product sells out and new product arrives, managers constantly

10  have to make decisions regarding how the store is merchandised given the inventory on hand and

11  what is due to arrive.   Further, managers exercise discretion and independent judgment related to

12  operating the store by determining priorities, allocating labor among the various tasks that need to

13  be accomplished based on that priority, ensuring that tasks are completed to standards, and

14  supervising their employees to maintain productivity.   Thus, although technology changes and

15  standardized policies, practices, and procedures may ease the managerial burden, they do not

16  meaningfully diminish the discretion and independent judgment managers must exercise daily in

17  connection with their primary responsibility of running the store.

18

19  •   **Dr. Lewin's theory that bonus compensation provides incentives for Dollar Tree SMs**

20      **to substitute hourly labor for their own does not fit the facts of the present case**

21  8.      In paragraph 9 of his declaration, Dr. Lewin's report presents a theory that managers'

22  bonus compensation creates an incentive for them to perform hourly work.  The basic premise of

23  this theory is that if managers' bonuses are tied to keeping labor costs at or below budget, then

24  managers have an incentive to reduce labor costs by substituting their own labor for the labor of

25  hourly employees.  What this implies is that managers would not utilize their budgeted hours or

26  not ask hourly employees to work overtime or longer shifts and they themselves would provide

27

28

1   whatever additional hourly labor that is necessary to operate the store.[6]  There are several

2   problems with Dr. Lewin's theory.  First, his theory is inapplicable in this instance because Dollar

3   Tree managers' bonuses were based on sales – they are not based on how efficiently or

4   inefficiently managers utilize their scheduled hours.  For example, if store sales met the bonus

5   "threshold" store managers would receive a bonus equal to 0.2% of store sales.  If store sales met

6   the bonus "target" managers would receive a bonus equal to 0.4% of store sales.  If store sales

7   met the bonus "maximum" managers would receive a bonus equal to 0.5% of store sales.[7]  In

8   fiscal year 2008, a pilot bonus plan based on store shrink was added to the manager bonus.[8]

9   Thus, there was still no relationship between managers' bonuses and hourly labor used.

10

11   9.      The timekeeping data discussed in my prior report also indicates that Dr. Lewin's theory

12   is inapplicable to the present matter.  As noted in my previous report, the timekeeping data

13   indicates that many managers utilize overtime and in some cases utilize significant amounts of

14   overtime.  Thus, the data is inconsistent with Dr. Lewin's theory that managers were incentivized

15   to substitute hourly labor with their own.

16

17   • **Dr. Lewin's theory that managers deviate from SOPs to substitute their own labor**

18     **for hourly labor conflicts with his theory that SOPs govern Store Managers'**

19     **behavior**

20   10.     Dr. Lewin's theory that incentive compensation results in managers performing non-

21   managerial work conflicts with his theory that managers' discretion and independent judgment is

22   limited by SOPs.  Since Dollar Tree has SOPs related to staffing levels and the amount of hourly

23   work that a manager can perform, a manager's decision to substitute their own labor for hourly

24

25   ────────────

        [6] Since managers would receive enhanced bonuses under this theory this practice would
26   result in an increased cost to the company.

27      [7] DTC 00597

        [8] Bates R00632-R00633.
28

6

1   labor would represent an instance where the manager deviates from the Dollar Tree's SOPs.[9]

2   Thus, we have a situation where according to Dr. Lewin managers are limited in exercising

3   discretion and independent judgment by SOPs, except when they exercise discretion and

4   independent judgment in choosing to ignore the SOP.   Further, it is worth noting that since some

5   managers may deviate from policy and others not, this would also be expected to drive variability

6   in experiences across managers as some may have scheduled to budget and others had not, which

7   would in turn influence how much time the manager could spend performing hourly duties.

8

9   • **Dr. Lewin implies that variability in experiences could be a reason to reconsider**

10      **class certification**

11  11.    Dr. Lewin's final paragraph alludes to the issue of variability in Dollar Tree SMs'

12  experiences.  In paragraph 11 he states, "Unless that discovery shows that job duties and

13  responsibilities are not common to all class members there is no reason to decertify the class."[10]

14  The converse to this statement is that variability in experiences in terms of the job duties

15  performed by class members may be a reason to decertify the class.  Thus, in this regard Dr.

16  Lewin and I agree.  As described in detail in my prior report, wide variability in experiences

17  creates a significant number of statistical issues that impact whether one can extrapolate results

18  obtained from a group of "representative" class members to non-testifying class members without

19  significant error.

20

21  • **Dr. Lewin fails to recognize that one must understand not only what task managers**

22      **perform but how much time they spend performing each task**

23  12.    Dr. Lewin appears to only focus on whether class members are performing the same tasks.

24  However, in the context of the liability test, the fact that a class member performs a particular task

25  is not useful without knowing the percentage of work time that is allocated to that task.   As noted

26  _____

27  [9] Dollar Tree's Weekly Certifications forms ask managers to certify that they did not
    spend more than 35% of their work week performing hourly tasks.

28  [10] Lewin report, paragraph 11.

7

1   in my previous report, in the presence of variability in time spent performing various tasks and

2   exempt tasks overall, it becomes difficult to rely on statistical estimation as a means for

3   determining liability or damages on a class-wide basis.  Observable characteristics such as store

4   size, sales volume, and tenure will only provide only part of the story before less-easily

5   observable characteristics such as managerial discretion, judgment, and skill enter the equation as

6   complicating factors.  For this reason, the need for individual inquiry is likely, as it is improbable

7   that testimony related to the experiences of a group of "representative" class members will be

8   useful in making determinations regarding the experiences of non-testifying class members.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**DECLARATION OF ROBERT CRANDALL**

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2    true and correct and that this declaration was executed in Beverly Hills, California on May 21,

3    2010.

4

5    

6    _____

7    Robert Crandall, MBA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF ROBERT CRANDALL**